Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Alyssa Brown (SBN 301313)
abrown@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank CA 91505
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585

Philip L. Fraietta (SBN 354768)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
1330 Ave. of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163

Emily A. Horne (SBN 347723)
ehorne@bursor.com
Joshua R. Wilner (SBN 353949)
jwilner@bursor.com
**BURSOR & FISHER, P.A.**
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700

*Proposed Class Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

EDWARD LEWIS, GLADYS SOLIS, and PATRICIA CASTILLO, individuals, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

MAGNITE, INC.,

Defendant.

Case No. 2:25-CV-03448-MWC-SSC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO CONSOLIDATE CASES AND APPOINT INTERIM CLASS COUNSEL**

Date: August 8, 2025
Time:  1:30 PM
Courtroom:  6A
Judge:  Hon. Michelle Williams Court

| | |
|---|---|
| 1 | LISA TSERING, ARIEL GILLIGAN, | Case No. 2:25-cv-04874-MWC-SSC |
| 2 | LOGAN MITCHELL, MARC RUSSO, and DILARA USKUP, individually and | |
| 3 | on behalf of all other persons similarly situated, | Judge:  Hon. Michelle Williams Court |

LISA TSERING, ARIEL GILLIGAN, LOGAN MITCHELL, MARC RUSSO, and DILARA USKUP, individually and on behalf of all other persons similarly situated,

                                        Plaintiffs,

        v.

MAGNITE, INC.,

                                        Defendant.

Case No. 2:25-cv-04874-MWC-SSC

Judge:  Hon. Michelle Williams Court

1
2

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .......................................................................................... 1

II.    BACKGROUND ............................................................................................ 1

III.   ARGUMENT ................................................................................................. 3

     A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED
           PURSUANT TO FED. R. CIV P. 42(A) ................................................. 3

     B.    THE COURT SHOULD APPOINT INTERIM CLASS COUNSEL
           PURSUANT TO FED. R. CIV. P. 23(G)(3) ......................................... 4

          1.    Legal Standard for Appointing Class Counsel ............................. 4

          2.    Proposed Class Counsel Are Best Able to Represent the
               Interests of the Class ................................................................... 6

               a.    Proposed Class Counsel Have Performed the Most
                     Work in Identifying and Investigating the Claims in
                     this Action and Have the Necessary Resources to
                     Efficiently Prosecute the Case to a Successful
                     Conclusion ....................................................................... 6

               b.    Proposed Class Counsel Have Substantial Knowledge
                     About and Are Highly Experienced in Leading and
                     Successfully Resolving Data Privacy Class Actions.......... 9

TINA WOLFSON OF AHDOOT & WOLFSON, PC ............................................. 10

PHILIP L. FRAIETTA OF BURSOR & FISHER, P.A. .......................................... 13

          3.    Additional Factors Supporting Appointment ............................. 17

IV.    CONCLUSION ............................................................................................ 19

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>                                                              Page(s)

3

*Beture v. Samsung Elecs. Am., Inc.,*
   No. 2:17-cv-05757-SRC-CLW, 2018 WL 3159875 (D.N.J. Mar. 27, 2018) ..........4

4

*Boelter v. Hearst Commc'ns Inc.,*
   15-cv-003934, 269 F. Supp. 3d 172 (S.D.N.Y. 2017) ............................................15

5

6

*Clark v. American Honda Motor Co., Inc.,*
   No. 2:20-cv-03147 (C.D. Cal. 2020) ....................................................................19

7

*Doe v. GoodRx,*
   No. 23-cv-00501, 2023 WL 4384446 (N.D. Cal. July 7, 2023) ............................13

8

9

*Fulton-Green v. Accolade, Inc.,*
   No. 18-cv-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ..................................9

10

*Gordon v. Chipotle Mexican Grill, Inc.,*
   No. 17-cv-1415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ................................9

11

12

*Hohenberg v. Ferrero U.S.A., Inc.,*
   No. 3:11-cv-00205-H-KSC, 2011 WL 13134161 (S.D. Cal. Mar. 22, 2011)..........4

13

*In re Accellion, Inc. Data Breach Litigation,*
   No. 5:21-cv-01155-EJD, 2022 WL 767279 (N.D. Cal. Mar. 14, 2022) ..................3

14

*In re Exford Health Plans, Inc. Sec. Litig.,*
   182 F.R.D. 42 (S.D.N.Y. 1998) ..............................................................................8

15

*In re Google Inc. Cookie Placement Consumer Privacy Litig.,*
   No. 0:12-md-02358-SLR, 2012 WL 5833604 (D. Del. Nov. 16, 2012)..................8

16

17

*In re SSA Bonds Antitrust Litig.,*
   No. 1:16-cv-03711-ER, 2016 WL 7439365 (S.D.N.Y. Dec. 22, 2016) ..................8

18

*In re Stubhub Refund Litig.,*
   No. 4:20-md-02951-HSG, 2020 WL 8669823 (N.D. Cal. Nov. 18, 2020) ..........4, 5

19

20

*In re Terazosin Hydrochloride Antitrust Litig.,*
   220 F.R.D. 672 (S.D. Fla. 2004) ..........................................................................10

21

*In re: Apple Data Privacy Litigation,*
   No. 5:22-cv-07069 (N.D. Cal. July 5, 2023) .........................................................13

22

23

*Kaplan v. 21st Century Oncology Holdings,*
   No. 2:16-cv-210FtM-99MRM, 2016 WL 9383330 (M.D. Fla. July 21, 2016) .......3

24

*Perez v. Rash Curtis & Associates,*
   No. 4:16-cv-03396-YGR, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020)........16, 17

25

26

*Radcliffe v. Hernandez,*
   818 F.3d 537 (9th Cir. 2016) ..................................................................................9

27

28

*Remijas v. Neiman Marcus Grp., LLC*,
   794 F.3d 688 (7th Cir. 2015) ................................................................................10

*Roby v. Insider, Inc.*,
   No. 1:22-cv-06834 (S.D.N.Y. Nov. 8, 2023)......................................................13

*Rouillard v. SAG-AFTRA Health Plan*,
   No. 2:24-cv-10503-MEMF-JPR, 2025 WL 1544117 (C.D. Cal. Feb. 25, 2025) .....5

*Rubenstein v. Scripps Health*,
   No. 3:21-cv-01135-GPC(MSB), 2021 WL 4554569 (S.D. Cal. Oct. 5, 2021).........3

*Troy Stacy Enter. Inc. v. Cincinnati Ins. Co.*,
   No. 1:20-cv-00312-MWM-KLL, 337 F.R.D. 405 (S.D. Ohio 2021) ......................4

*UL LLC v. Gangsong Grp. Corp.*,
   No. 2:17-cv-08166-DSF-E, 2019 WL 8219493 (C.D. Cal. June 26, 2019) .............3

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION § 21.11 ................................................................5

MANUAL FOR COMPLEX LITIGATION § 10.221 ..............................................................5

**Rules**

Fed. R. Civ. P. 23(g)..............................................................................................1, 10, 19

Fed. R. Civ. P 23(g)(1)(A) ..............................................................................................5

Fed R. Civ. P. 23(g)(1)(A)(i)...................................................................................5, 6, 9

Fed. R. Civ. P. 23(g)(1)(A)(iii) .......................................................................................9

Fed R. Civ. P. 23(g)(1)(A)(iv)..........................................................................................6

Fed. R. Civ. P. 23(g)(1)(B).........................................................................................5, 17

Fed. R. Civ. P. 23(g)(2)....................................................................................................5

Fed. R. Civ. P. 23(g)(2)(A) ..............................................................................................4

Fed. R. Civ. P. 23(g)(3) ...........................................................................................1, 4, 5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO CONSOLIDATE CASES
AND APPOINT INTERIM CLASS COUNSEL
CASE NO. 2:25-CV-03448-MCW-SSC

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs Lisa Tsering, Ariel Gilligan, Logan Mitchell, Marc Russo, and Dilara Uskup, the Plaintiffs in the action above captioned as *Tsering, et al. v. Magnite, Inc.*, No. 2:25-cv-04874 ("*Tsering*"), respectfully move for an order (1) pursuant to Fed. R. Civ. P. 42(a) consolidating *Tsering* and *Lewis v. Magnite, Inc.* No. 2:25-cv-03448 ("*Lewis*") (together, the "Related Actions"), and any future related actions filed in, removed to, or transferred to this Court, under the docket number of the *Lewis* case, No. 2:25-cv-03448, and under the new caption *In re: Magnite, Inc. Privacy Litigation*; and (2) appointing Tina Wolfson of Ahdoot & Wolfson, P.C. ("AW") and Philip L. Fraietta of Bursor & Fisher, P.A. ("BF") ("Proposed Class Counsel") as interim class counsel pursuant to Fed. R. Civ. P. 23(g)(3).

Consolidation of the Related Actions is appropriate because they arise from the same nucleus of operative facts—Defendant Magnite Inc.'s ("Defendant" or "Magnite") alleged wiretapping and surveillance of class members—and assert similar causes of action on behalf of similar and overlapping classes, seeking the same relief.

Appointing interim class counsel here is appropriate because duplicative actions have been filed and it is imperative that counsel representing the putative class to speak with one voice. Appointment of interim class counsel will clarify the roles and responsibilities of counsel on behalf of the class, while avoiding duplicative and unnecessary litigation that could result in inefficiencies for the Court and the parties.

The Court should appoint Proposed Class Counsel to lead this litigation on behalf of the putative class. They meet all the requirements of Fed. R. Civ. P. 23(g) and are best able to represent the interests of the class.

### II.  BACKGROUND

Magnite is a data broker that compiles information about individuals from across the internet. Its business model entails building comprehensive user profiles

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO CONSOLIDATE CASES AND APPOINT INTERIM CLASS COUNSEL
CASE NO. 2:25-CV-03448-MCW-SSC

1

1   that include a vast assortment of information. It then offers that information for sale to

2   the highest bidder.

3          The Related Actions allege that Magnite unlawfully surveils Plaintiffs and class

4   members, including by intercepting confidential communications and routing,

5   addressing, and signaling information. Specifically, through its tracking technology

6   loaded onto hundreds of websites, Magnite conducts dragnet-style surveillance on

7   internet users without their knowledge or consent and utilizes this information to build

8   a comprehensive user profile. These profiles are then shared by Defendant with other

9   entities and are offered up for sale to advertisers. As alleged in the Related Actions,

10  the information Defendant collects is enough to identify the individual internet user.

11  As a result, the Related Actions allege that Defendant's actions invaded the privacy of

12  Plaintiffs and class members. Plaintiffs allege Magnite's practices violate the

13  Electronic Communications Privacy Act, the California Invasion of Privacy Act

14  (CIPA), and California common law, among other laws.

15         To date, and to the best of Proposed Class Counsel's knowledge, *Lewis* and

16  *Tsering* are the only Related Actions. The *Lewis* action was filed on March 5, 2025 in

17  Los Angeles County Superior Court by the law firm Loevy & Loevy. It was then

18  removed to this Court on April 18, 2025. ECF No. 1. *Tsering* was filed on April 9,

19  2025 in the United States District Court for the Northern District of California and was

20  subsequently transferred to this District on June 5, 2025. *See* ECF No. 19 (former Case

21  No. 3:25-cv-03201). The *Tsering* case was deemed related and transferred to this Court

22  on June 24, 2025. ECF No. 29.

23         Prior to filing this motion, Proposed Class Counsel met and conferred pursuant

24  to Local Rule 7-3 with Plaintiff's counsel in the *Lewis* action—namely the law firm of

25  Loevy & Loevy—to discuss consolidation and attempt to coordinate efforts and confer

26  regarding case leadership. Wolfson Decl. ¶¶ 5-6; Fraietta Decl. ¶¶ 18-19. Proposed

27  Class Counsel and counsel in the *Lewis* action were not able to come to an agreement

28  regarding case leadership. Wolfson Decl. ¶ 6; Fraietta Decl. ¶¶ 18-19.

## III.  ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED PURSUANT TO FED. R. CIV P. 42(A)

Fed. R. Civ. P. 42(a) provides the following:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

Courts enjoy broad discretion to order Rule 42(a) consolidation. *UL LLC v. Gangsong Grp. Corp.*, No. 2:17-cv-8166-DSF-E, 2019 WL 8219493, at *1 (C.D. Cal. June 26, 2019). Courts consistently find that overlapping data privacy class actions are particularly appropriate for consolidation. *See, e.g.*, *Rubenstein v. Scripps Health*, No. 3:21-cv-01135-GPC(MSB), 2021 WL 4554569, at *2 (S.D. Cal. Oct. 5, 2021) ("Plaintiffs allege that Defendant failed to adequately protect its network servers. Accordingly, because all cases involve the same underlying facts and substantially similar questions of law, consolidation would promote the interest of judicial efficiency and avoid duplication in the prosecution or resolution of the cases"); *In re Accellion, Inc. Data Breach Litigation*, No. 5:21-cv-01155-EJD, 2022 WL 767279 (N.D. Cal. Mar. 14, 2022) (granting motion to consolidate related data privacy actions); *Kaplan v. 21st Century Oncology Holdings*, No. 2:16-cv-210FtM-99MRM, 2016 WL 9383330, at *2 (M.D. Fla. July 21, 2016) (". . . it is clear that common questions of law and fact permeate these cases [because] . . . all of the cases appear to arise from the same alleged data breach").

The Related Actions involve common factual allegations and legal theories. They assert multiple common causes of action against the same Defendant relating to the same factual underpinnings and seek the same relief in response to the alleged misconduct. The Related Actions seek certification of similar or overlapping classes and allege that Plaintiffs and class members suffered similar privacy harms. Consolidation of the Related Actions is warranted because it will simplify discovery,

pretrial motions, class certification issues, and other case management issues, especially given that the cases are at their procedural inception. Consolidation will avoid delay, duplicative litigation efforts, and the risk of inconsistent rulings, without prejudicing any party. The Related Actions present the quintessential consolidation scenario, all parties agree that consolidation is appropriate, and the Court should grant the motion to ensure judicial economy and preserve party resources.

### B.      THE COURT SHOULD APPOINT INTERIM CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(G)(3)

#### 1.      Legal Standard for Appointing Class Counsel

"Under Federal Rule of Civil Procedure 23(g)(3), a court 'may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.'" *In re Stubhub Refund Litig.*, No. 4:20-md-02951-HSG, 2020 WL 8669823, at *1 (N.D. Cal. Nov. 18, 2020) (quoting Fed. R. Civ. P. 23(g)(2)(A)). "A court should designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class." *Id.* (internal quotations and citation omitted).

Early class counsel appointments are particularly important where, as here, other cases have been filed by other counsel. *See, e.g., Hohenberg v. Ferrero U.S.A., Inc.,* No. 3:11-cv-00205-H-KSC, 2011 WL 13134161, at *2 (S.D. Cal. Mar. 22, 2011) ("Where a number of overlapping, duplicative or competing suits are present, a number of lawyers may compete for class counsel appointment. . . . In such cases, designation of interim class counsel clarifies responsibility for protecting the interests of the class during precertification activities") (internal citations, quotations, and formatting omitted); *Beture v. Samsung Elecs. Am., Inc.,* No. 2:17-cv-05757-SRC-CLW, 2018 WL 3159875, at *1 (D.N.J. Mar. 27, 2018) ("This Court is persuaded that it is in the interest of the putative class of Plaintiffs to prevent a competition between counsel, and to encourage the coordination and cooperation of counsel by granting this motion."); *Troy Stacy Enter. Inc. v. Cincinnati Ins. Co.*, No. 1:20-cv-00312-MWM-

KLL, 337 F.R.D. 405, 409 (S.D. Ohio 2021) ("Designation of interim counsel is particularly appropriate when there have been overlapping, duplicative, or competing suits filed in other courts." (citing MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.11)). Appointing lead counsel now will "clarif[y] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.11. This clarity is particularly important in a case such as this one that has received publicity; where many thousands or millions of class members likely have been impacted by the alleged conduct; and where numerous cases have been filed, and more cases are likely.

"Courts typically look to the [Rule 23(g)(3)] factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A)." *In re Stubhub Refund Litig.*, 2020 WL 8669823, at *1 (citation omitted). These factors are:

> (1)  the work counsel has done in identifying or investigating potential claims in the action;
>
> (2)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (3)  counsel's knowledge of the applicable law; and
>
> (4)  the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv); *Rouillard v. SAG-AFTRA Health Plan*, No. 2:24-cv-10503-MEMF-JPR, 2025 WL 1544117, at *3 (C.D. Cal. Feb. 25, 2025) (quoting same). The Court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

"If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). "The most important [factor] is achieving efficiency and economy without jeopardizing fairness to the parties." MANUAL FOR COMPLEX LITIGATION § 10.221.

Proposed Class Counsel meet every criteria set forth by the Rules and relevant case law.

### 2. Proposed Class Counsel Are Best Able to Represent the Interests of the Class

#### a. Proposed Class Counsel Have Performed the Most Work in Identifying and Investigating the Claims in this Action and Have the Necessary Resources to Efficiently Prosecute the Case to a Successful Conclusion

Proposed Class Counsel have committed substantial time and resources to organizing and advancing this litigation in its early stages, and have the resources to efficiently prosecute this action, as required by Fed R. Civ. P. 23(g)(1)(A)(i) and (iv). Wolfson Decl. ¶¶ 7-9; Fraietta Decl. ¶¶ 10-11.

Proposed Class Counsel has investigated and researched the potential legal theories and claims and researched and reviewed information relating to the factual underpinnings of the conduct alleged and this litigation, engaging the assistance of expert consultants. Wolfson Decl. ¶¶ 7-8; Fraietta Decl. ¶ 10. Counsel are familiar with the facts and legal issues in this matter based upon their detailed investigation and communicating with putative class members and retained clients. Wolfson Decl. ¶¶ 7-9; Fraietta Decl. ¶ 10. Their detailed investigations include without limitation the following work:

a) Investigated the functionality of the Rubicon Tracker (a technology that reads and intercepts communications to provide ongoing information to Defendant and advertisers that Defendant contracts with);

b) Confirmed the Rubicon Tracker was loaded onto numerous websites and investigated what information from website users was intercepted by the Rubicon Tracker on those websites;

c) Retained consulting experts to help understand the tracking technology and the nature of purported class' damages;

d) Investigated Plaintiffs' and class members' interactions with the websites containing the Rubicon Tracker;

e) Investigated Rubicon's disclosure and sale of collected personal data;

f) Investigated legal claims arising from Defendant's use of the Rubicon Tracker and sale of class member's private data;

g) Researched Defendant's corporate structure;

h) Investigated Defendant's marketing, privacy disclosures, and methods of attaining assent to its Terms of Use;

i) Investigated the scope of Defendant's data sharing practices, and its public statements regarding the same;

j) Evaluated Defendant's likely defenses based on extensive factual and legal research;

k) Investigated the nature of the challenged conduct at issue here by interviewing dozens of potential clients;

l) Investigated the adequacy of the named Plaintiffs to represent the putative class, including but not limited to assisting Plaintiffs in submitting CCPA requests;

m) Drafted and filed the complaint in this action; and

n) Using their research and investigation to date to begin preparing a detailed consolidated complaint in the event Proposed Class Counsel is appointed by the Court.

Wolfson Decl. ¶ 8; Fraietta Decl. ¶ 10. Their work and investigations are proprietary and original work, and the quality and depth of this work distinguishes the proposed leadership team. Wolfson Decl. ¶ 8; Fraietta Decl. ¶ 10.

Proposed Class Counsel also have the resources necessary to finance a case of this magnitude. Having served in numerous leadership roles in complex, high-profile class actions, Proposed Class Counsel understand what is required to undertake litigation of this magnitude and are committed to marshaling every available resource to achieve a favorable result for the class. Here, the putative class consists of many thousands or even millions of consumers. A litigation of this size "justifies the pooling

of resources and experience." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, No. 0:12-md-02358-SLR, 2012 WL 5833604, at *1 (D. Del. Nov. 16, 2012) (citing *In re Exford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998).

Where the class faces a well-financed adversary represented by reputable and well-funded counsel, like Magnite is here, the class should be afforded representation by counsel with similar resources. *See In re SSA Bonds Antitrust Litig.*, No. 1:16-cv-03711-ER, 2016 WL 7439365, at *3 (S.D.N.Y. Dec. 22, 2016) (noting that the appointed firms had "substantially more resources at their disposal than the other applicant teams"). The proposed team meets this standard.

AW is a well-capitalized firm that has pursued many complex cases from inception to a favorable result, advancing all litigation costs. Wolfson Decl. ¶ 15. If appointed by the Court, it will do so here. AW has settled cases with positive resolutions at all stages of litigation, including after pushing cases through class certification and towards trial. *Id.* ¶ 11 and Exhibit A. AW has the experience and resources to handle any procedural scenario presented in this case, up through a jury trial and appeals. *Id.* ¶ 15. Since its foundation in 1998, AW has always self-funded and has never relied on litigation funding to prosecute its cases. *Id.*

BF also is a well-established law firm that has the resources and personnel necessary to pursue a case of this magnitude, as its people have demonstrated in numerous similar class actions. The firm is also geographically diverse, with offices spanning the country, allowing its people to easily work and communicate with all parties.

Proposed Class Counsel already have demonstrated the will and ability to commit the necessary resources to assure a strong and well-supported case. The firms' resources are not merely financial, but also include substantial expertise and work-product, which were developed in other similar cases. Proposed Class Counsel's ability to draw from their well-developed repositories of information will help streamline the litigation. Fraietta Decl. ¶¶ 2-3, 5, 10, 13-16 and Exhibit 1.

Proposed Class Counsel have conducted all the work necessary to prosecute this litigation thus far, and they stand ready, willing, and able to continue devoting the substantial effort and resources (including the advancement of costs) necessary for advancing Plaintiffs' and class members' claims. Wolfson Decl. ¶ 15; Fraietta Decl. ¶ 17. The Rule 23(g)(1)(A)(i) and (iv) factors are satisfied.

  **b.**  **Proposed Class Counsel Have Substantial Knowledge About and Are Highly Experienced in Leading and Successfully Resolving Data Privacy Class Actions**

The Proposed Class Counsel best satisfy the Rule 23(g)(1)(A)(ii)-(iii) factors. Data privacy cases present unique and novel issues of fact and law that are always evolving. *See, e.g., Gordon v. Chipotle Mexican Grill, Inc.*, No. 1:17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) (privacy cases "are particularly risky, expensive, and complex"); *Fulton-Green v. Accolade, Inc.*, No. 2:18-cv-00274-GEKP, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."). Because data privacy litigation requires an understanding of technical issues—here, data tracking technology and coding; data collection and sharing; and privacy controls and industry standards—appointing interim class counsel who are experienced in these types of cases is in the best interest of the class. *See, e.g., Radcliffe v. Hernandez*, 818 F.3d 537, 548 (9th Cir. 2016) (affirming the District court's decision that appointed counsel's "greater experience and knowledge relevant to th[e] case" made them best able to represent the class).

Proposed Class Counsel have extensive experience leading and litigating data privacy cases, including those alleging improper sharing of website visitors' private information. Wolfson Decl. ¶ 11 and Exhibit A.; Fraietta Decl. ¶¶ 2, 5 and Exhibit 1.. This includes prosecuting cases against large corporate defendants with deep pockets and abundant resources, such as *In re Google Location History Litigation*, No. 5:18-cv-05062-EJD (N.D. Cal.); *Rivera v. Google LLC*, No. 2019-CH-00990 (Ill Cir. Ct.); *In re Experian Data Breach Litigation*, No. 8:15-cv-01592-AG-DFM (C.D. Cal.); *In*

*re Premera Blue Cross Customer Data Sec. Breach Litigation*, No. 3:15-cv-2633-SI (D. Or.); *In re Zoom Video Communications, Inc. Privacy Litigation*, No. 5:20-cv-02155-LHK (N.D. Cal.); and *Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279 (S.D.N.Y.), among others. *See* Wolfson Decl. ¶ 11 and Exhibit A; Fraietta Decl. ¶¶ 2, 5 and Exhibit 1.. Their previous and ongoing work in this space has provided them with specific experience regarding the statutes and claims at issue here, including prevailing on the merits and how to effectively structure pre-class certification discovery.

Ms. Wolfson, Mr. Fraietta, and the lawyers at AW and BF are highly qualified to lead this litigation and should be appointed as interim co-lead class counsel pursuant to Fed. R. Civ. P. 23(g). *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (stating that the "most persuasive" factors in choosing lead counsel may be proposed counsel's "experience in, and knowledge of, the applicable law in this field"). The qualifications and experience of each member of the proposed leadership team are further summarized below and detailed in the accompanying declarations and firm resumes.

### Tina Wolfson of Ahdoot & Wolfson, PC

Ms. Wolfson graduated Harvard Law School *cum laude* in 1994 and has 27 years of data privacy class action experience. In the late 1990s, when Ms. Wolfson co-founded AW, AW prosecuted major financial institutions for unlawfully compiling and selling the detailed financial data of millions of consumers to third-party telemarketers, exposing corporate practices that later became the subject of Gramm-Leach-Bliley Act regulation. AW continues to bring trail-blazing privacy-related class actions and has won numerous issues of first impression at the trial and appellate levels. For example, in *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015) AW single-handedly won the seminal appellate opinion on Article III standing based on imminent future harm. AW has achieved some of the largest monetary settlements in the data privacy space, and overhauled corporate practices with respect

1    to data protection and consumer autonomy, including in *Experian* ($150 million),

2    *Google BIPA* ($100 million), *Zoom* ($85 million), *Premera* ($74 million, the largest

3    per capita settlement at the time), *Google Location Tracking* ($64 million), and *OPM*

4    ($63 million), to name just a few. Wolfson Decl. ¶ 11 and Exhibit A.

5         Ms. Wolfson has litigated countless data privacy cases and has a deep

6    understanding of the many substantive and technical issues that arise, including vetting

7    and pleading the best class representatives and causes of action, briefing and arguing

8    motions to dismiss, efficiently pursuing seminal discovery that involves highly

9    technical factual issues and evidentiary privilege issues, taking effective depositions,

10    including of information security officers and technical and damages experts, working

11    with forensic consultants and experts to develop the class damage models, and briefing

12    and arguing *Daubert*, class certification, and summary judgment motions. Wolfson

13    Decl. ¶ 12.

14         While battling on the litigation front, Ms. Wolfson consistently continues the

15    settlement dialogue with defense counsel. She is intimately familiar with data privacy

16    insurance coverage issues, as well as the best practices in structuring, negotiating and

17    memorializing settlements, and working with class action administrators to provide

18    the most efficient and effective notice to the class. Ms. Wolfson personally monitors

19    notice campaigns and claim trends to make sure that administrators are doing the best

20    job for the class. Wolfson Decl. ¶ 13.

21         AW's successes in non-privacy class actions include a $500 million settlement

22    to iPhone users whose device performance and battery life were allegedly deliberately

23    degraded in *Apple Inc. Device Performance Litigation* and a $295 million settlement to

24    electricity users who paid an allegedly illegal tax in *Eck v. City of Los Angeles*. Wolfson

25    Decl. ¶ 11 and Exhibit A.

26         Ms. Wolfson enjoys an excellent reputation in the Central District of California

27    and works to promote the administration of justice in the federal courts in this district,

28    the Ninth Circuit and nationwide. Ms. Wolfson has served as a Ninth Circuit Lawyer

Representative for the Central District of California, as Vice President of the Federal Litigation Section of the Federal Bar Association, as a member of the American Business Trial Lawyer Association, and as a participant/panelist at the Bolch Judicial Institute Conferences at Duke Law School and the Institute for the Advancement of the American Legal System at the University of Denver. She currently serves on the Executive Committee for the Ninth Circuit Judicial Conference, on the magistrate judge Merit Selection Panel for the Central District of California, and on the Board of Public Justice. She will use the invaluable knowledge of the challenges currently facing our judiciary to prosecute the case efficiently in the best interest of the class. Wolfson Decl. ¶ 16.

Ms. Wolfson has previously co-counseled amicably, efficiently, and successfully with Bursor & Fisher, and will do so here should the Court appoint AW and Bursor & Fisher as Co-Lead Counsel. While zealously advocating for the plaintiffs, Ms. Wolfson develops amicable professional relationships with defense counsel as well, as demonstrated by mutual invitations to lecture at law schools, CLE conferences, and bar events. The same leadership skills that enabled the success of AW over the past three decades have enabled Ms. Wolfson's success as class counsel: a balance of experienced decisiveness and an open mind that is willing to listen and learn; deliberate multi-tasking and time management; respectful candor; personal responsibility and accountability; and mentorship of future class action leaders. Wolfson Decl. ¶ 14.

Ms. Wolfson understands the financial and human resources this case will require and would not seek a leadership position if AW could not deliver. AW has never used third-party funding for any matter, has never failed to pay assessments in any case (many of them totaling several millions of dollars), and is well-funded and well-staffed to litigate this matter to successful results, whether by settlement or verdict. Wolfson Decl. ¶ 15.

If appointed, Ms. Wolfson will serve the class and the Court to the best of her ability, and will appear in person and be thoroughly prepared on every issue. Wolfson Decl. ¶ 16. She will also mentor younger associates at the Proposed Class Counsel firms who are from historically under-represented groups to handle oral argument, consistent with her own philosophy and the Court's preference. Wolfson Decl. ¶ 17.

### Philip L. Fraietta of Bursor & Fisher, P.A.

As District Judge Analisa Torres noted appointing Bursor & Fisher as interim class counsel in another data privacy action, along with two other firms, B&F has "substantial experience handling complex consumer litigation, class action litigation, [and] data privacy actions … in federal courts across the country." *Roby v. Insider, Inc.*, No. 1:22-cv-06834, ECF No. 25 (S.D.N.Y. Nov. 8, 2023).

Bursor & Fisher has been repeatedly appointed to leadership positions in consumer privacy cases, as well as other large class actions and multidistrict proceedings. *See, e.g.*, *Roby v. Insider, Inc.*, No. 1:22-cv-06834, ECF No. 25 (S.D.N.Y. Nov. 8, 2023); *Doe v. GoodRx*, 2023 WL 4384446, at *2 (N.D. Cal. July 7, 2023) (representing a nationwide class of consumers who had their medical information disclosed to third-parties via various internet tracking technologies); *In re: Apple Data Privacy Litigation*, No. 5:22-cv-07069 (N.D. Cal. July 5, 2023) (representing a nationwide class of consumers who turned off permissions for data tracking and whose mobile app activity was still tracked on iPhone mobile devices).

Bursor & Fisher is intimately familiar with the technology at issue in this case and is also counsel of record in dozens of class actions alleging similar privacy violations through the use of online tracking technology. *See Cole v. Quest Diagnostics, Inc.*, Case No. 2:23-cv-20647 (D.N.J.); *Quinto v. The Regents of The University of California*, Case No. 22CV012970 (Alameda Cnty.); *Strusowski v. The Nemours Foundation*, Case No. 2:23-cv-00537 (E.D. Pa.); *Mohr v. The Trustees of The University Of Pennsylvania*, Case No. 2:23-cv-00731 (E.D. Pa.); *Beauford v. The Johns Hopkins Hospital, Inc.*, Case No. C-03-CV-23-000501 (Baltimore Cnty.);

*Browne v. Cedars-Sinai Health System*, Case No. 23STCV00469 (Los Angeles Cnty.); *Carlsen v. Florida Health Sciences Center Inc.*, Case No. 8:23-cv-00559 (M.D. Fla.); *Spalinger v. El Camino Hospital*, Case No. 23CV412292 (Santa Clara Cnty.); *Valladolid v. Memorial Health Svcs.*, Case No. 23STCV0505923STCV00469 (Los Angeles Cnty.); *Wilson v. The Regents of The University of California*, Case No. 37-2023-00011636 (San Diego Cnty.); *Doe v. Hoag Memorial Presbyterian Hospital*, Case No. 30-2023-01302765 (Orange Cnty.); *Gibson v. Stanford Health Care*, Case No. 5:23-cv-02320 (N.D. Cal.); *Maxwell v. The Regents of The University of California*, Case No. 34-2023-00336792 (Sacramento Cnty.); *Birdwell v. Costco Wholesale Corp.*, Case No. C23-02416 (Contra Costa Cnty.); *Gray v. Luxottica of America Inc.*, Case No. 8:24-cv-160 (C.D. Cal.).

The leader of Bursor & Fisher's trial team for this case, Philip Fraietta, has been named a "Rising Star" in the New York Metro Area by Super Lawyers every year since 2019. Fraietta Decl. ¶ 2. Mr. Fraietta has been counsel in a number of high-profile data privacy settlements, including *Rivera v. Google LLC*, 2019-CH-00990 (Cir. Ct. Cook Cnty.) ($100 million class settlement to resolve alleged Biometric Information Privacy Act violations of Illinois residents appearing in photos on the Google Photos platform); *Schreiber v. Mayo Foundation*, 22-cv-00188 (W.D. Mich.) ($52.5 million class settlement to resolve claims of health letter subscribers for alleged violations of the Michigan Preservation of Personal Privacy Act); *Edwards v. Hearst Communications, Inc*., 15-cv-09279 (S.D.N.Y.) ($50 million class settlement to resolve claims of magazine subscribers for alleged violations of the Michigan Preservation of Personal Privacy Act); and *Ramos v. ZoomInfo Technologies, LLC*, 21-cv-02032 (N.D. Ill.) ($29.5 million class settlement to resolve alleged claims under the right of publicity statutes of California, Illinois, Indiana, and Nevada on behalf of residents who appeared in an online database). *Id*. Mr. Fraietta has also achieved significant victories in unprecedented areas of data privacy law. He secured summary judgment on behalf of the named plaintiff under the Michigan Preservation of Personal

Privacy Act and created novel law on this previously, sparsely litigated statute. *See Boelter v. Hearst Commc'ns Inc.*, 15-cv-003934, 269 F. Supp. 3d 172 (S.D.N.Y. 2017) (granting novel motion for summary judgment for the named plaintiff in a Michigan Preservation of Personal Privacy Act case). Most recently, Mr. Fraietta achieved the first ever contested class certification under the Video Protection Privacy Act and in a Meta Pixel case. *See Jancik v. WebMD LLC*, 22-cv-00644, 2025 WL 560705 (N.D. Ga. Feb. 20, 2025) (certifying class in Meta Pixel based VPPA case).

Further, Mr. Fraietta is counsel of record on numerous cases that, like this matter, involve widespread online surveillance by data brokers, cases which require extensive technical expertise and where Mr. Fraietta represents consumers against some of the largest technology companies in the world. *See Gilligan v. Experian Data Corp.*, No. 5:25-cv-02873 (N.D. Cal.); *Penning v. Microsoft Corp.*, No. 2:25-cv-00570 (W.D. Wash.); *In re The Trade Desk, Inc. Data Privacy Litigation*, No. 3:25-cv-2889 (N.D. Cal.); *Selby v. Sovrn Holdings, Inc.*, No. 4:25-cv-03139 (N.D. Cal.); *Semien v. Pubmatic, Inc.*, No. 3:25-cv-03164 (N.D. Cal.); *McGee v. Epsilon Data Management, LLC*, No. 5:25-cv-00928 (C.D. Cal.).

Bursor & Fisher was lead counsel in *Edwards v. Hearst Communications, Inc.*, 1:15-cv-09279 (S.D.N.Y), a case brought to remedy unlawful video sharing under Michigan law. Mr. Fraietta, as one of the primary lawyers at Bursor & Fisher responsible for the case, succeeded in *Hearst*, which ultimately led to one of the largest-ever class action settlements in a data privacy case. Specifically, Bursor & Fisher defeated a motion to dismiss premised on issues of first impression such as Article III standing in light of the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), retroactive application of an amendment to Michigan's statute, and a First Amendment challenge to Michigan's statute. *Boelter v. Hearst Commcn's, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016). From there, Bursor & Fisher took extensive discovery from the defendant and numerous third parties and upon that factual record won a motion for partial summary judgment for the named plaintiff, while also

defeating defendant's motion for summary judgment in all material respects. *Boelter v. Hearst Commcn's, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017). That success, as well as the evidence uncovered in discovery pertaining to class certification, resulted in a settlement, which the Court approved, that created a $50 million non-reversionary settlement fund. *Edwards v. Hearst Commcn's, Inc.*, 1:15-cv-09279-AT-JLC, at ECF No. 314 (S.D.N.Y. Apr. 24, 2019) (Final Judgment and Order of Dismissal with Prejudice).

Additionally, in a robocall case, Bursor & Fisher won a trial verdict, resulting in a class judgment of $267 million. *Perez v. Rash Curtis & Associates*, No. 4:16-cv-03396-YGR, 2020 WL 1904533, at *21 (N.D. Cal. Apr. 17, 2020) ("Rash Curtis"). District Judge Yvonne Gonzalez Rogers, in upholding the $267 million award, noted "the general quality of the representation and the complexity and novelty of the issues" and that "[t]he benefit obtained for the class is an extraordinary result." In another case involving Illinois's Biometric Information Privacy Act, Bursor & Fisher helped secure a $100 million class settlement on behalf of Illinois residents appearing on the Google Photos platform. *See Rivera v. Google LLC*, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Sep. 28, 2022).

The attorneys of Bursor & Fisher have achieved excellent results in class actions in which they have been appointed lead or co-lead class counsel. *See* Fraietta Decl. Exhibit 1 (Bursor & Fisher Firm Resume) at 1. For example, the firm negotiated and obtained court approval for two landmark settlements in *Nguyen v. Verizon Wireless* and *Zill v. Sprint Spectrum* (the largest and second largest classes ever certified, respectively). *See id*. These settlements required Verizon and Sprint to open their wireless networks to third-party devices and applications. *See id*. Such superlative results are the product of consistency, and Bursor & Fisher attorneys routinely win certification of multi-state and nationwide classes. *See Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116, at *1 (C.D. Cal. Sept. 23, 2020) (certifying multi-state class of purchasers of defective chainsaws); *Martinelli v. Johnson & Johnson*,

2019 WL 1429653, at *10 (E.D. Cal. Mar. 29, 2019) (certifying multi-state class of purchasers of Benecol spreads); *Hart v. BHH, LLC*, 2017 WL 2912519, at *9 (S.D.N.Y. July 7, 2017) (certifying nationwide and multi-state classes of purchasers pest repellants); *Melgar v. Zicam LLC*, 2016 WL 1267870 at *7 (E.D. Cal. Mar. 31, 2016) (certifying multi-state classes of purchasers of Zicam's homeopathic cold remedies); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. Jan. 26, 2015); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014); *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *13 (C.D. Cal. Apr. 9, 2014). In total, within the past ten years, Bursor & Fisher lawyers have been court-appointed counsel or interim class counsel in more than 78 class actions. Fraietta Decl. Exhibit 1 at 1-6.

Equally important, Bursor & Fisher has proven that it can—and will—take cases to trial if necessary, having won multi-million-dollar verdicts or recoveries in six of six civil jury trials in consumer class actions since 2008. Fraietta Decl. ¶ 7. As noted above, one of these trial victories was *Rash Curtis,* where Bursor & Fisher secured a $267 million class judgment for consumers whose privacy was violated by robocalls. *Id*. In another example, while serving as lead trial counsel in *Thomas v. Global Vision Products, Inc.*, Bursor & Fisher obtained a $50 million jury verdict in favor of the plaintiff and class on a California Consumer Legal Remedies Act claim. *Id*. Also, in *Ayyad v. Sprint Spectrum, L.P.*, Bursor & Fisher obtained a $299 million trial verdict for a class of Sprint customers on a claim for unjust enrichment. *Id*.

### 3.    Additional Factors Supporting Appointment

The Court may consider other matters in making appointments, per Rule 23(g)(1)(B). One consideration here is that Proposed Class Counsel attempted to obtain a cooperative agreement about case leadership and consensus between counsel in the Related Actions prior to filing this motion. Fraietta Decl. ¶¶ 18-19. Although Proposed Class Counsel's outreach to the Loevy & Loevy law firm was unsuccessful, their attempt to organize this litigation for the benefit of the class reflects the highest level of leadership. Their attempted private ordering further

supports appointing Ms. Wolfson and Mr. Fraietta as interim co-lead counsel. MANUAL FOR COMPLEX LITIGATION, §§ 10.22, 21.272.

Another consideration is that Ms. Wolfson is a career-long California attorney who long has been admitted to practice in the state of California and practiced in the Central District throughout her career. Her service as a lawyer representative for the Central District of California and as a member of the Merit Selection Panel has afforded her further insight into the workings of this District. Attorneys at her firm and at BF also are admitted to and regularly practice in California, including Mr. Fraietta. The court in *City of Providence, Rhode Island v. AbbVie Inc.*, No. 1:20-cv-05538-LJL, 2020 WL 6049139 (S.D.N.Y. Oct. 13, 2020), observed the importance of familiarity with local practice in selecting lead counsel:

> Admission to the bar of [this district] requires and reflects a commitment to practice in this District and to abide by its rules and practices. ... At a practical level, counsel long admitted to this Court, and who plan to continue to practice in this Court, are presumptively steeped in its mores and traditions. That provides the Court some comfort that both those who will appear in Court and those who will operate behind-the-scenes in document production and deposition will adhere to and benefit from familiarity with those traditions. Finally, in terms of the sheer cost that will be charged to the class (in the event of recovery), a significant presence in [this district] for a litigation in [this district] against a [local] defendant matters. This case will be tried in [this district], arguments and motion practice will be in [this district], and presumably many of the depositions will be taken in [this district]. Counsel who are in [this district] will be able to handle those matters without travel.

*Id.* at *7.

Ms. Wolfson is court-appointed counsel in a number of other ongoing consumer class action matters pending in this District. For example, she is co-lead counsel in *ZF-TRW Airbag Control Units Products Liability Litigation*, No. 2:19-ml-02905 (C.D. Cal.) (Hon. John A. Kronstadt), a class action alleging a dangerous defect in car airbag

component units, and *In re LoanDepot Data Breach Litigation*, No. 8:24-cv-00136 (C.D. Cal.) (Hon David O. Carter), where plaintiffs moved just days ago for final approval of a class action settlement valued at over $98.5 million. Wolfson Decl. ¶ 11 and Exhibit A.

In appointing Ms. Wolfson among competing leadership applications in *Clark v. American Honda Motor Co., Inc.*, No. 2:20-cv-03147 (C.D. Cal. 2020), Judge Birotte noted:

> The Court believes that Ms. Wolfson brings particular attention to the virtues of collaboration, efficiency, and cost-containment which strike the Court as especially necessary in a case such as this. Ms. Wolfson's appointment as Co-Lead also brings diversity to the ranks of attorneys appointed to such positions: such diversity is not simply a 'plus factor' but the Court firmly believes that diverse perspectives improve decision-making and leadership.

2:20-cv-03147, ECF No. 68.

The Proposed Class Counsel's familiarity with and experience in this Court, further support the requested appointments.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court grant their motion and enter an order: (1) consolidating the Related Actions pursuant to Fed. R. Civ. P. 42(a) under the caption of the earlier-filed *Lewis* action, and administratively terminate *Tsering*; (2) appoint Tina Wolfson of Ahdoot & Wolfson, PC, and Philip L. Fraietta of Bursor & Fisher, P.A. as interim co-lead class counsel pursuant to Fed. R. Civ. P. 23(g); and (3) set a deadline for Plaintiffs to file a consolidated complaint within 45 days from entry of any order appointing interim class counsel.

Dated: July 3, 2025                  Respectfully Submitted,

By: */s/ Tina Wolfson*
        Tina Wolfson (SBN 174806)

Theodore W. Maya (SBN 223242)
Alyssa Brown (SBN 301313)
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank CA 91505
Phone: (310) 474-9111
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
abrown@ahdootwolfson.com

Philip L. Fraietta (SBN 354768)
Max S. Roberts (*pro hac vice* forthcoming)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163
pfraietta@bursor.com
mroberts@bursor.com

Joshua R. Wilner (SBN 353949)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
jwilner@bursor.com

*Proposed Interim Class Counsel*

## **LOCAL RULE 11-6.2 CERTIFICATION**

The undersigned counsel of record for plaintiffs in *Tsering, et al. v. Magnite, Inc.*, No. 2:25-cv-04874 certifies that this brief contains nineteen pages and 6,110 words, which:

☒   complies with the word limit of L.R. 11-6.1


Dated: July 3, 2025                              */s/ Tina Wolfson*
                                                    Tina Wolfson