Thomas M. Hanson, State Bar No. 184465
hanson@loevy.com
Jon Loevy, *pro hac vice*
jon@loevy.com
Mike Kanovitz, *pro hac vice*
mike@loevy.com
David B. Owens, State Bar No. 275030
david@loevy.com
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (phone)
(312) 243-5902 (fax)

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDWARD LEWIS, GLADYS SOLIS, and PATRICIA CASTILLO, individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>MAGNITE, INC.,<br><br>Defendant. | Case No. 2:25-CV-03448-MWC-SSC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: December 5, 2025<br>Time: 1:30 p.m.<br>Courtroom: 6A<br>Judge: Hon. Michelle Williams Court |

LOEVY & LOEVY
Attorneys at Law

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 1

III. LEGAL STANDARD ..... 2

IV. ARGUMENT ..... 3

A. Plaintiffs have made a *Prima Facie* Showing of Specific Jurisdiction ..... 3

"Express Aiming" ..... 4

"Knowledge of Harm" ..... 6

B. Plaintiffs have Plausibly Alleged Each Cause of Action ..... 8

*1. Plaintiffs have adequately pled Intrusion Upon Seclusion and Invasion of Privacy* ..... 8

"Reasonable Expectation of Privacy" ..... 8

"Highly Offensive Conduct" ..... 10

Representation of Nationwide Class ..... 13

*2. Defendant's Argument that the Rubicon Tracker is not a "Pen Register" is Without Merit* ..... 14

*3. Plaintiffs' Wiretapping Claims Are Adequately Pled* ..... 17

*a. Plaintiffs have Plausibly Alleged Interception of Communications* ..... 17

*b. Plaintiffs have Plausibly Alleged the In-Transit Element* ..... 18

*c. The Party Consent Rule does not Defeat the ECPA Claim* ..... 19

*4. Defendant's Rule of Lenity Argument Fails Under Settled California Supreme Court Precedent* ..... 20


LOEVY & LOEVY
Attorneys at Law

5. *Plaintiffs have Adequately Alleged a Standalone Claim for Unjust Enrichment* ........ 22

V. CONCLUSION ........ 25


LOEVY & LOEVY
Attorneys at Law

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Anderson v. Apple Inc.*,
500 F. Supp. 3d 993 (N.D. Cal. 2020)....................13

*Arpin v. Santa Clara Valley Trasp. Agency*,
261 F.3d 912 (9th Cir. 2001)....................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015)....................22, 23

*Bilyeu v. Morgan Stanley Long Term Disability Plan,*
711 F. App'x 380 (9th Cir. 2017)....................25

*Briskin v. Shopify*,
135 F.4th 739 (9th Cir. 2025)....................4, 5, 6, 7, 8

*Brooks v. Thompson Reuters Corp.*,
No. 21-cv-1418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021)....................24

*Burton v. Gerber Prod. Co.*,
703 F.App'x 468 (9th Cir. 2017)....................23

*Conahan v. Rad Power Bikes Inc.*,
2025 WL 1111246 (C.D. Cal. Apr. 3, 2025)....................15

*Day v. Advanced Micro Devices, Inc.*,
No. 22-cv-04305 (VC), 2023 WL 2347421....................22

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024)....................11

*Doe I v. Wal-Mart Stores, Inc.*,
572 F.3d 677 (9th Cir. 2009)....................24



LOEVY & LOEVY
Attorneys at Law

*Esparza v. Kohl's*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 12
*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 14
*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 6, 7
*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) .......... 15, 21
*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 11, 15
*Griffith v. TikTok*,
2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) .......... 22
*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 12
*Hart v. TWC Prod. ¶ Tech. LLC*,
526 F. Supp. 3d 592 (N.D Cal. 2021) .......... 10, 23
*Heiting v. HP Inc.*,
No. 24STCV29634 (Cal. Super. Ct. L.A. Cty. Aug. 1, 2025) .......... 15
*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) .......... 8
*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 11
*Hill v. Nat'l Collegiate Athletic* Ass'n,
7 Cal. 4th 1 (1994) .......... 9

LOEVY & LOEVY
Attorneys at Law

*Howard v. Lab. Corp. of Am.*,
2024 WL 4250677 (M.D.N.C. Aug, 8, 2024),
2024 WL 4326898 (M.D.N.C. Sept. 27, 2024) .......... 21

*Hughes v. Dave & Buster's Entertainment, Inc.*,
No. 25STCV10250 (Cal Super. Ct. L.A. Cnty. Jul. 15, 2025) .......... 15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 8, 9, 10

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 17

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928, 2023 WL 6466195 (N.D. Cal. 2023) .......... 9, 23, 24

*Khoja v. Orexigen Theraputics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 10

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) .......... 16

*Matera v. Google, Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 14

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) .......... 13

*McKesson HBOC, Inc. v. NY State Common Retirement Fund, Inc.*,
339 F.3d 1087 (9th Cir. 2003) .......... 25

*Mirmalek v. Los Angeles Times Comm'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 14, 21

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......... 14

LOEVY & LOEVY
Attorneys at Law

*Moody v. Textron, Inc.*,
2025 WL 2828109 (C.D. Cal. Sept. 24, 2025)....................................5, 6
*Ocasio v. United States*,
578 U.S. 282 (2016) ..................................................................20, 21
*Plotts v. Am. Honda Motor Co., Inc.*,
2023 WL 4843342 (C.D. Cal. June 9, 2023)........................................25
*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ......................................................11, 12
*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015)...........................................................2
*Regions Bank v. Car Wash Management, LLC*,
2025 WL 2765231 (C.D. Cal. Sept. 25, 2025)......................................24
*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp.3d 1075 (N.D. Cal. 2025),
2025 WL 2021802 ...............................................8, 10, 11, 21, 23, 24
*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025)................................................14
*Russell v. Walmart*,
680 F. Supp. 3d 1130 (N.D. Cal. 2023)...............................................23
*Scharon v. Paramount Global*,
No. 25STCV10585 (Cal. Super. Ct. L.A. Cty. Oct. 3, 2025) .......................15
*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004)..............................................................3
*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016)...........................................................16

LOEVY & LOEVY
Attorneys at Law

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ............................................ 14, 16, 21

*Sheehan v. San Francisco 49ers, Ltd.*,
45 Cal. 4th 992 (2009) ............................................................................ 10

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ........................................................................ 20, 21

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ..................................................................... 24

*TBG Ins. Serv. Corp. v. Super. Ct.*,
96 Cal. App. 4th 443 (2002) ...................................................................... 16

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) ........................................................ 21

*Walden v. Fiore*,
571 U.S. 277 (2014) .................................................................................... 3

*Wallace v. SharkNinja Operating, LLC*,
No. 18-cv-05221-BLF, 2020 WL 1139649
(N.D. Cal. Mar. 9, 2020) ............................................................................ 13

**Statutes** **Page(s)**

California Invasion of Privacy Act ("CIPA"),
California Penal Code § 630, *et seq.* .......................... 2, 14, 16, 17, 19, 20, 21

Electronic Communications Privacy Act ("ECPA"),
18 U.S.C. § 2511(1), *et seq.* ..................................................................... 2, 17

LOEVY & LOEVY
Attorneys at Law

**Other Authorities** **Page(s)**

Restatement (Second) of Torts,
(Am. Law Inst. 1977) ....................13

Restatement (Third) of Restitution and Unjust Enrichment,
(Am. Law Inst. 2011) ....................25

LOEVY & LOEVY
Attorneys at Law

## I. INTRODUCTION

Defendant's Motion to Dismiss attempts to excuse its blatant privacy violations by reference to two interrelated concepts: that cookies like its Rubicon Tracker are ubiquitous, and that the data they collect "forms backbone of the free internet." (Dkt. 52-1 at 13.) These tenets call to mind the 1999 statement from Scott McNealy, then-CEO of Sun Microsystems: "You have zero privacy anyway. Get over it."[1]

With due respect to Mr. McNealy, and to Defendant's detriment, consumers do still have privacy rights, thanks to laws like the California Invasion of Privacy Act, the Electronic Communications Privacy Act, and the California Constitution's right to privacy. And the allegations of the Consolidated Amended Complaint ("CAC", Dkt. 51), taken as true as they must be for on a motion to dismiss, plausibly allege that Defendant violated these laws.

The CAC also adequately alleges that Defendant is subject to personal jurisdiction in California. Defendant's protestations to the contrary notwithstanding they do not and cannot deny that the Rubicon Tracker was developed in California and is implemented on websites known by Defendant to be used by California residents, such as Plaintiffs. Simply put, Defendant is subject to California's laws protecting its residents' privacy, and it is subject to being sued in this state for its flagrant violation of those laws. For these reasons, and those set forth below, Defendant's motion should be denied in its entirety.

## II. FACTUAL BACKGROUND

Plaintiffs filed the CAC on behalf of themselves and a nationwide Class and California Subclass of similarly situated individuals, for damages and injunctive relief against Defendant for violations of the California Invasion of Privacy Act ("CIPA"),

[1] https://www.wired.com/1999/01/sun-on-privacy-get-over-it/, last viewed November 14, 2025.



LOEVY & LOEVY
Attorneys at Law

California Penal Code § 630, et seq., the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1), *et seq.*, intrusion upon seclusion, right to privacy as enshrined in the California Constitution, and unjust enrichment. The allegations center on Defendant's unauthorized collection, recording, and dissemination of Plaintiffs' and class members' personal information, including geolocation data, communications, and other highly sensitive personal data. CAC, ¶¶ 1-3. Unbeknownst to Plaintiffs, Magnite, a registered data broker, collected private information about them via a proprietary online tracker called the Rubicon Tracker. *Id.* ¶¶ 5, 6, 14. The Rubicon Tracker was installed onto Plaintiffs' devices, without their knowledge or consent, when visiting a wide range of websites or apps that implement the Rubicon Tracker. *Id.* ¶¶ 60-80, 108, 114, 120. Magnite then uses this information to build profiles of these individuals that are so specific, they are essentially deanonymized. *Id.* ¶¶ 10-11. Magnite then sells for profit to third parties, such as advertisers. *Id.* ¶¶ 4, 10-11.

Critically, because Magnite, via the Rubicon Tracker, extracts geolocation data for each individual, Magnite is aware of the location of each person subjected – unwittingly – to this data mining. *Id.* ¶¶ 1, 3, 6, 9, 10-11, 14. All the while, individuals are unaware that Magnite is collecting and disseminating this highly sensitive, personal data to Magnite, because the Rubicon Tracker is embedded seamlessly, without notification to the individual who is browsing. *Id.* ¶¶ 5-6, 10-11, 14, 20, 45, 47, 56-57, 60-80. Plaintiffs did not provide their consent to Magnite or authorize this collection of their personal information. *Id.* ¶¶ 11, 14, 24, 139, 150, 169-70, 201.

## III. LEGAL STANDARD

"Where, as here, the defendant's motion [to dismiss for lack of personal jurisdiction] is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand it." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citation omitted). The Court

must accept Plaintiff's allegations as true and resolve any factual disputes in plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

A motion to dismiss pursuant to FRCP 12(b)(6) must be denied so long as it contains sufficient factual information, acceptable as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. ARGUMENT

### A. Plaintiffs have made a *Prima Facie* Showing of Specific Jurisdiction

Personal jurisdiction is appropriate when "the defendants' intentional tort actually occurred within the forum." *Walden v. Fiore*, 571 U.S. 277, 287-88 (2014). A forum state may assert specific jurisdiction over a nonresident defendant when a three-part test is satisfied: (1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice; i.e. it must be reasonable. *Schwarzenegger*, 374 F.3d at 802. Plaintiffs bear the burden of satisfying the first two prongs of this test; Defendant has the burden of persuasion on the third element. *Id.*

For certain claims, such as the privacy and data use violations of the kind Plaintiffs have alleged here, the Ninth Circuit uses a "purposeful direction" analysis for the first element of the specific personal jurisdiction test, to determine whether the tort was purposefully directed to the forum state. *Id.* at 802-03. This purposeful direction test requires showing that (1) defendant commits an intentional act that is (2) expressly aimed at the forum state; and which (3) causes harm that the defendant

knows will occur in the forum state. *Briskin v. Shopify*, 135 F.4th 739, 751 (9th Cir. 2025).

*Briskin* is directly on point, and confirms that the CAC's allegations that Magnite extracts, disseminates, and monetizes sensitive consumer data from Plaintiffs, all California residents, are sufficient to establish specific personal jurisdiction in California. CAC ¶¶ 5-6, 10-11, 14, 20, 60-80, 108, 114, 120. In *Briskin*, the Ninth Circuit held that similar alleged conduct is sufficient to confer personal jurisdiction when it is aimed at a forum state resident, even absent differential targeting of that forum state. *Briskin*, 135 F.4th at 756.

Specifically, in *Briskin*, as here, the plaintiff alleged that the defendant knew the plaintiff's location via the defendant's collection of the geolocation data gathered surreptitiously through cookies installed on the plaintiff's device. *Id.* at 747-48. The Court held that the defendant's deliberate operation of a platform in the forum state, couple with collection and sale of sensitive user data via cookies, satisfies the minimum contacts analysis. *Id.* at 760.

Despite its obvious applicability to this case, Defendant's motion barely mentions *Briskin*, much less its extensive (and controlling) discussion of personal jurisdiction in the context of data collection. Instead, Defendant argues Plaintiffs have not met their burden on the second ("express aiming") and third (knowledge of harm) elements of the purposeful direction test, and urges that finding jurisdiction in this case will result in universal jurisdiction in any locale where a website is accessed. (Dkt. 52-1 at 18-20.) Defendant is wrong on both accounts

**"Express Aiming":** As to the "express aiming" element, Magnite incorrectly frames the contact between Plaintiffs and Defendant in this case as "random, isolated, or fortuitous" because Plaintiffs each visited a website that contracted with Magnite, thereby initiating surreptitious siphoning of Plaintiffs' data without their knowledge.

LOEVY & LOEVY
Attorneys at Law

(Dkt. 52-1 at 18-19.) These arguments – that it is Plaintiffs' own fault their data was collected and monetized and that there is no jurisdiction without an additional showing of "targeting" – were both rejected in *Briskin*, wherein the Court explained that "it is clear that [Defendant] expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of California consumers' personal data in violation of California laws." *Briskin*, 135 F.4th at 756. The Court further found that the plaintiff's initiation of the chain of events that led to the unlawful data collection did not defeat the purposeful direction analysis, because the defendant (like Magnite here) "knew the location of consumers like [Plaintiffs] either prior to or shortly after installing its initial tracking software onto their devices," and thus the defendant's "intentional activities constitute express aiming toward California and its consumers to obtain and use their personal data for its own commercial gain." *Id.*

So, too, here. The CAC alleges in detail how Magnite extracts data from individuals whom it knows are located in California, creates tools designed to facilitate data collection from those individuals, and creates unique profiles of those individuals that it then monetizes. (Dkt. 51, ¶¶ 40, 46, 58, 76-77, 89, 94, 108, 114, 120.) *Briskin* makes clear that a Defendant that enters the forum state electronically and unknowingly intercepts consumers' personal information has aimed its activities toward that forum state through its own conduct, not "mere happenstance" because of Plaintiffs' conduct. *Briskin*, 135 F.4th at 756.

While barely acknowledging the controlling precedent of Briskin, Defendant's heavy reliance on this Court's recent opinion in *Moody v. Textron, Inc.*, 2025 WL 2828109 (C.D. Cal. Sept. 24, 2025) is misplaced. In *Moody*, unlike in this case, the defendant was alleged not to collect and de-anonymize data itself, but rather served as a conduit between consumers and third parties which enabled those third parties to

identify Plaintiffs as California residents. *Id.* at *5. Here, Magnite itself collects the IP address and geolocation data necessary to de-anonymize consumers and identify them as California residents; indeed, Magnite's entire business model is premised on establishing a marketplace pursuant to which – thanks to the unique profiles Magnite has created for consumers – ad buyers and ad sellers know exactly to whom their ads are being targeted.

Similarly unavailing is Defendant's argument that its status as a nationwide operator means that it has not expressly aimed its conduct at California. It is settled law that specific personal jurisdiction can arise wherever a company serves a market in a forum State, even if it does not have a forum-specific focus and even if it is a nationwide business. *See, e.g.*, *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 355, 365 (2021) (explaining that although Ford's "business is everywhere," it was still subject to jurisdiction in Minnesota and Montana, where it availed itself of their markets for product). This point was recently reiterated in *Briskin*, where the Ninth Circuit rejected the argument that "express aiming" requires a showing of differential treatment or targeting of the forum state. *Briskin*, 135 F.4th at 757-58.

**"Knowledge of Harm":** Magnite argues that the CAC does not allege that Magnite knew Plaintiffs "were residents of California" or that Magnite knew its actions would cause harm in California. (Dkt. 52-1 at 19.) This argument ignores the CAC's numerous and detailed allegations describing how Magnite obtained Plaintiffs' IP addresses and geolocation data. (Dkt. 51 at ¶¶ 6, 24, 60, 63, 82, 83, 84, 94), which allegations indisputably establish that Defendant knew it was targeting the information of California residents without their consent.

Magnite attempts to deflect by arguing that the CAC alleges that "third-party advertisers targeted ads based on location, not Magnite." (Dkt. 52-1 at 19, citing CAC ¶ 20.) This argument proves too much. The harm described in the CAC is Magnite's

violation of California law via its surreptitious collection of Plaintiffs' personal data. Magnite's collection of data is not the "act[] of a third part[y]," despite Defendant's argument to the contrary. Moreover, Magnite's quote from paragraph 20 is selectively incomplete, as the remainder of the paragraph (and numerous other allegations throughout the CAC) makes clear that among the data that Magnite extracts, aggregates, and monetizes is Plaintiffs' state of residence. Stated another way, Magnite itself collects information that reveals Plaintiffs' California residence, which is subsequently sold to others.

Finally, Magnite's argument that finding personal jurisdiction here would lead to nationwide jurisdiction for virtually every company in the country is wildly hyperbolic, and ignores that Magnite's collection of IP and geolocation data, pursuant to which it knows it is collecting data from California residents, is only one element of personal jurisdiction. The cases cited by Magnite relied entirely on the collection of IP information to attempt to establish personal jurisdiction. The purpose of the allegations in this case, in contrast, is to show that Magnite knows it is surreptitiously collecting and monetizing the personal data of California residents in violation of California law. Again, *Briskin* is directly on point explaining that a Defendant that is "agnostic" as to the location in which it data-mines consumers' personal identifying information can still expressly aim its conduct at that location. 135 F.4th at 757 (citing *Ford Motor Co.*, 592 U.S. at 355, 363). Even if Magnite is subjected to specific jurisdiction in all 50 states, "[t]hat may be true, but not unfair, if the contacts [Magnite] makes in all 50 states are like is California contacts," and so long as those states have laws like California "protecting their citizens from what [Defendant]

LOEVY & LOEVY
Attorneys at Law

allegedly does in the regular course of business, laws which [Plaintiffs] claim[] [Defendant] violated here." *Id.* at 761.[2]

**B. Plaintiffs have Plausibly Alleged Each Cause of Action**

***1. Plaintiffs have adequately pled Intrusion Upon Seclusion and Invasion of Privacy***

Both invasion of privacy claims under the California Constitution and an intrusion upon seclusion claim under California law are analyzed under essentially the same standard. The intrusion of seclusion requires showing (1) a reasonable expectation of privacy; and (2) an intrusion of that privacy that was "highly offensive," while a claim for invasion of privacy requires plaintiffs to show that they (1) possess a legally protected privacy interest; (2) they maintain a reasonable expectation of privacy; and (3) the intrusion is so serious as to constitute an egregious breach of the social norms such that the breach is highly offensive. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Because of the similarity of the tests, courts consider the claims together and ask whether: (1) there exist a reasonable expectation of privacy, and (2) the intrusion was highly offensive. *Id.* Plaintiffs' allegations meet both of these standards.

**"Reasonable Expectation of Privacy":** The critical inquiry as to the "reasonable expectation of privacy" element "concerns the sensitivity of the data collected and the manner in which it was collected." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp.3d 1075, 1086 (N.D. Cal. 2025). Courts in this circuit have denied

---

[2] Moreover, there are guardrails in place that ensure that extracting personal data directly from users in the forum state may not confer jurisdiction in every case. The Ninth Circuit has recognized that it can be unreasonable for a state's courts to exercise jurisdiction over smaller online platforms in unfair circumstances for example, when their purposeful direction or availment of a state is limited or when it would be very burdensome for them to defend themselves. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1097 (9th Cir. 2023). Magnite makes no such arguments here.



LOEVY & LOEVY
Attorneys at Law

motions to dismiss that seek to short circuit litigation over data broker businesses' collection of highly sensitive information, online communications, and browsing activity to make user profiles that it sells for profit, similar to the allegations raised here. *See, e.g.*, *Katz-Lacabe v. Oracle Am.*, *Inc.*, 668 F. Supp. 3d 928, 935 (N.D. Cal. 2023).

Moreover, while California courts distinguish between "routine collection of personally identifiable information as part of electronic communications," in which case the courts have hesitated to extend the tort of the invasion of privacy, versus a collection "of intimate or sensitive personally identifiable information," which may amount to a highly offensive intrusion. *Hill v. Nat'l Collegiate Athletic* Ass'n, 7 Cal. 4th 1, 26 (1994), Defendant mischaracterizes Plaintiffs' privacy claims by suggesting that the allegations in the CAC touch upon merely "routine, pseudonymized tracking" that a "reasonable internet user cannot expect to avoid." (Dkt. 52-1 at 21.) Rather, Plaintiffs have pled that Defendant compiled information so detailed and so personalized that it resulted in a *deanonymized* user profile that could only be linked to a specific individual, including information relating to individual health and financial issues – precisely the type of "highly personalized profile[]" in which an individual has a reasonable expectation of privacy. *In re Facebook Tracking Litig.*, 956 F.3d at 604; *See, e.g.*, Dkt. 51 ¶¶ 11, 96, 102, 108, 114, 120. The CAC adequately and plausibly alleges that Magnite collected enormous amounts of individualized, sensitive personal data without Plaintiffs' knowledge and consent and that Plaintiffs have a reasonable expectation of privacy in the vast quantities of highly sensitive information Magnite has compiled and sold. (*Id.*, ¶¶ 11, 99-104, 108, 114, 120, 135, 138, 167-169, 173, 201.)

It is also no bar to the privacy claims that Magnite had a privacy policy, as such public disclosures do not overcome the fact that Plaintiffs were not aware of

Magnite's existence, let alone its intrusive conduct. *See Hart v. TWC Prod. ¶ Tech. LLC*, 526 F. Supp. 3d 592, 601 (N.D Cal. 2021) ("[T]he mere existence of a privacy policy is not dispositive because users may lack actual or constructive notice of the policy."); (Dkt. 51 ¶¶ 6, 108, 114, 120, 161.) Plaintiffs have a right to privacy to the vast information that Magnite tracked across thousands of websites and generating uniquely identifying personal profiles, and the allegations in the CAC are sufficiently well-pled. *Riganian*, 791 F. Supp. 3d at 1086.

Similarly without merit is Magnite's argument that each of the websites listed in the CAC, as well as Magnite itself, have privacy policies that disclose their data collection practices of personal information. (Dkt. 52-1 at 22.) To make this argument, Magnite has attached numerous privacy policies for various websites, even though the CAC makes no mention of them. *See* Thompson Decl., Exs. 3-30. The Court should disregard Defendant's attempts to insert these documents into the present record and its reliance upon them in making its argument in favor of dismissing Counts I and IV.[3]

<u>**"Highly Offensive Conduct":**</u> Magnite argues that "Plaintiffs allegations do not come close to" pleading "an egregious breach of social norms" that would show that the invasion of privacy was highly offensive. (Dkt. 52-1 at 23.) However, it is premature at the pleading stage to determine whether the alleged conduct is indeed "highly offensive," as it is a fact-intensive inquiry specific to the circumstances, and the California Supreme Court emphasized the importance of having an adequate factual record before dismissing a privacy claim. *Sheehan v. San Francisco 49ers, Ltd.,* 45 Cal. 4th 992 (2009); *In re Facebook Tracking Litig.*, 956 F.3d at 606 (citing

---

[3] *See Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1003 (9th Cir. 2018) (declining to rely upon materials that were extraneous to the pleadings on motion to dismiss and explaining that "[s]ubmitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint"); *see also Arpin v. Santa Clara Valley Trasp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

LOEVY & LOEVY
Attorneys at Law

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272(2009)). When determining whether an invasion is "highly offensive," courts consider the motives and objectives of the Defendant and the degree and setting of the intrusion, and the "alleged aggregation, synthesis, and sale" of comprehensive data of individuals without their knowledge is sufficient to defeat a Motion to Dismiss. *Riganian*, 791 F. Supp. 3d at 1088

Here, Plaintiffs have adequately pled that they did not know and did not authorize Magnite to extract, package, and sell their most sensitive data and communications and that this conduct was highly offensive. (Dkt. 51 ¶¶ 60-84; 94; 99-104, 108, 114, 120, 139-140, 171.) In addition, other courts in this Circuit have held that allegations of surreptitious collection of sensitive health data, as Plaintiffs have done here – in addition to allegations that additional categories of highly personal information were surreptitiously intercepted – is sufficient to survive on a 12(b)(6) Motion. (Dkt. 51 ¶¶ 65, 67, 75, 77, 196); *see also Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1257 (N.D. Cal. 2024) ("Plaintiff's allegations of surreptitious capturing of healthcare information are sufficient to state this claim"); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1046-47 (S.D. Cal. 2023) (finding "an egregious breach plausible" based on allegations that the "surreptitious collection of information that could reveal, for instance, a person's religious affiliation, sexual orientation, and medical condition").

Defendant also cites *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) as support for the contention that the data collected by Magnite is "materially indistinguishable from the conduct the Ninth Circuit deemed not 'highly offensive.'" *Id.* at 791. However, *Popa* concerned a motion to dismiss for lack of standing under 12(b)(1) to bring a claim under Pennsylvania's wiretapping law and a common law intrusion upon seclusion claim in which the Plaintiff identified "no embarrassing, invasive, or other private information collected…the monitoring of [Plaintiff's]

interactions with [one Defendant's] website seems most similar to a store clerk observing shoppers." *Id.*

That is not the case here. Pretermitting that Defendant Magnite has not brought moved under 12(b)(1), Plaintiffs in this matter have alleged that their most sensitive personal information and communications were not only collected but sold for profit. (Dkt. 51 ¶¶ 108-110, 114-16, 120-22, 123-24.) The CAC alleges a link between Magnite's operations and surreptitious collection and dissemination of sensitive personal data, which is sufficient to survive a motion to dismiss under 12(b)(6). *Id.*; *see also Esparza v. Kohl's*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) ("collection of intimate or sensitive personally identifying information may amount to a highly offensive intrusion.") (internal citation omitted); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) (denying motion to dismiss over invasion of privacy and intrusion upon seclusion claims where Google allegedly sold "sensitive personal information, such as plaintiff's IP address, geolocation data, web browsing information, search terms, and sensitive websites that plaintiffs visited relating to race, religion, sexual orientation, and health); (Dkt. 51 ¶ 67 (Magnite also intercepts user communications every time a user visits a website…includ[ing] highly personal information such as health status and treatment, travel plans, political affiliation, sexual orientation, and many, many more"); *see also id.* ¶¶ 75, 77, 196.)

Finally, Defendant's reference to Plaintiffs' rights under the CCPA and the Delete Act do not defeat Plaintiffs' ability to bring claims under the California Constitution or for common law intrusion upon seclusion. As an initial matter, the Delete Act is not yet effective, and thus provided no rights to Plaintiffs during the time period covered in the Complaint. More fundamentally, however, nothing in either statute suggests that they somehow preempt common law or constitutional privacy rights, and Defendant does not argue to the contrary.

LOEVY & LOEVY
Attorneys at Law

**Representation of Nationwide Class:** Without analysis, Defendant argues that Plaintiffs cannot represent a nationwide intrusion upon seclusion class, apparently because choice of law issues would render class treatment inappropriate. District courts in the Ninth Circuit have often deferred choice-of-law issues until the class certification stage, rather than deciding them at the motion to dismiss stage. *See, e.g.*, *Wallace v. SharkNinja Operating, LLC*, No. 18-cv-05221-BLF, 2020 WL 1139649, at *15 (N.D. Cal. Mar. 9, 2020). "To determine whether the choice-of-law analysis should occur on the pleadings or at class certification, courts generally look to whether discovery would be a meaningful aid to that inquiry." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1010 (N.D. Cal. 2020). Discovery is meaningful when the record is not yet sufficient to understand whether and what conflict-of-aw issues are at play. *Id.*

Moreover, a multistate class would not necessarily be inappropriate here, as numerous states apply the Restatement (Second) of Torts, § 652B with no material variation, the same as California, for the tort of inclusion upon seclusion. *See McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022 (N.D. Cal. 2019) (citing 34 jurisdictions with materially similar or identical causes of action to California). Therefore, because further factual development would inform the choice-of-law determination, the Court should defer that determination until the parties have had the benefit of discovery.

LOEVY & LOEVY
Attorneys at Law

### *2. Defendant's Argument that the Rubicon Tracker is not a "Pen Register" is Without Merit*

Defendant's contention that the Rubicon Tracker is not a "pen register" is belied by the language of the statute and the broad interpretation courts are instructed to afford CIPA. Section 638.50 of CIPA defines a "pen register" as:

> A device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication.

Cal. Pen. Code § 638.50(b). In light of CIPA's intent to protect the right of privacy of the people of California, "the California Supreme Court has instructed courts to interpret CIPA in the manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests.'" *Matera v. Google, Inc.*, 2016 WL 8200619, at * 19 (N.D. Cal. Aug. 12, 2016) (quoting *Flanagan v. Flanagan*, 27 Cal.4th 766, 41 P.3d 575, 581 (2002)).

In light of this instruction from the California Supreme Court, federal courts, including several in this district, have held that online trackers or tracking software such as the Rubicon Tracker are "pen registers." *See, e.g., Mirmalek v. Los Angeles Times Comm'ns LLC*, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) ("[U]nder the inclusive language of CIPA's definition of a pen register, Plaintiff sufficiently alleges that the Trackers are a 'device or process…'"); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024) (agreeing with "[p]laintiffs' theory [] that the third-party Trackers operate as pen registers under the meaning of the statute because they are processes that record users' IP addressing information"); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) ("allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§ 638.50 and 638.51"); *Rodriguez v. Autotrader.com, Inc.*,

762 F. Supp. 3d 921 (C.D. Cal. 2025) (finding software constituted a "pen register"); *Conahan v. Rad Power Bikes Inc.*, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) (same); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (same); *Fregosa v. Mashable, Inc.*, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) (same).

Defendant makes no effort to actually contend that the Rubicon Tracker does not fall within the statutory definition. Indeed, Defendant curiously argues that Plaintiffs' allegation that the Rubicon Tracker is a "pen register" "misinterprets" CIPA's pen register provisions, but does not even quote the language of the statute or explain how Plaintiffs' "interpretation" – which as set forth above has been adopted throughout the California federal courts – fails to meet the statutory definition. Defendant does not do so because it cannot.

Instead, Defendant falls back on the CCPA and Delete Act to argue that because those laws also regulate digital advertising and consumers' privacy rights, they somehow obviate the plain language of CIPA. They do not. Neither the CCPA nor the Delete Act (which, again, is not even yet effective) purport to limit CIPA, either expressly or impliedly, or to amend its broad definition of a pen register. And tellingly, Defendant points to no language from either statute purporting to do so.

Defendant's citation to various state trial court orders is equally unavailing. For example, Defendant relies heavily on *Heiting v. HP Inc.*, No. 24STCV29634 (Cal. Super. Ct. L.A. Cty. Aug. 1, 2025) (Dkt. 52-33), but the plaintiff in that case solely alleged violations of CIPA's "trap and trace" provisions, and the court's ruling included no analysis of the "pen register" definition at issue here. The trial courts in *Scharon v. Paramount Global*, No. 25STCV10585 (Cal. Super. Ct. L.A. Cty. Oct. 3, 2025) (Dkt. 53-34) and *Hughes v. Dave & Buster's Entertainment, Inc.*, No. 25STCV10250 (Cal Super. Ct. L.A. Cnty. Jul. 15, 2025) both incongruously found

that CIPA's pen register provisions apply only to telephonic communications, an argument so divorced from the statutory language that Defendant does not even bother to make it. The remaining cases in Defendant's string cite are similarly unavailing, which is likely why Defendant opted not to advance any of the arguments upon which those cases are based.

Finally, Defendant argues the sky will fall if the Court sides with Plaintiff. (Dkt. 52-1 at 32:22-25) (arguing that "[i]f Plaintiffs' theory were correct, nearly every website and app operator in California would be violating the law"). Of course, the Internet has not collapsed since courts in this district and elsewhere first recognized the applicability of CIPA to online trackers more than two years ago. And moreover, "[t]o the extent that [Defendant] believes the statute may impose too many burdens when applied to the realities of modern technologies … the question of whether the statute's scope should be narrowed ultimately rests with the Legislature, not the courts." *Shah*, 754 F. Supp. 3d at 933. But to be clear, Defendant is not *per se* precluded from installing the Rubicon Tracker; it simply must procure its consumers' prior consent to do so. *See Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 42-43 (S.D.N.Y. 2025) (evaluating, although rejecting, consent defense to a CIPA § 638.51 claim); *see also TBG Ins. Serv. Corp. v. Super. Ct.*, 96 Cal. App. 4th 443, 450 n.5 (2002) ("Zieminski's consent [i]s a complete defense to his invasion of privacy claim."). "This is not hard to accomplish, as the enormous volume of commerce on the Internet attests." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016). Defendant's failure to take this simple step is a problem of Defendant's own making, not an issue with the law.

***3. Plaintiffs' Wiretapping Claims Are Adequately Pled***

*a. <u>Plaintiffs have Plausibly Alleged Interception of Communications</u>*

Defendant's arguments as to Plaintiffs' wiretapping claims pursuant to CIPA Section 631(a) and the ECPA wholly misconstrue Plaintiffs' theory. As detailed in the CAC, Plaintiffs and putative class members communicate with websites when they type in search queries on websites and apps utilizing the Rubicon Tracker. (Dkt. 51 ¶¶ 65-68.) These communications are indisputably communicated over a wire, and they are just as indisputably (according to the CAC's allegations) intercepted in real time by Magnite.

Nonetheless, Defendant contends that such queries are not covered by CIPA or the ECPA because the information intercepted by Magnite does not constitute the "content" of Plaintiffs' communications. This is flatly wrong, as demonstrated by the graphic depiction of the packet of information captured by Magnite, which includes the exact query submitted by the user – i.e., the user's communication to the website – prefaced by a notation that the communication is the "searchterm" submitted by the user.

In this regard, Defendant's citation to *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) proves too much. In *Zynga* – which arose under the ECPA, and did not include claims brought under CIPA Section 631(a) – the Ninth Circuit analyzed whether the information transmitted by an HTTP request (triggered by, for example, clicking on a hyperlink) constituted the contents of a communication pursuant to the ECPA. *Id.* at 1105. The Court held that standard HTTP request information was not "content" because it did not reveal the "substance, purport, or meaning" of a communication, but rather was more akin to "addressing information" that falls outside the protection of the Fourth Amendment. *Id.* at 1107-08.

The search queries intercepted by Magnite, in contrast, include the actual, unabridged content of the search query. To be sure, this information is packaged with a wealth of other information that, although it may not be "content," allows Magnite to deanonymize the communication so that it can add to the user profile and allow ad buyers greater accuracy in targeting. What makes this case distinct from *Zynga* and similar cases, however, is that Magnite is actually intercepting the exact content of the user's communication.

Defendant seems to recognize this distinction, arguing in the alternative that Plaintiffs do not plausibly allege that Magnite obtained their specific search terms. The CAC, however, includes a specific example of how Defendant captures search queries from the websites on which the Rubicon Tracker is installed. The CAC also details how Plaintiffs and putative class members have used websites and apps on which the Rubicon Tracker has been installed. Such allegations are neither generalized nor hypothetical, but rather serve as a graphic exemplar demonstrating that Magnite did, in fact, intercept the content of Plaintiffs' communications.

*b. <u>Plaintiffs have Plausibly Alleged the In-Transit Element</u>*

Defendant's argument that Plaintiffs have not plausibly alleged interception of their communications while "in transit" fares no better. The CAC details exactly how the Rubicon Tracker works: when Plaintiffs and putative class members visit a site or use an app which has installed the Rubicon Tracker, the tracker is installed directly on "Plaintiffs' and Class Member users' browsers and computing devices." (Dkt. 51 ¶ 55.) Thus the interception of, for example, a search query, occurs simultaneously with the users' sending of the communication to the website. In other words, the CAC makes clear that Magnite's interception of Plaintiffs' communications occurred while the communication was in transit, and not (as Defendant suggests) while the communication was in "electronic storage." (Dkt. 52-1 at 28.) As for Defendant's

argument that Plaintiffs have not alleged that Magnite didn't "read, attempt to read, or learn the contents" of the communication while it was in transit, the CAC provides great detail as to how Magnite's entire business model is to collect and assimilate data "on the fly" so that it can create a dynamic, real-time market for ad-buyers and ad-sellers. (Dkt. 51 ¶¶ 85-98.) These allegations plausibly allege that Magnite not only intercepts Plaintiffs' communications in transit, but that it applies the substantive meaning of those communications in real time.

Defendant attempts to misconstrue these allegations as suggesting some sort of post-hoc attempt to assimilate the data. Magnite well knows that is not how its technology works; the user profiles built by the information collected by the Rubicon Tracker are constantly being updated. For example, the CAC details how the Rubicon Tracker collects geolocation data from mobile apps. It does so because if Subway is buying ad space on the ESPN app, that advertising space is more valuable if placed on the mobile device of an individual in the parking lot of a strip mall at noon that includes a Subway among its dining options. The Rubicon Tracker boasts that it is able to create these dynamic pricing models precisely because it is collecting, reading, and interpreting users' communications in real time.

*c. <u>The Party Consent Rule does not Defeat the ECPA Claim</u>*

Defendant's argument that the consent of the website and mobile app operators to the installation of the Rubicon Tracker forecloses the ECPA claim (but not the CIPA Section 631(a) claim) is also without merit. Plaintiffs do allege (because it is true) that website and app operators install the Rubicon Tracker on their websites. Nowhere in the CAC, however, do Plaintiffs allege that the operators understand that Rubicon Tracker will intercept the communications sent by users to the operators, much less that the operators consent to this interception. Discovery is necessary to

determine the validity of this defense, and accordingly Defendant's motion should be denied on this basis.

***4. Defendant's Rule of Lenity Argument Fails Under Settled California Supreme Court Precedent***

Defendant's last-gasp attempt to excuse its failure to comply with CIPA and the ECPA under the rule of lenity also fails under the California Supreme Court's ruling in *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183 (2021). In *LoanMe*, 11 Cal. 5th at 189, the California Supreme Court evaluated whether Cal. Pen. Code § 632.7 "prohibits a party from intentionally recording a communication … or whether the section forbids only the intentional recording of such communications by persons other than parties."[4] Like here, the defendant argued "the rule of lenity applies here and support[ed]" the latter interpretation of the statute. *Id.* at 202. The California Supreme Court disagreed. The California Supreme Court noted the rule of lenity only applies "when two reasonable interpretations of the same provision stand in relative equipoise," not "every time there are two or more reasonable interpretations of a penal statute." *Id.* (cleaned up); *see also Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (noting the rule of lenity only applies "when a criminal statute contains a grievous ambiguity or uncertainty") (cleaned up). Applying that standard, the California Supreme Court found "the statutory language" weighed against the defendant's argument, which the California Supreme Court accorded the most "significance." *LoanMe*, 11 Cal. 5th at 202.

[4] Cal. Pen. Code § 632.7 states that "every person who, without the consent of all of the parties to a communication, intercepts or receives and intentionally records … a communication transmitted between two … telephones" shall be liable. The question in *LoanMe* was whether "every person" meant only non-parties or both parties and non-parties alike.

LOEVY & LOEVY
Attorneys at Law

Applying *LoanMe* here, Defendant's argument fails. There is no "grievous ambiguity or uncertainty" in Cal. Pen. Code §§ 638.50-638.51. *Ocasio*, 578 U.S. at 295 n.8. On the contrary, the "text is clear" that it applies to the technology at issue. *Shah*, 754 F. Supp. 3d at 929. The statute may be broad, but that does not give the Court leeway to set aside "the California Legislature's chosen definition." *Mirmalek*, 2024 WL 5102709, at *3. That definition should be accorded the most "significance" and end the debate. *LoanMe*, 11 Cal. 5th at 202. Further, the statute was drafted broadly because the CIPA was intended to protect Californians from "the invasion of privacy resulting from" "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping … [that] has created a serious threat … and cannot be tolerated in a free and civilized society." Cal. Pen. Code § 630. Based on "the California Supreme Court's pronouncements regarding the broad legislative intent underlying CIPA to protect privacy, and the California courts' approach to updating obsolete statutes in light of emerging technologies," "courts have repeatedly held that [] provisions of CIPA are not limited to the traditional versions of the tools at issue." *Shah*, 754 F. Supp. 3d at 930-31 (cleaned up); see also id. (noting "the California Supreme Court has instructed courts to interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests").

Based on the CIPA's plain statutory text and legislative principles, courts have rejected application of the rule of lenity to disputed provisions of the CIPA. *See LoanMe*, 11 Cal. 5th at 202; *Fregosa*, 2025 WL 2886399 at *9; *Riganian*, 2025 WL 2021802, at *12; *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011) (rejecting application of rule of lenity to CIPA § 632); *Howard v. Lab. Corp. of Am.*, 2024 WL 4250677, at *8 (M.D.N.C. Aug, 8, 2024), *report and recommendation adopted*, 2024 WL 4326898 (M.D.N.C. Sept. 27, 2024) (rejecting application of rule

of lenity to CIPA because "the statutes appear to apply, at least facially, to the conduct alleged").

***5. Plaintiffs have Adequately Alleged a Standalone Claim for Unjust Enrichment***

Defendant makes four arguments in support of its Motion to Dismiss Count V: (1) unjust enrichment is not a standalone action; (2) even if the cause of action is construed as a quasi-contract claim, Defendant has not received an improper benefit at the plaintiff's expense via mistake, fraud, coercion, or request; (3) the relationship between Plaintiffs and Magnite is too attenuated to permit the claim to go forward; and (4) Plaintiffs have not pled that they lack adequate remedies at law necessary to pursue an unjust enrichment claim and instead seek statutory and monetary damages. Defendant also argues that, as with the intrusion upon seclusion claim, Plaintiffs cannot pursue a nationwide class as to the unjust enrichment claim. Dkt. 52-1 at 34-35. The Court should reject each of these arguments.

First, Defendant is incorrect that Plaintiffs may not pursue a standalone unjust enrichment claim. *Id.* "[T]argument that California law does not recognize a cause of action for unjust enrichment is for all intents and purposes a nonstarter" because "California law recognizes, at a minimum, a quasi-contract claim based on an unjust enrichment theory." *Day v. Advanced Micro Devices, Inc.*, No. 22-cv-04305 (VC), 2023 WL 2347421, at *1, n.1; *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). The only case Defendant cites to the contrary is a case that held *Astiana* did not permit such a cause of action and that it was bound to follow "*Astiana's* general rule that there is no independent cause of action for unjust enrichment under California law." *Griffith v. TikTok*, 2023 WL 9019035, at *6 (C.D. Cal. Dec. 13, 2023). However, the Court misread *Astiana*, in which the Ninth Circuit held that even if unjust enrichment were not a standalone cause of action, it was a

LOEVY & LOEVY
Attorneys at Law

viable one that should be construed as a quasi-contract claim. 783 F.3d at 762. The Court ultimately revived the unjust enrichment claim that the district court had dismissed. *Id.* Subsequent Ninth Circuit decisions have permitted unjust enrichment claims to proceed, as well. *See, e.g.*, *Burton v. Gerber Prod. Co.*, 703 F.App'x 468, 470 (9th Cir. 2017). The only case upon which Defendant has relied, then, misunderstood and misapplied the standard set forth by *Astiana*, which is still good law.

Second, although an unjust enrichment or restitution claim "generally requires that a defendant has been *unjustly* conferred a benefit through mistake, fraud, coercion, or request" the analysis focuses on whether retention of the benefit at issue would be unjust, not identifying "mistake, fraud, coercion, or request" as the only ways in which such retention could be unjust. *Russell v. Walmart*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023) (internal quotation and citation omitted). Here, where Plaintiffs allege that Defendant has unjustly profited from tracking, collecting, disclosing, and selling their highly sensitive information, without their knowledge or consent, conferring benefits at the expense of their privacy rights, they have sufficiently stated a claim for unjust enrichment, and courts in this Circuit have permitted similar claims to proceed. *See, e.g.*, *Riganian*, 791 F. Supp. 3d at 1095 (denying motion to dismiss unjust enrichment claim where Plaintiffs alleged Defendant "profited from tracking, disclosing, and profiting from Plaintiffs' and U.S. Class members' internet activity and real-world activity without their knowledge or consent"); *Katz-Lacabe v. Oracle of America, Inc.*, 2023 WL 6466195, at *6 (N.D. Cal. Oct. 3, 2023) (same); *Hart*, 526 F. Supp. 3d at 605 ("Hart has sufficiently pleaded a claim by alleging that TWC unjustly benefited from the use of his location data").

Third, the type of relationship alleged here between Plaintiffs and Magnite is not so attenuated that Plaintiffs cannot pursue their claims, as courts have permitted similar unjust enrichment claims brought against data brokers to proceed. *See, e.g.*, *Riganian*, 791 F. Supp. 3d at 1095; *Katz-Lacabe*, 2023 WL 6466195, at *6; *Brooks v. Thompson Reuters Corp.*, No. 21-cv-1418, 2021 WL 3621837, at *11-12 (N.D. Cal. Aug. 16, 2021). In contrast to these directly-on-point decisions, Defendant's two cited cases are inapposite. *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 685 (9th Cir. 2009), is not a data privacy case and there was no connection whatsoever between the plaintiffs and the defendant. The second is a decision from April 2023 in *Katz-Lacabe*, where the district court initially dismissed Plaintiffs' unjust enrichment claim brought against a data broker for alleged violations of privacy rights. 668 F. Supp. 3d at 946. However, the Court permitted Plaintiffs to amend their Complaint, after which the Court allowed the unjust enrichment claim to proceed based on allegations, like those here, that the defendant's surreptitious collection and sale of the plaintiffs' data conferred a benefit at the expense of the plaintiffs' privacy of that data. 2023 WL 6466195, at *6.

Finally, Defendant's attempt to expand the pleading requirements for an unjust enrichment claim to add an "inadequate remedy at law" element is unavailing. Following the Ninth Circuit's holding in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) that inadequate remedy was a pleading requirement in cases brought under the Unfair Competition Law and Consumer Legal Remedies Act, the defense bar has attempted to expand this holding to unjust enrichment claims. Courts have generally declined to do so. *See, e.g.*, *Regions Bank v. Car Wash Management, LLC*, 2025 WL 2765231, at *13-14 (C.D. Cal. Sept. 25, 2025). The few courts to have held that *Sonner* applies to unjust enrichment claims have done so because they reasoned that the holding was applicable to any equitable claim, and "unjust



LOEVY & LOEVY
Attorneys at Law

enrichment is an equitable rather than a legal claim." *McKesson HBOC, Inc. v. NY State Common Retirement Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003). However, the Ninth Circuit has held that "[i]f restitution to the claimant is accomplished exclusively by a judgment for money, without resort to any of the ancillary remedial devices traditionally available in equity but not at law, the remedy is presumptively legal." *Bilyeu v. Morgan Stanley Long Term Disability Plan,* 711 F. App'x 380, 384 (9th Cir. 2017) (*quoting* Restatement (Third) Restitution and Unjust Enrichment Section 4). Because Plaintiffs here only seek a judgment of money as a remedy for their unjust enrichment claim, the claim can fairly be categorized not as a traditional equitable claim, subject to the dictates of *Sonner.* However, should this court determine that *Sonner* does expand beyond claims arising under either UCL or CLRA and that the Plaintiffs' unjust enrichment cause of action is an equitable claim, that does not foreclose Plaintiffs' unjust enrichment claims or their effort seeking disgorgement of Defendant's unjust enrichment. *See Plotts v. Am. Honda Motor Co., Inc.*, 2023 WL 4843342 (C.D. Cal. June 9, 2023), at *12, n.4.

This Court should also decline to create a pleading requirement that has yet to be adopted by any controlling authority.[5]

## V. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant’s motion to dismiss in its entirety, and award Plaintiffs such other and further relief the Court deems just and proper. In the alternative, to the extent the Court finds that Plaintiffs’ allegations are in any way deficient, Plaintiffs respectfully request leave to amend to address any such deficiencies.

---

[5] Defendant also improperly seeks a ruling that Plaintiffs cannot represent a nationwide class based on unjust enrichment. As with the intrusion upon seclusion claim discussed above, this determination is not appropriate at the motion to dismiss stage and should be deferred until the Court rules on class certification.

Dated: November 14, 2025

Respectfully submitted,

/s/ Thomas M. Hanson
*One of Plaintiffs' Attorneys*

Thomas M. Hanson, SBN 184465 (hanson@loevy.com)
Jon Loevy (jon@loevy.com) (*pro hac vice*)
Mike Kanovitz (mike@loevy.com) (*pro hac vice*)
David B. Owens, SBN 275030 (david@loevy.com)
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (phone)
(312) 243-5902 (fax)

*Counsel for Plaintiffs and Interim Class Counsel*