Nicola C. Menaldo, *pro hac vice*
NMenaldo@perkinscoie.com
Anna Mouw Thompson, *pro hac vice*
AnnaThompson@perkinscoie.com
Jordan C. Harris, *pro hac vice*
JordanHarris@perkinscoie.com
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: 206.359.8000
Facsimile: 206.359.9000

Alisha C. Burgin, Bar No. 286269
ABurgin@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Defendant Magnite, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EDWARD LEWIS, GLADYS SOLIS, and PATRICIA CASTILLO, individually and on behalf of similarly situated individuals,

Plaintiffs,

v.

MAGNITE, INC.,

Defendant.

Case No. 2:25-cv-03448-MWC-SSC

**MAGNITE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT**

Date: December 5, 2025
Time: 1:30 p.m.
Courtroom: 6A
Judge: Hon. Michelle Williams Court

## TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 6

II. ARGUMENT ........ 6

A. The Court lacks personal jurisdiction over Magnite. ........ 6

B. Plaintiffs' claims also fail under Rule 12(b)(6). ........ 8

1. Plaintiffs fail to state an invasion of privacy claim. ........ 8

2. Plaintiffs cannot represent a nationwide privacy class ........ 11

3. The rule of lenity bars Plaintiffs' CIPA and ECPA claims. ........ 12

4. Plaintiffs fail to state CIPA or ECPA wiretapping claims. ........ 13

a. Plaintiffs do not allege communications contents. ........ 13

b. Plaintiffs do not satisfy the in-transit element ........ 13

c. The crime-tort exception does not apply. ........ 14

5. The Rubicon Tracker is not a "pen register." ........ 15

6. Plaintiffs have failed to allege unjust enrichment. ........ 16

III. CONCLUSION ........ 17

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ahringer v. LoanDepot, Inc.*,
715 F.Supp.3d 1274 (C.D. Cal. 2024) ....................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................8

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ....................16, 17

*Bilyeu v. Morgan Stanley Long Term Disability Plan*,
711 F.App'x 380 (9th Cir. 2017) ....................17

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ....................6, 7, 8

*Bruton v. Gerber Prods. Co.*,
703 F.App'x 468 (9th Cir. 2017) ....................16

*Capbran Holdings, LLC v. Firemall LLC*,
2017 WL 2905966 (C.D. Cal. Feb. 1, 2017) ....................6

*Day v. Advanced Micro Devices, Inc.*,
2023 WL 2347421 (N.D. Cal. Mar. 2, 2023) ....................16

*Doe I v. Google LLC*,
741 F.Supp.3d 828 (N.D. Cal. 2024) ....................14

*Doe I v. Wal-mart*,
572 F.3d 677 (9th Cir. 2009) ....................17

*Doe v. Eating Recovery Ctr.*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ....................9, 12, 16

*Getz v. CVS Health Corp.*,
No. 2:25-cv-04689-MWC-E (C.D. Cal. Oct. 24, 2025) ....................7, 8

*Gray v. Twitter Inc.*,
2021 WL 11086642 (W.D. Wash. Mar. 17, 2021) ....................12

*Griffith v. TikTok, Inc.*,
2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) ....................16

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) ....................9

*Hammerling v. Google LLC*,
615 F.Supp.3d 1069 (N.D. Cal. 2022) ....................10

*Hill v. NCAA*,
7 Cal.4th 1 (1994) ....................10

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ....................10, 11

*In re DoubleClick Inc. Priv. Litig.*,
154 F.Supp.2d 497 (S.D.N.Y. 2001) ....................12, 13, 15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................9, 10

*In re Facebook*, *Katz-Lacabe v. Oracle America Inc.*,
668 F.Supp.3d 928 (N.D. Cal. 2023) ....................10, 12, 14, 17

*Jonathan L. v. Superior Ct.*,
165 Cal.App.4th 1074 (2008) ....................15

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ....................13

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ....................12

*McCann v. Lucky Money, Inc.*,
129 Cal.App.4th 1382 (2005) ....................11

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ....................10

*Moody v. Textron Inc.*,
2025 WL 2828109 (C.D. Cal. Sept. 24, 2025) ....................7, 8

*Ornelas v. Randolph*,
4 Cal.4th 1095 (1993) ....................15

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ....................6

*Plotts v. Am. Honda Motor Co.*,
2023 WL 4843342 (C.D. Cal. June 9, 2023) ....................17

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................11

*Riganian v. LiveRamp Holdings, Inc.*,
791 F.Supp. 3d 1075 (N.D. Cal. 2025) ........................................10, 17

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ........................................14

*Russell v. Walmart*,
680 F.Supp.3d 1130 (N.D. Cal. 2023) ........................................16

*Scharon v. Paramount Global*,
No. 25STCV10585 (Cal. Super. Ct. L.A. Cnty. Oct. 3, 2025) ........................................15

*Sharma v. Volkswagen AG*,
524 F.Supp.3d 891 (N.D. Cal. 2021) ........................................17

*Smith v. LoanMe, Inc.*,
11 Cal.5th 183 (2021) ........................................12, 13

*Vita v. New England Baptist Hosp.*,
243 N.E.3d 1185 (Mass. 2024) ........................................12

*Wall v. Wescom Cent. Credit Union*,
2024 WL 1158361 (C.D. Cal. Mar. 18, 2024) ........................................17

**STATUTES**

18 U.S.C. § 2511 ........................................14

Cal. Civ. Code § 1798.140 ........................................6, 9

Cal. Penal Code § 638.51 ........................................15

**RULES**

Fed. R. Civ. P. 12 ........................................6

Fed. R. Evid. 201 ........................................9

**OTHER AUTHORITIES**

Prop. 24 § 2(I) (2020) ........................................11

S. Rules Comm., Third Reading Floor Analysis of S.B. 690, 2025-2026 Reg. Sess., at 8 (Cal. 2025) ........................................16

# I. INTRODUCTION

California's Legislature and voters have already drawn the line: the conduct Plaintiffs challenge—creating "profiles" based on IP addresses, "browsing history, search history," and "interaction with an internet website, application, or advertisement," Cal. Civ. Code § 1798.140(v)(1)(F)—is not a privacy violation, but a legitimate, regulated part of the online economy. The CCPA and Delete Act address these practices directly, requiring businesses to offer consumers the right to opt out, not opt in. Plaintiffs ask this Court to rewrite the law, demanding opt-in consent where the Legislature and voters expressly did not. If Plaintiffs' theory prevailed, not only Magnite, but every website serving ads could be sued in California, undermining Rules 12(b)(2) and 12(b)(6) and nullifying the balance struck by the Legislature.

Plaintiffs do not establish personal jurisdiction or state a plausible claim for relief. They lack a reasonable expectation of privacy, fail to allege highly offensive conduct, and do not meet the requirements for their CIPA, ECPA, or unjust enrichment claims. Magnite respectfully asks the Court to dismiss the Complaint.

# II. ARGUMENT

## A. The Court lacks personal jurisdiction over Magnite.

Plaintiffs concede that Magnite is not subject to general jurisdiction in California by failing to address the issue in their Opposition. *See Capbran Holdings, LLC v. Firemall LLC*, 2017 WL 2905966, at *2 (C.D. Cal. Feb. 1, 2017).[1] Plaintiffs also fail to satisfy the express aiming or knowledge of harm prongs of *Calder*'s effect test.

***Express aiming.*** Plaintiffs have not plausibly alleged that Magnite expressly aimed its purportedly wrongful conduct at California. *See* Mot. 18-19. Binding case law requires Plaintiffs to show California contacts that are Magnite's "own choice and not random, isolated, or fortuitous," *Briskin v. Shopify, Inc.*, 135 F.4th 739, 758 (9th Cir. 2025) (cleaned up), and "'something more' than just a foreseeable effect" in the forum, *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006).

[1] Plaintiffs have also abandoned any 502(j) basis for jurisdiction. CAC ¶ 20.

Here, third-party websites *chose* to use Magnite's technology. CAC ¶¶ 60, 93, 105, 111, 117. And Plaintiffs encountered Magnite's technology solely by visiting these websites, not because Magnite targeted California. Such incidental contact cannot establish express aiming. *See Moody v. Textron Inc.*, 2025 WL 2828109, at *5 (C.D. Cal. Sept. 24, 2025).

Plaintiffs' observation (Opp. 5-6) that *Moody* involved a website operator rather than a tracking technology provider proves Magnite's point, not Plaintiffs'. Magnite's connection to California is even more remote than in *Moody*, as it depends on independent decisions by website operators in addition to Plaintiffs' own decisions. This Court has rejected personal jurisdiction in this exact scenario. *See Getz v. CVS Health Corp.*, No. 2:25-cv-04689-MWC-E (C.D. Cal. Oct. 24, 2025), ECF No. 79 at 14 (no express aiming by tracking technology provider).

*Briskin* does not compel a different result. The *Briskin* complaint detailed extensive California contacts: Shopify had "over 80,000 merchants located in California," *Briskin*, No. 21-cv-6269 (N.D. Cal.), ECF No. 44 ¶ 12, partnered with a fulfillment center in California and shipped "thousands of packages to California," *id.* ¶ 13, had multiple, identified "California-based companies" as customers, *id.* ¶ 10, and a physical store in Los Angeles, *id.* ¶ 11. Shopify also collected "personal identifying information," including a "full name" and a "delivery and billing address." 135 F.4th at 747, 748.

In contrast, the Complaint here does not describe specific, claim-related contacts between Magnite and California. The stray reference to the so-called Rubicon Tracker being "developed in California" (Opp. 1) is surely not enough because, among other reasons, this is the contact of a "corporate predecessor," CAC ¶ 20, not Magnite. *Moody*, 2025 WL 2828109, at *5 (third-party conduct insufficient). And the mere allegation that IP addresses reveal "geolocation"[2]—which indicates the coarse location

[2] Plaintiffs only describe visiting websites, not using apps. CAC ¶¶ 105, 111, 117. Only apps purportedly enable Magnite to collect precise geolocation. *See* Mot. 22.

of a network connection—at best suggests a foreseeable effect in California, not express aiming. *See Getz*, ECF No. 79 at 14.

***Knowledge of California harm.*** Plaintiffs also do not plausibly allege that Magnite knew they resided in California or would suffer harm there. Mot. 19. Contrary to their recent assertion (Opp. 7) that Magnite collected information "that reveals Plaintiffs' California residence, which [Magnite] subsequently sold to others," the Complaint contains zero plausible allegations that Magnite could determine residency.

Plaintiffs clarify in the opposition that their privacy harm Magnite purportedly knew happened in California was not Plaintiffs receiving ads there (third-party conduct), but the "harm" of having their information collected there. Opp. 6-7. But Magnite collects pseudonymized information, and its purported "knowledge" that Plaintiffs were even *in* California is based on alleged IP address inferences. Plaintiffs do not cite a single case finding specific personal jurisdiction based on these facts. *Compare, e.g.*, *Briskin*, 135 F.4th at 747 (jurisdiction where defendant collected and sold full names and physical addresses), *with Moody*, 2025 WL 2828109, at *1, *5 (no jurisdiction even though "Defendant knew from exactly which zip code Plaintiff was searching" and gave third parties "the capability to identify Plaintiff"). Plaintiffs' alternative argument that Magnite knowingly violated California law (Opp. 7) is a mere legal conclusion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If alleging a knowing state law violation were enough, jurisdictional limits would be meaningless.

**B. Plaintiffs' claims also fail under Rule 12(b)(6).**

**1. Plaintiffs fail to state an invasion of privacy claim.**

***No reasonable expectation of privacy.*** To survive dismissal, Plaintiffs must plausibly allege a reasonable expectation that Magnite would not engage in the challenged conduct—namely, receiving device and browsing information and creating pseudonymized profiles for targeted advertising. *See* CAC ¶ 196. That expectation is untenable given the comprehensive regulation of these very practices under the CCPA and the Delete Act. *See* Mot. 20-21. Courts increasingly assess privacy theories against

this legal backdrop. *See, e.g.*, *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) (Bybee, J., concurring); *Doe v. Eating Recovery Ctr.*, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025).

Plaintiffs do not dispute that the Court should consider "sources of positive law" such as "statutory enactment," including the CCPA and the Delete Act, when evaluating the reasonableness of a privacy expectation. Mot. 20-21. They also do not dispute that the CCPA reflects a detailed framework addressing "cross-context behavioral advertising," to require opt-out, not opt-in, consent for the practices challenged here. Cal. Civ. Code § 1798.140(k). Plaintiffs thus offer no basis for expanding tort law to prohibit conduct the Legislature chose to regulate, not ban.

Plaintiffs also ignore cases recognizing the ubiquity and legitimacy of cookies and similar technologies. *See* Mot. 21 (collecting cases). And they do not overcome the judicially noticeable fact that each website they visited disclosed the use of tracking technologies. *See* Mot. 22-23; Thompson Decl. Exs. 3-30. These disclosures are proper subjects of judicial notice under FRE 201(b) as their contents can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See also* Dkt. 52-37 at 4-5 (Magnite's RJN). Plaintiffs do not dispute their accuracy and thus effectively concede FRE 201 applies. *See* Opp. 10 (not addressing FRE 201).

Plaintiffs' response—that their expectation is reasonable because Magnite collected "deanonymized," sensitive information rather than "routine" data—misstates the pleadings. Opp. 8-9. The CAC alleges that other companies *could* "deanonymize" Magnite's data, or that it is "essentially deanonymized." *See* CAC ¶¶ 11, 95, 96, 108, 114, 120. It does not allege Magnite actually "deanonymized" data; Magnite's privacy policy, incorporated by reference, states that Magnite does *not* collect "information that directly identifies an individual." Thompson Decl. Ex. 3. Nor do the data here, from mainstream websites like accuweather.com, parallel the sensitive information in Plaintiffs' referenced cases, such as profiles tied to real names and biographical information. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 604 (9th Cir.

2020); CAC ¶¶ 105, 111, 117.[3]

Plaintiffs' reliance on *In re Faceboo*k, *Katz-Lacabe v. Oracle America Inc.*, 668 F.Supp.3d 928 (N.D. Cal. 2023), and *Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp. 3d 1075 (N.D. Cal. 2025) is misplaced. Those cases did not consider the CCPA or the Delete Act's effect on privacy expectations. *In re Facebook* involved a direct relationship, alleged deception, and the combination of browsing data with users' real names and biographical details. *See* 956 F.3d at 601-04. *Katz* and *Riganian* also involved privacy policy misrepresentations. *Katz-Lacabe*, 668 F.Supp.3d at 936; *Riganian*, 791 F.Supp.3d at 1086-88. Plaintiffs do not allege deception by Magnite, and the sites they visited disclosed tracking. *See supra* page 9.

In the absence of deception and misrepresentation (which are, of course, problematic in any context) courts recognize that data aggregation for advertising is a legitimate business practice that does not support invasion-of-privacy claims. *See Hubbard v. Google LLC*, 2024 WL 3302066, at *7-8 (N.D. Cal. July 1, 2024).

***No highly offensive conduct.*** The "highly offensive" inquiry turns on prevailing social norms, and the CCPA and Delete Act are the clearest expression of relevant norms here. Mot. 23-24. Plaintiffs do not dispute that the CCPA permits the collection or sharing of pseudonymous profiles for online advertising and addresses consumers' privacy rights by providing notice and opt-out rights. Plaintiffs instead respond that the inquiry is "premature at the pleading stage." Opp. 10. This is wrong.

Courts can and do resolve the highly offensive inquiry as a matter of law at the pleading stage. *See, e.g.*, *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1091 (N.D. Cal. 2022) (dismissing where data collection was not "sufficiently specific or personal [or] harmful, to be highly offensive");[4] *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *7-8 (N.D. Cal. Feb. 2, 2021); Mot. 21 (collecting cases). Even Plaintiffs' cited cases—none

[3] The quotes attributed to *Hill v. NCAA*, 7 Cal.4th 1, 52 (1994), on page 9 of the Opposition are nowhere in that case.

[4] Plaintiffs inexplicably and incorrectly assert that *Hammerling* denied a motion to dismiss and misquote language that does not appear in the opinion. *See* Opp. 12.

of which involved legislatively sanctioned practices—do not hold otherwise. Plaintiffs cannot plead their way around the fact that, as one court recently put it while dismissing similar claims, "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." *Hubbard*, 2024 WL 3302066, at *7 (emphasis omitted).

Indeed, the Ninth Circuit recently reaffirmed that data collection for online advertising is *not* highly offensive in *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). And despite *Popa's* different procedural posture, the pleading deficiencies are the same: neither complaint offers any details about *the Plaintiffs'* website "visits," such that there is no basis to infer that the defendant collected sensitive information about them. CAC ¶¶ 107, 113, 119. This also distinguishes the cases cited by Plaintiffs, which likewise involve plaintiff-specific allegations not present here. *See* Opp. 11.

Finally, Plaintiffs argue that the CCPA Act and Delete Act cannot "preempt" their privacy rights. That is a red herring. The issue is not preemption, but the reasonableness of expectations and the egregiousness of conduct as judged against democratically enacted laws. *See* Mot. 20, 24. The CCPA reflects a legislative judgment that a notice-and-opt-out regime is best and that "[a]dvertising-supported services have existed for generations and can be a great model for consumers and businesses alike." *See* Prop. 24 § 2(I) (2020). Where conduct is the subject of detailed regulation and is not prohibited, it cannot be deemed to violate social norms. *See, e.g.*, *McCann v. Lucky Money, Inc.*, 129 Cal.App.4th 1382, 1395 (2005) (dismissing UCL claims for conduct regulated by Money Transmission Law because "plaintiffs may not use the general unfair competition law to assault that [safe] harbor").

**2. Plaintiffs cannot represent a nationwide privacy class.**

Plaintiffs do not address the cases cited in Magnite's brief dismissing California invasion of privacy claims brought on behalf of a nationwide class. Mot. 25. These cases recognize that permitting non-Californians to assert California privacy claims is improper because (i) what is "reasonable" depends on "community standards" that are

constantly "evolving," resulting in "differences in the legal framework among states," *Katz-Lacabe*, 668 F.Supp.3d at 948, and (ii) other states "have a significant interest in applying their own wiretapping and privacy laws to their residents." *Ahringer v. LoanDepot, Inc.*, 715 F.Supp.3d 1274, 1285 (C.D. Cal. 2024) (cleaned up). The cases that Plaintiffs cite where courts deferred choice-of-law issues at the pleadings stage (Opp. 13) did not involve privacy claims (or unjust enrichment claims based on purported privacy harms) and thus do not support deferral here.

**3. The rule of lenity bars Plaintiffs' CIPA and ECPA claims.**

The rule of lenity bars "interpreting criminal statutes in surprising and novel ways that impose unexpected burdens on defendants." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009). Here, "[t]he state of affairs with CIPA is untenable. Courts are issuing conflicting rulings, and companies have no way of telling whether their online business activities will subject them to liability." *Doe*, 2025 WL 2971090, at *1. Because CIPA and ECPA are criminal statutes, "courts should generally resolve … ambiguities in favor of the narrower interpretation." *Id.*

The applicability of CIPA and ECPA to modern online advertising practices, in particular, is indeed grievously ambiguous. At least eight California courts have held that CIPA's pen register provisions do not apply to online advertising; other courts disagree. *See* Mot. 33. A similar split of authority exists for nearly every element of Plaintiffs' statutory claims. *See infra* pages 13-15. In the face of such pervasive uncertainty, courts should "resolve CIPA's many ambiguities in favor of the narrower interpretation." *Doe*, 2025 WL 2971090, at *1; *Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185, 1204-05 (Mass. 2024); *Gray v. Twitter Inc.*, 2021 WL 11086642, at *8 (W.D. Wash. Mar. 17, 2021). The same is true for ECPA. *See In re DoubleClick Inc. Priv. Litig.*, 154 F.Supp.2d 497, 513 (S.D.N.Y. 2001) (rejecting cookie-felony interpretation).

Finally, Plaintiffs' reliance on *Smith v. LoanMe, Inc.*, 11 Cal.5th 183, 189 (2021) is misplaced because that case concerned a different section of CIPA where "[t]he legislative history, the purpose of the statute, general public policy concerns, and logic

all favor[ed]" the interpretation adopted by the court. *Id.* at 881. In contrast to this action, the *Smith* case did not pose a risk of nullifying voter-enacted regulations or rendering vast swaths of internet commerce unlawful. *See* Mot. 27, 33.

**4. Plaintiffs fail to state CIPA or ECPA wiretapping claims.**

**a. Plaintiffs do not allege communications contents.**

To state a CIPA or ECPA wiretapping claim, Plaintiffs must plausibly allege that Magnite collected the contents of their communications. They fail to do so. Plaintiffs contend that user-entered "search terms" are communications content (Opp. 17-18), which Magnite disputes (Mot. 26). But the Court need not decide this because, at the threshold, the Complaint does not identify a single website on which any Plaintiff entered search terms that were exposed to Magnite. The Opposition's reliance on allegations concerning Drugs.com (Opp. 17, citing CAC ¶¶ 65-68) only underscores the deficiency: no Plaintiff claims to have visited, let alone searched, that site. Plaintiffs' generalized allegations that they could have performed searches on unspecified websites are not enough. *See, e.g.*, Mot. 27 (collecting cases); *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (dismissing for lack of specific search allegations).[5]

**b. Plaintiffs do not satisfy the in-transit element.**

To state a claim under ECPA or CIPA, Plaintiffs must plausibly allege that their communications were collected during transmission. Mot. 27-28. CIPA imposes an even stricter requirement: that a defendant sought to understand "the substantive meaning of the message" while it was in transit. Mot. 28.

Plaintiffs' Opposition cites no factual allegations about the timing of purported interception—because none exist. *See* Opp. 18-19 (citing CAC ¶ 55, 85-90 (alleging installation and monetization but not addressing timing of data transmission)).

---

[5] Plaintiffs abandon their theory that *any* website interaction qualifies as the contents of a communication, which conflicts with binding precedent. *See* Mot. 26.

Plaintiffs instead argue that, owing to their allegation that the Rubicon Tracker is installed on browsers, interception necessarily occurred "simultaneously with" users' communications with websites. *Id.* But this just begs the question. There is no basis for the Court to infer that installation on a browser equates to simultaneous transmission as there are no allegations about when the so-called Rubicon Tracker transmits data.

Plaintiffs' reliance on profile-building allegations fares no better. Plaintiffs themselves allege that data collected by Magnite "is *later* repackaged and sold to third parties by Magnite." CAC ¶ 11 (emphasis added). That temporal framing undermines any assertion of contemporaneous interception. *See also Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (allegations insufficient where the pleaded use of "then" conflicted with claim that interception occurred "simultaneously").

Because Plaintiffs have not plausibly alleged that Magnite intercepted the contents of their communications during transmission—or that Magnite attempted to understand the substantive meaning of those communications while in transit—the in-transit element fails and dismissal is proper. *See* Mot. 28-29 (collecting cases).

**c. The crime-tort exception does not apply.**

Plaintiffs do not dispute that ECPA permits interception with the consent of a single participant to the communication, 18 U.S.C. § 2511(2)(d), or that website operators voluntarily install Magnite's technology. Opp. 19. Plaintiffs also appear to concede the inapplicability of the crime-tort exception to party consent, as they do not address it in their Opposition at all. *See* Mot. 29-30; Opp. 19-20. That is sufficient to dismiss the ECPA claim. *See Doe I v. Google LLC*, 741 F.Supp.3d 828, 842 (N.D. Cal. 2024) (dismissing where "health care providers choose to install Google source code on their web properties"); *Katz-Lacabe*, 668 F.Supp.3d at 945 (similar).

Plaintiffs' lone rejoinder—that discovery is needed to determine whether the operators actually "underst[ood]" Magnite's alleged interception and thus consented, Opp. 19—fails on its own terms. The Complaint's allegations that operators deployed Magnite's technology "to target advertisements" makes it "implausible to infer that the

Web sites have not authorized [Magnite's] access." *In re DoubleClick*, 154 F.Supp.2d at 510. Plaintiffs cite no case sustaining an ECPA claim on their theory, and the law does not permit a fishing expedition to manufacture a dispute where the pleadings and commonsense foreclose one. The ECPA claim should be dismissed.

**5. The Rubicon Tracker is not a "pen register."**

Plaintiffs' pen register theory fails under the statute's text and history and within California's broader privacy framework.

*First*, Plaintiffs never confront the threshold defect in their theory: their Complaint alleges collection of (i) their own IP addresses, (ii) general location information, and (iii) device attributes. Those data are not "destination" information required to state a pen register claim. *See* Mot. 32.

*Second*, CIPA's pen register provisions contain no generally applicable consent defense. The narrow consent provision Plaintiffs invoke applies only to a specifically defined subset of website operators. Cal. Penal Code § 638.51(a). Plaintiffs offer no basis for extending that defense to Magnite and instead assert that businesses can "simply" obtain consent. Opp. 16. That assertion disregards the statute's text. The Court should require more than a conclusory "consent solves it," when consent is ordinarily not even a viable defense. Even when language is "plain," which is not the case here, California law allows courts to "disregard even plain language which leads to absurd results or contravenes clear evidence of a contrary legislative intent." *Ornelas v. Randolph*, 4 Cal.4th 1095, 1105 (1993).

*Third*, Plaintiffs ignore the conflict their reading creates with the CCPA and the Delete Act. *See Scharon v. Paramount Global*, No. 25STCV10585, at *3 (Cal. Super. Ct. L.A. Cnty. Oct. 3, 2025) (rejecting expansive interpretation of pen register law as not harmonized with CCPA); *Jonathan L. v. Superior Ct.*, 165 Cal.App.4th 1074, 1099 (2008) (rejecting statutory interpretation that would "render meaningless all of the . . . subsequently enacted or adopted statutory and regulatory provisions"). None of

Plaintiffs' authorities engage the CCPA or the Delete Act, let alone explains why those statutes regulate technologies like Magnite's if CIPA already forbids them.

*Fourth*, there isn't a single appellate decision or even a summary judgment ruling adopting Plaintiffs' expansive theory—extending CIPA's pen register and trap-and-trace provisions to common online tracking technologies—despite more than a decade of widespread industry practice. Trial courts are divided, and the resulting uncertainty has fueled "thousands of shakedown letters and lawsuits against California businesses of all sizes for typical business activities, like website analytics or online advertising that are already governed by" other statutes. S. Rules Comm., Third Reading Floor Analysis of S.B. 690, 2025-2026 Reg. Sess., at 8 (Cal. 2025); *see also Doe*, 2025 WL 2971090, at *1 (recognizing the "untenable" state of affairs). The Court should reject any extension of CIPA's pen register provisions because Plaintiffs have not rebutted the statute's text, structure, or policy implications.

**6. Plaintiffs have failed to allege unjust enrichment.**

Plaintiffs do not dispute that they may only pursue a "claim" for unjust enrichment if the Court construes it as a quasi-contract claim. But in contrast to all of Plaintiffs' cited authority, the Complaint never uses the phrase "quasi-contract." *Compare, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), *and Day v. Advanced Micro Devices, Inc.*, 2023 WL 2347421, at *1 n.1 (N.D. Cal. Mar. 2, 2023) (*see also* Complaint ¶ 282), *and Bruton v. Gerber Prods. Co.*, 703 F.App'x 468, 470 (9th Cir. 2017) (*see also* Complaint at 54-55), *with Griffith v. TikTok, Inc.*, 2023 WL 9019035, at *1, *6 (C.D. Cal. Dec. 13, 2023) (rejecting quasi-contract theory not in complaint).

Moreover, although *Astiana* recognizes that courts "may" (not "should," Opp. 23) construe unjust enrichment claims as quasi-contract claims, that is only appropriate if the defendant has received a benefit at a plaintiff's expense "conferred by mistake, fraud, coercion or request," Mot. 35 (collecting cases), which is not plausibly alleged here. Plaintiffs' cited cases are in accord. *See Russell v. Walmart*, 680 F.Supp.3d 1130, 1133 (N.D. Cal. 2023) ("Absent qualifying mistake, fraud, coercion, or request by

Walmart, there is no injustice."). If *Riganian* and *Katz-Lacabe* hold otherwise as Plaintiffs claim (Opp. 24), this is directly contrary to binding Ninth Circuit precedent. *Astiana*, 783 F.3d at 762 (quasi-contract requires that the "defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request'").

Plaintiffs also do not dispute that they have no relationship with Magnite; instead, they argue that this does not matter. Opp. 24. The controlling decision in *Doe I v. Wal-mart*, 572 F.3d 677 (9th Cir. 2009), says otherwise, and by its terms discusses a general principle applicable to "data privacy" cases just like any other case. *Contra* Opp. 24. There, as here, the connection between the plaintiffs and the defendant is "simply too attenuated," 572 F.3d at 685, to be construed as quasi contractual. *See also, e.g.*, *Wall v. Wescom Cent. Credit Union*, 2024 WL 1158361, at *6 (C.D. Cal. Mar. 18, 2024) (dismissing claims against data management company).

Plaintiffs' Complaint does not even attempt to plead that Plaintiffs lack adequate remedies at law required for equity claims like unjust enrichment. Plaintiffs respond that they need not meet this requirement because their unjust enrichment claim seeks money. Opp. 25 (citing *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 711 F.App'x 380, 384 (9th Cir. 2017)). But unlike a request for "money had and received," which involves a legal remedy, *Bilyeu*, 711 F.App'x at 384, a request for money in the form of disgorgement is a "claim[] in equity." *Sharma v. Volkswagen AG*, 524 F.Supp.3d 891, 909 (N.D. Cal. 2021). Finally, Plaintiffs are wrong that *Sonner* is limited to UCL or CLRA claims. *See* Opp. 25 "[T]he rule that *Sonner* announced applies to claims arising under laws other than the UCL or CLRA and to claims seeking equitable relief other than restitution." *Plotts v. Am. Honda Motor Co.*, 2023 WL 4843342, at *12 (C.D. Cal. June 9, 2023).

## III. CONCLUSION

The Court should grant Magnite's Motion to Dismiss.

Dated: November 21, 2025

**PERKINS COIE LLP**

By: /s/ *Nicola C. Menaldo*

Nicola C. Menaldo, *pro hac vice*
NMenaldo@perkinscoie.com
Anna Mouw Thompson, *pro hac vice*
AnnaThompson@perkinscoie.com
Jordan C. Harris, *pro hac vice*
JordanHarris@perkinscoie.com
**PERKINS COIE LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: 206.359.8000
Facsimile: 206.359.9000

Alisha C. Burgin, Bar No. 286269
ABurgin@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Defendant Magnite, Inc.