UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-03448-MWC-SSCx Date: December 4, 2025

Title: Edward Lewis *et al.* v. Magnite, Inc.

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (IN CHAMBERS) Order GRANTING IN PART and DENYING IN PART Defendant's Motion to Dismiss Plaintiffs' Consolidated Amended Complaint WITH LEAVE TO AMEND (Dkt. 52)**

Before the Court is a motion to dismiss Plaintiffs Edward Lewis, Gladys Solis, and Patricia Castillo's (collectively, "Plaintiffs") Consolidated Amended Complaint ("CAC") filed by Defendant Magnite, Inc. ("Defendant"). *See* Dkt. # 52 ("*Mot.*"). Plaintiffs opposed, *see* Dkt. # 53 ("*Opp.*"), and Defendant replied, *see* Dkt. # 54 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss.

## I. Background

### A. Factual Background

This case arises out of Defendant's alleged collection of user data for profit. *See generally* Dkt. # 51 ("*CAC*"). Plaintiffs' CAC alleges as follows:

Defendant is a registered data broker in California and an ad bidding agency that profits from ad-space sellers (like websites and mobile applications) selling their ad space to advertisers. *Id.* ¶ 3. Defendant was previously headquartered in Los Angeles and still maintains substantial business operations in its Los Angeles office, which is Defendant's second-largest. *Id.*

Defendant collects private information about the user of a website or application, which advertisers can then use to target their ads at customers. *Id.* ¶ 4. Defendant has developed a proprietary online tracker known as the "Rubicon Tracker" to collect consumers' private information. *Id.* ¶ 5. The Rubicon Tracker uses both an application programming interface ("API") and a software development kit ("SDK") for non-web-based applications. *Id.* ¶ 6. Defendant utilizes the Rubicon Tracker to collect information about consumers and their mobile devices by intercepting, *inter alia*, location data, usage patterns, digital fingerprints or unique identifiers (like "cookies" and device IDs), and other technical information (like a user's phone model, operating system, and browser); consumers provide this information to mobile phone apps containing the Rubicon Tracker. *Id.*

App developers embed SDKs into their apps but may not know the full extent and functions of the code in the SDK. *Id.* ¶ 8. Some SDKs provide consumers' location data directly to a data broker or advertising platform, and some can tracker users' locations via Bluetooth. *Id.* Data brokers like Defendant provide SDKs to app developers to assist them in developing their apps. *Id.* ¶ 9. In exchange, app developers permit data brokers like Defendant to intercept location data and other user data. *Id.* Defendant intercepts such data by selling customized data feeds to its clients to assist in advertising and analyzing traffic at stores or other locations. *Id.* ¶ 10. Defendant's offerings include timestamped latitude and longitude coordinates showing the location of mobile devices. *Id.* Defendant later repackages and sells disaggregated data, including location data, to third parties without consumers' consent. *Id.* ¶ 11.

Defendant's Advertising Platform Privacy Policy notes that it collects web users' personal information. *Id.* ¶ 57. During the relevant time period, Defendant acknowledged that it was collecting usage information, "log information," device information, location information, internet service information, de-identified information, and "derived information." *Id.* In Defendant's SEC filings, Defendant has focused on big data collection and the use of such data in artificial intelligence models. *Id.* ¶ 59.

When users enter a web page that contains the Rubicon Tracker, the tracker typically collects the users' exact clicks, including the location within the page, videos the users watched, ads with which they engaged, as well as additional context contained in the page. *Id.* ¶ 60. That context includes the category and title of the page, the referrer page, the page's IP address, and derived geolocation data, including by attaching a cookie that tracks

the user across the web and multiple devices. *Id.* ¶¶ 60, 62, 63. Defendant also collects communications that a user sends to a website (e.g., recording a user's the search query on the website). *Id.* ¶ 65. The primary way the Rubicon Tracker intercepts users' communications is through the collection of the universal resource locator ("URL") for each page of each website that the user visits. *Id.* ¶ 68. Each page contains its own individual URL, allowing "pixels" with access to the URL to see which pages of a website a particular internet user visited. *Id.* ¶ 70. Other terms for a "pixel" are a "tracking pixel," "web bug," "clear GIF," or "web beacon"; pixels are similar to website cookies. *Id.* ¶ 45. All URLs identify the pages of each page of a website an internet user visited, though some, known as full-string descriptive URLs, disclose the contents of information entered onto a webpage. *Id.* ¶ 71. Any pixel that intercepts the URL on a web page intercepts the content of the users' communications with that page. *Id.* ¶ 74.

The Rubicon Tracker collects the URL values of the pages that millions of internet users visit, intercepting communications between the individuals and those websites. *Id.* ¶ 75. The Rubicon Tracker collects both standard URLs and full-string descriptive URLs and any information that Defendant can glean from the URLs. *Id.* ¶ 76. Defendant then adds that information to Defendant's profile for a particular user. *Id.* Defendant shares the intercepted information with bidders and advertisers as part of the real-time bidding process on thousands of websites. *Id.* ¶ 77.

The Rubicon Tracker is prevalent in mobile apps as well. *Id.* ¶ 79. When the user opens an app that the Rubicon Tracker monitors, the tracker collects similar data to that which it gleans from websites, with the addition of any precise geolocation data available, mobile data usage analytics, and unique device identifiers allowing for cross-app tracking. *Id.* Defendant's Advertising Privacy Policy states that Defendant may disclose precise geolocation data from mobile devices to Defendant's clients, its vendors and service providers, and law enforcement. *Id.* ¶ 82.

Defendant generates revenue from transactions where it provides a platform for the purchase and sale of digital advertising inventory. *Id.* ¶ 85. Through "Magnite Access," Defendant offers identity solutions such as audience segmentation and data enrichment, as well as data matching services across various digital media platforms, like web, mobile, audio, and smart TV. *Id.* ¶ 87. Further, Defendant offers "Magnite Audiences," which it describes as a "cross publisher segment that Magnite packages to make it easier and more efficient for buyers to reach high-value audiences at scale" and which "generates a potential

new revenue stream for publishers." *Id.* ¶ 88. Defendant uses the data it collects to train machine-learning algorithms and build more detailed profiles of web and mobile app users. *Id.* ¶ 89. Defendant has launched ClearLine, a product that "can link ad exposures to actual purchases without going through a particular retailer's ad platform." *Id.* ¶ 90. Defendant has also partnered with Attain, a company specializing in purchase data, allowing the companies to match their data to track individuals' real-time purchasing behaviors and enabling advertisers to re-target consumers based on these insights. *Id.* ¶ 91. Collecting users' identifying information is critical to selling these services. *Id.* ¶ 92. As a result, Defendant collects IP addresses to enable ad personalization and user targeting. *Id.* The Rubicon Tracker's presence on multiple websites allows Defendant to track Plaintiffs and putative class members for advertising purposes using their IP addresses and other device identifier information. *Id.* ¶ 94. Defendant can combine the data it collects with partner companies' data ("Partner Pixels") when both a Partner Pixel and the Rubicon Tracker are present on a given website. *Id.* ¶ 96. The result is "even greater identification of individual internet users . . . ." *Id.* ¶ 97.

Defendant has a privacy policy describing the information the Rubicon Tracker collects. *Id.* ¶ 99. That policy, however, is "completely invisible to the users of the websites and mobile apps on which the Rubicon Tracker is installed." *Id.* ¶ 100. Plaintiffs and putative class members lack knowledge that Defendant was tracking their browsing, app usage, and location, especially since Defendant is unrelated to the purveyor of the website or mobile app through which Defendant accesses users' data. *Id.* ¶ 101. Users are likewise unaware that Defendant is aggregating data to build a "digital fingerprint" of users' movements physically and on the internet, making that data available to advertisers. *Id.* ¶ 102. Plaintiffs and putative class members never consented to Defendant's collection, deanonymization, and distribution of their data. *Id.* ¶ 103.

Plaintiffs were in California when Defendant accessed their devices and installed its Rubicon Tracker. *Id.* ¶ 20. Plaintiffs regularly visit websites which utilize the Rubicon Tracker, including: nytimes.com, msn.com, people.com, yahoo.com, quora.com, accuweather.com, nbcnews.com, apnews.com, theguardian.com, foxnews.com, espn.com, tmz.com, cnn.com, zillow.com, and realtor.com. *Id.* ¶¶ 105, 111, 117. Plaintiffs have visited these apps or websites for several years, including within the past ten months while in California. *Id.* ¶¶ 106, 112, 118. Plaintiffs regularly use their mobile devices to access these websites and apps, and Defendant has tracked their geolocations, monitored and intercepted communications related to their personal characteristics, modes of living,

purchase decisions, app selections, spending habits, and click choices while Plaintiffs were in California. *Id.* ¶¶ 107, 113, 119. As a result, Plaintiffs have unknowingly provided data to Defendant, and Defendant has utilized that data to build profiles of Plaintiffs so detailed that they are essentially deanonymized. *Id.* ¶¶ 108, 114, 120. Defendant has shared, sold, and/or distributed Plaintiffs' personal and private information to third parties, including to its customers, advertising partners, and website publishers. *Id.* ¶¶ 109, 115, 121. Plaintiffs value their privacy and have never consented to the collection of their personal data; until recently, they were unaware of Defendant's data collection. *Id.* ¶¶ 110, 116, 122.

B. Procedural Background

On March 5, 2025, Plaintiffs filed their initial complaint against Defendant in Los Angeles County Superior Court. *See* Dkt. # 1 ("*NOR*"). On April 18, 2025, Defendant removed the case to federal court. *See NOR*. On July 3, 2025, Lisa Tsering, Ariel Gilligan, Logan Mitchell, Marc Russo, and Dilara Uskup filed a motion to consolidate their case (*Tsering v. Magnite, Inc.*, No. 2:25-cv-04874) with that of Edward Lewis, Gladys Solis, and Patricia Castillo, and to appoint the Tsering Plaintiffs' attorneys as class counsel. *See* Dkt. # 27. On July 28, 2025, Plaintiffs Edward Lewis, Gladys Solis, and Patricia Castillo filed a motion for appointment of counsel, asking the Court to appoint Loevy & Loevy as class counsel. *See* Dkt. # 32. On September 16, 2025, the Court consolidated the cases and appointed Loevy & Loevy as class counsel. *See* Dkt. # 39. On October 7, 2025, Plaintiffs filed the CAC. *See CAC*.

The CAC includes six claims on behalf of Plaintiffs and putative class members: (I) Intrusion Upon Seclusion under California common law; (II) Violation of the California Invasion of Privacy Act ("CIPA") under California Penal Code § 631; (III) Violation of CIPA under California Penal Code § 638.51; (IV) Invasion of Privacy under Article I, § 1 of the California Constitution; (V) Unjust Enrichment; and (VI) Violation of the Electronic Communications Privacy Act ("ECPA") under 18 U.S.C. § 2511(1), *et seq.*

The CAC defines the relevant class as:

> All persons in the United States whose personal information, communications, or private information, or data derived from their personal information, communications, or private information, was used to create a profile and/or made available

> for sale or use through Defendant's platform, distributed or sold in the process of delivering advertising on websites, mobile applications, or other digital media, or otherwise.

*Id.* ¶ 123. The CAC also references a "California Subclass," defined as:

> All California residents in the United States whose personal information, communications, or private information, or data derived from their personal information, communications, or private information, was used to create a profile and/or made available for sale or use through Defendant's platform, distributed or sold in the process of delivering advertising on websites, mobile applications, or other digital media, or otherwise.

*Id.* ¶ 124.

## II. Legal Standard

Rule 8 requires a complaint to clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32 (9th Cir. 2008). Pleadings that are "verbose, confusing and conclusory" are subject to dismissal. *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981).

Under Rule 12(b)(2), "[w]hen a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013). Where the motion is based on written material rather than on an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (noting that when resolving a motion to dismiss under Rule 12(b)(2) based on written materials, courts accept uncontroverted facts in the complaint as true and resolve conflicts in affidavits in the plaintiff's favor). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over

persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "Because California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution, our inquiry centers on whether exercising jurisdiction comports with [constitutional] due process." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (internal quotation marks and citation omitted); *see* Cal. Code Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, a cause of action's elements that are "supported by mere conclusory statements[] do not suffice." *Id.* Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

## III. Discussion

### A. Motion to Dismiss Under Rule 12(b)(2)

Defendant first argues that the Court must dismiss the CAC for lack of personal jurisdiction under Rule 12(b)(2). "Federal due process permits a court to exercise personal jurisdiction over a nonresident defendant if that defendant has at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020) (quoting *Schwarzenegger*, 374 F.3d at 801). "Those contacts may be so continuous and systematic as to render a defendant essentially at home in the forum state and amenable to any suit there. Alternatively, a court may exercise jurisdiction over 'issues deriving from, or

connected with, the very controversy that establishes jurisdiction.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The Supreme Court has referred to these different bases for personal jurisdiction as 'general' and 'specific' jurisdiction," respectively. *Id.* at 1106–07 (citing *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779–80 (2017)). Because Plaintiffs do not argue that Defendant is subject to general jurisdiction, the Court will analyze only whether Defendant is subject to California's specific jurisdiction.

For a court to exercise specific jurisdiction, the lawsuit must arise out of or relate to the defendant's contacts with the forum. *Bristol-Myers Squibb*, 582 U.S. at 262. The Ninth Circuit "ha[s] established a three-part test for specific personal jurisdiction." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024). The three parts are:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* (citing *Schwarzenegger*, 374 F.3d at 802). "The plaintiff has the burden of proving the first two prongs." *Picot*, 780 F.3d at 1211 (citing *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011)). "If the plaintiff meets that burden, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068–69 (9th Cir. 2017) (internal quotation marks and citation omitted).

As to the first prong, courts generally apply either a "purposeful availment" or "purposeful direction" test. *Glob. Commodities*, 972 F.3d at 1107. "Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while

purposeful direction is often the better approach for analyzing claims in tort." *Id.* at 1107. Because privacy and data use violations sound in tort, the Ninth Circuit often employs a purpose direction analysis, and so will this Court. *See Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025). "[T]he purposeful direction test requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Id.* at 751 (citation omitted). This test, also known as the *Calder* effects test, is drawn from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984).

*i. Express Aiming*

Plaintiffs have made a prima facie showing of jurisdictional facts sufficient to establish that Defendant purposefully directed its conduct toward California. Defendant argues that Plaintiffs' allegations fail to satisfy the second and third prongs of the purposeful direction test. *See Mot.* 18. Defendant contends that it did not expressly aim its conduct at California because the CAC alleges that the Rubicon Tracker is available to any website or app publishers that wish to use it. *See id.* Moreover, the CAC "does not allege that Magnite targets website or app operators in California or that Magnite targets individuals in California." *Id.* 18–19. In Defendant's view, the only reason for contact between Plaintiffs and Defendant is Plaintiffs' choice to use a website or app, making Defendant's contacts "random, isolated, or fortuitous." *Id.* 19 (quoting *Moody v. Textron Inc.*, No. 2:25-cv-01032-MWC-E, 2025 WL 2828109, at *4 (C.D. Cal. Sept. 24, 2025) and *Briskin*, 135 F.4th at 758).

Defendant misreads *Briskin* and *Moody*. In *Briskin*, the Ninth Circuit held that the defendant expressly aimed its conduct at California "through its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws." *Briskin*, 135 F.4th at 756. The opinion identified that the effect on the plaintiff was not "mere happenstance" because the defendant "allegedly knew the location of consumers like [plaintiff] either prior to or shortly after installing its initial tracking software onto their devices." *Id.* Plaintiffs here allege that Defendant utilized the Rubicon Tracker to collect Plaintiffs' precise geolocation data as Plaintiffs utilized various websites and mobile apps. *See CAC* ¶¶ 60, 79, 82. Defendant also shares information about users like Plaintiffs with bidders and advertisers as part of a real-time bidding process, *id.* ¶ 77, generating revenue from transactions where it provides a platform for the purchase and sale of users' information, *id.* ¶ 86. When Defendant combines its data with partner companies'

data, Defendant can identify individual internet users—including Plaintiffs—even more clearly. *Id.* ¶¶ 96–97. Just like the defendant in *Briskin*, the CAC alleges that Defendant knew that Plaintiffs were in California through the information that the Rubicon Tracker collects "either prior to or shortly after installing its" software onto their devices. *See Briskin*, 135 F.4th at 756. Where Defendant knows the location of Plaintiffs and continues to profit off their data, effectively deanonymizing them, *see generally CAC*, while Plaintiffs were unaware of Defendant's conduct and never consented to it, *see, e.g.*, *CAC* ¶¶ 106, 109, 110, the Court cannot deem the effect on Plaintiffs to be "mere happenstance." *See Briskin*, 135 F.4th at 756.

Though on-point Ninth Circuit precedent is enough to dispose of Defendant's argument, the Court further recognizes that *Moody* is inapposite. Perhaps the most glaring difference between *Moody* and the present case is *Moody*'s acknowledgment that it was unclear in that case "how Defendant relied on California customers for commercial gain." *See Moody*, 2025 WL 2828109, at *5 (citing *Couto v. CorVell Enters. Comp.*, No. CV 24-144-M-DWM, 2025 WL 2158641, at *6 (D. Mont. July 30, 2025)). The CAC leaves little doubt as to how Defendant profits off California users' data for commercial gain. *See generally CAC*. As for the "something more" lacking in *Moody*, *see id.* (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011)), the Court first recognizes that the collection, tracking, deanonymization, and sale of Plaintiffs' data—Plaintiffs whom Defendant could identify were in California—is not akin to a mere "internet domain name" and "passive website" that the Ninth Circuit acknowledged calls for "something more" to establish personal jurisdiction, *see Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006). And just as the *Briskin* court characterized the *Mavrix Photo* defendant's "use of [plaintiff's] photos as part of its exploitation of the California market for its own commercial gain" as "the most salient factor in the circumstances of that case," *Briskin*, 135 F.4th at 758, the Court finds Defendant's knowing use of California users' data for its own commercial gain to be the most salient factor to allege "something more" in this case. The Court also cannot ignore that the facts of this case do not resemble those of cases where a court found "something more" lacking. *See Moody*, 2025 WL 2828109, at *5 (collecting cases).

Lastly, Defendant is incorrect that based on this Court's opinion in *Getz*, its actions "at best suggest[] a foreseeable effect in California" rather than express aiming. *Reply* 7–8 (citing *Getz v. CVS Health Corp.*, No. 2:25-cv-04689-MWC-E (C.D. Cal. Oct. 24, 2025)). In *Getz*, this Court highlighted that the plaintiff did not allege that a defendant knew the

plaintiff's precise geolocation data, nor that California users used the relevant website, nor that the defendant created audience maps of users in California. *See Getz*, No. 2:25-cv-04689-MWC-E, 14. By contrast, the CAC alleges that Defendant knew Plaintiffs' precise geolocation data, *see CAC* ¶¶ 107, 113, 119, that Plaintiffs used websites containing the Rubicon Tracker, *see id.* ¶¶ 105, 111, 117, and that Defendant shared Plaintiffs' intercepted information (including Plaintiffs' locations) with bidders and advertisers as part of a real-time bidding process on thousands of websites, *see id.* ¶ 77. Accordingly, the Court finds Plaintiffs to have satisfied the "express aiming" prong of the purposeful direction test.

*ii. Knowledge of Harm in California*

For similar reasons, Plaintiffs have plausibly alleged that Defendant's actions cause harm that Defendant knows Plaintiffs will suffer in California. Defendant argument contains two elements: that any harm Plaintiffs suffered was based on the acts of third parties, and that subjecting Defendant to personal jurisdiction in California would allow "every website operator [to] be subject to personal jurisdiction nationwide based on how the internet works." *Mot.* 19. Defendant also contends in its Reply that the CAC "contains zero plausible allegations that Magnite could determine residency." *Reply* 8.

Though Defendant is correct that the acts of third parties cannot form the basis of personal jurisdiction, *see Theos Med. Sys., Inc. v. Nytone Med. Prods., Inc.*, No. 19-cv-01092-VKD, 2020 WL 500511, at *4 (N.D. Cal. Jan. 31, 2020), Defendant's actions alone create sufficient harm necessary to subject it to personal jurisdiction in California. Plaintiffs identify various ways that Defendant collects users' data without their knowledge absent the actions of third parties, even if it also shares that information with third parties. *See, e.g.*, *CAC* ¶¶ 75, 77, 79, 107, 109, 113, 115, 119, 121. Those allegations are enough to show harm based on Defendant's acts alone. *See Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 481 (N.D. Cal. 2021). This case is unlike *Moody*, where the plaintiff relied on the acts of third parties in collecting additional data to allege harm. *See Moody*, 2025 WL 2828109, at *5.

Regarding Defendant's contention that finding personal jurisdiction here would subject every website operator to personal jurisdiction nationwide, Ninth Circuit precedent forecloses that possibility. *See Pebble Beach*, 453 F.3d at 1158 (identifying that "an internet domain name and passive website alone are not 'something more,' and, therefore, alone are not enough to subject a party to jurisdiction" (citing *Rio Props., Inc. v. Rio Int'l*

*Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) and *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998))). If nothing else, the Court's analysis *supra* serves as an indication that passive activity of the kind Defendant contemplates is not alone enough to subject it to jurisdiction. Especially ironic is Defendant's declaration that this Court would subject "every website operator" to personal jurisdiction nationwide immediately after Defendant cites *Moody*, a case where this Court rejected claims of personal jurisdiction over a website operator. *See Mot.* 19; *Moody*, 2025 WL 2828109, at *1, 5.

As to Defendant's last argument, the Court has already identified that the CAC plausibly alleges that Defendant could track Plaintiffs' precise geolocation data. *See CAC* ¶¶ 60, 79, 82. Therefore, Plaintiffs' allegations that they were using websites and apps containing the Rubicon Tracker while in California are sufficient to show that Defendant would know its actions were impacting individuals in the forum state. *See Wesch v. Yodlee, Inc.*, No. 20-cv-05991-SK, 2021 WL 3486128, at *2 (N.D. Cal. Aug. 5, 2021).

For the foregoing reasons, Plaintiffs have made a prima facie showing of jurisdictional facts sufficient to establish that Defendant purposefully directed its conduct toward California. Accordingly, the Court declines to dismiss the CAC under Rule 12(b)(2).

B. <u>Motion to Dismiss Under Rule 12(b)(6)</u>

*i. Counts I and IV: Intrusion Upon Seclusion and Invasion of Privacy*

To maintain an action for intrusion upon seclusion, a plaintiff must show (1) a reasonable expectation of privacy and (2) an intrusion of that privacy that was highly offensive. *See In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 945–46 (N.D. Cal. 2022). To plead an invasion of privacy, a plaintiff must plead that (1) they had a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is highly offensive. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). The parties agree that the Court must analyze Plaintiffs' claims for intrusion upon seclusion under California common law and invasion of privacy under the California Constitution using the same test. *See Mot.* 20; *Opp.* 8. Accordingly, the Court will first analyze whether Plaintiffs had a reasonable expectation of privacy, after which it will determine whether Defendant's intrusion was highly offensive. *See In re Facebook, Inc., Internet Tracking Litig. ("Facebook Tracking")*, 956 F.3d 589, 605 (9th Cir. 2020).

*a. Reasonable Expectation of Privacy*

The Court finds that Plaintiffs adequately plead that they had a reasonable expectation of privacy. Defendant argues that Plaintiffs' expectation that Defendant would not collect device and browsing information to create profiles for targeted advertising purposes is "unreasonable as a matter of law." *See Mot.* 20. Defendant first points to the California Consumer Privacy Act ("CCPA") and the Delete Act, averring that because those laws "recognize and regulate the very same practices challenged in the Complaint," it is unreasonable for Plaintiffs to "claim surprise over the very same practices that are pervasive enough to warrant comprehensive legislation and which the legislature deemed beneficial enough to justify an opt-out regime instead of an opt-in one." *See id.* 20–21. By Defendant's logic, no claims like Plaintiffs' could go forward under California common law or the California Constitution in the wake of the CCPA and the Delete Act. Of course, that is not the case, as "plaintiffs have a reasonable expectation of privacy where data is collected without their consent." *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021) (citing *Facebook Tracking*, 956 F.3d at 603, and denying motion to dismiss claims under California common law and California Constitution). The Court will not fabricate out of whole cloth a rule that because another statute creates an opt-out regime for data collection, a user could not plausibly have a reasonable expectation of privacy in that data.

Defendant next contends that its behavior is ubiquitous and that Plaintiffs cannot expect to avoid "routine, pseudonymized tracking." *See Mot.* 21. To be sure, tracking internet activity has become commonplace. *See Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024). Still, contrary to Defendant's assertion, the CAC does more than "point[] to the general collection of IP addresses or location information derived therefrom." *See Mot.* 22. Instead, the CAC notes that Defendant has not just tracked Plaintiffs' geolocations, but also monitored and intercepted communications related to their personal characteristics, modes of living, purchase decisions, app selections, spending habits, and click choices. *See CAC* ¶¶ 107, 113, 119. Defendant has effectively deanonymized Plaintiffs and created "digital fingerprints" for them, all without their consent. *See id.* ¶¶ 102–103. Those allegations are enough to plausibly plead a reasonable expectation of privacy. *See Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 864 (C.D. Cal. 2024) (noting that "a reasonable

factfinder could determine the Search Terms were sensitive and confidential because they revealed the specific content Plaintiffs consumed”).[1]

Lastly, Defendant contends that the presence of privacy policies renders Plaintiffs' expectations unreasonable. Even taking judicial notice of those policies, “the mere existence of a privacy policy is not dispositive because users might lack actual or constructive notice of the policy.” *Hart v. TWC Prod. and Tech. LLC*, 526 F. Supp. 3d 592, 601 (N.D. Cal. 2021) (citing *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1073–74 (N.D. Cal. 2016)). “It is unlikely . . . that most users' *actual* privacy expectations are shaped by the fine print of a privacy policy . . . that likely few, if any, users have actually read.” *See hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1107 (N.D. Cal. 2017) (emphasis in original). Plaintiffs allege that they were unaware of Defendant's data collection and never consented to it, *see CAC* ¶¶ 100–103, which defeats Defendant's argument as to their reasonable expectation of privacy, *see James v. Allstate Ins. Co.*, No. 3:23-cv-01931-JSC, 2023 WL 8879246, at *5 (N.D. Cal. Dec. 22, 2023) (stating that because plaintiff alleged he lacked notice of the privacy policy prior to defendant intercepting his data, “even if the Court were to consider the Privacy Policy under the incorporation by reference doctrine, drawing all inferences in Plaintiff's favor, the website hyperlink failed to disclose a third party's capture of” Plaintiff's information, and acknowledging that “[t]o conclude otherwise would improperly draw inferences in Defendants' favor.” (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018))).

Accordingly, the Court deems Plaintiffs to have plausibly pled a reasonable expectation of privacy.

*b. Highly Offensive Intrusion*

To determine whether a defendant's actions were highly offensive to a reasonable person, a court must conduct a “‘holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives

[1] Defendant correctly identifies that Plaintiffs' quotation of *Hill v. National Collegiate Athletic Association*, 7 Cal.4th 1 (1994), on page 9 of Plaintiffs' opposition brief does not appear in the case. The Court will assume that this mistake was inadvertent but admonishes Plaintiffs' counsel to exercise greater caution in the future.

and objectives, and whether countervailing interests or social norms render the intrusion offensive.'" *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (quoting *Facebook Tracking*, 956 F.3d at 606). The court must assess too "the degree to which the intrusion is unacceptable as a matter of public policy." *Facebook Tracking*, 956 F.3d at 606. Though "routine commercial behavior" may not be "highly offensive," *see Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012), conduct is more likely to be highly offensive where the defendant surreptitiously collects sensitive information, *Hammerling*, 615 F. Supp. 3d at 1090 (citing *Facebook Tracking*, 956 F.3d at 606 n.8)).

The Ninth Circuit has identified that whether a company's tracking and collection practices could highly offend a reasonable individual is an issue that a court may be unable to resolve at the pleading stage. *Facebook Tracking*, 956 F.3d at 606. Other courts in this Circuit have at times taken the same approach. *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) ("Finally, determinations of the egregiousness of the privacy intrusion are not usually resolved at the pleading stage."); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (determining that defendant's conduct as alleged "may or may not be highly offensive to current privacy norms," but that this question was a factual one for a jury to determine); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1061 (N.D. Cal. 2014) ("The Court cannot conclude as a matter of law that Defendants' copying of Plaintiffs' address books was not 'highly offensive.' That question is best left for a jury."); *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *5 (N.D. Cal. June 9, 2023) (similar); *see also Sheehan v. S.F. 49ers, Ltd.*, 45 Cal. 4th 992, 1003 (2009).

Here, the Court recognizes the same—the question of the degree to which Defendant's conduct was highly offensive to a reasonable person should not be resolved at the pleading stage. Still, for purposes of ruling on Defendant's motion, the Court finds the CAC sufficient to plausibly allege highly offensive conduct. The CAC alleges, for example, that Defendant "intercepted communications . . . regarding virtually every aspect of [Plaintiffs' and Class Members'] lives, including their health, private interests, buying habits, consumption of media, geolocation, and many more," and that Defendant added this information "to consumer profiles" and monetized it for targeted advertising purposes.

*CAC* ¶ 196. The CAC notes that this data collection was surreptitious, *see id.* ¶ 102, and that Defendant utilized its data to essentially deanonymize Plaintiffs, *see id.* ¶¶ 108, 114, 120. Mindful of the factually intensive nature of this inquiry, the Court deems the CAC's allegations sufficient at the pleading stage. *See, e.g.*, *Facebook Tracking*, 956 F.3d at 599 (allowing invasion of privacy and intrusion upon seclusion claims to go forward where plaintiffs alleged that defendant's tracking allowed it "to amass a great degree of personalized information" including "an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives"); *Katz-Lacabe*, 668 F. Supp. 3d at 942 (determining that allegations of defendant collecting sensitive health and personal safety information and information related to race and politics were sufficient to survive a motion to dismiss); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1047 (S.D. Cal. 2023) (finding an egregious breach plausible where defendant surreptitiously collected information that could reveal a person's religious affiliation, sexual orientation, and medical condition); *contra Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (noting that the plaintiff identified "no embarrassing, invasive, or otherwise private information" that defendant collected, and that Defendant's monitoring of plaintiff's website interactions seemed "most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales.").

As such, the Court finds the CAC to have plausibly alleged highly offensive conduct.

*c. Nationwide Class*

Defendant argues that the Court must dismiss Plaintiffs' claim for intrusion upon seclusion because that claim is brought on behalf of a nationwide class. *See Mot.* 25. Courts may reject a nationwide class where "variances in state law overwhelm common issues and preclude predominance for a single nationwide class." *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012), *overruled on other grounds by*, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). "California law may only be used on a classwide basis if the interests of other states are not found to outweigh California's interest in having its law applied." *Mazza*, 666 F.3d at 590. "[A] detailed and fact-intensive inquiry is necessary to determine the substantive law applicable to class members' claims." *Wallace v. SharkNinja Operating, LLC*, No. 18-cv-

05221-BLF, 2020 WL 1139649, at *15 (N.D. Cal. Mar. 9, 2020). Moreover, "dismissing or striking class allegations at the pleading stage is rare." *Id.* (citing *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007)); *In re Wal-Mart Stores*, 505 F. Supp. 2d at 614 ("Generally, courts review class allegations through a motion for class certification." (citation omitted)).

The Court finds Defendant's argument more appropriate for the class certification stage, and thus will not dismiss Plaintiffs' claim for intrusion upon seclusion brought on behalf of the nationwide class. The Court finds it a "better course" to deny a motion to strike class allegations at the pleading stage "because 'the shape and form of a class action evolves only through the process of discovery.'" *Id.* at 615 (quoting *Myers v. MedQuist, Inc.*, No. 05-4608, 2006 WL 3751210, at *4 (D.N.J. 2006)). The parties' briefing is bereft of the necessary information to conduct the "detailed and fact-intensive inquiry" for the Court to make this determination. *See Wallace*, 2020 WL 1139649, at *15. Accordingly, the Court will follow the examples of many other courts in this Circuit and defer such a decision until the appropriate juncture. *See, e.g.*, *Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-cv-00603-EJD, 2017 WL 4680073, at *4 (N.D. Cal. Oct. 18, 2017) ("The Court agrees that it is preferable to defer ruling on the scope of the class in the context of a class certification motion and not a motion to dismiss." (citing *Bruton v. Gerber Prod. Co.*, No. 12-CV-02412-LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014))); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013) ("Such a detailed choice-of-law analysis is not appropriate at this stage of the litigation. Rather, such a fact-heavy inquiry should occur during the class certification stage, after discovery." (citation omitted)); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236, at *16 (N.D. Cal. Oct. 2, 2013) ("Here, the Court finds that striking the nationwide class allegations at this stage of this case would be premature."); *Valencia v. Volkswagen Grp. of Am. Inc.*, No. 15-cv-00887-HSG, 2015 WL 4760707, at *1 (N.D. Cal. Aug. 11, 2015) (noting that "[w]hether California law differs from the laws of other states in a way that is material to this litigation is not a proper inquiry at the pleading stage," as "[s]uch a deeply factual inquiry is more appropriately addressed at the class certification stage, which was, incidentally, the posture of the *Mazza* action when it was appealed to the Ninth Circuit." (emphasis omitted)).

Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiffs' Counts I and IV.

*ii. Counts II and VI: Violations of CIPA § 631 and ECPA*

Under § 631(a) of CIPA, a plaintiff may plead a claim by plausibly alleging that a defendant "willfully attempt[e]d to learn the contents or meaning of a communication in transit over a wire" *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 945 (S.D. Cal. 2024) (internal quotation marks and citation omitted). For Plaintiffs' ECPA claim, they must allege that Defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 900 (C.D. Cal. 2024) (internal quotation marks and citation omitted). Defendant argues that the Court should dismiss Plaintiffs' wiretapping claims "because the Complaint does not plausibly allege that Magnite acquired the content of any communications or did so via real-time interception." *See Mot.* 26. The Court will address each of those arguments in turn.

*a. Contents of Communications*

Under ECPA, "contents" include "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8); *see Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 975 (S.D. Cal. 2023) ("'The analysis for a violation of CIPA is the same as that under [ECPA].'" (quoting *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018))). Plaintiffs argue that they and class members "communicate with websites when they type in search queries on websites and apps utilizing the Rubicon Tracker." *Opp.* 17. The Ninth Circuit has clarified that "the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regard the characteristics of the message that is generated in the course of the communication." *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).

The parties first disagree as to whether search terms constitute contents of communications. *Compare Mot.* 26–27, *with Opp.* 18. The Ninth Circuit has contemplated that search terms would qualify as such. *See In re Zynga*, 750 F.3d at 1108–09 ("Under some circumstances, a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication." (citation omitted)). On the facts of this case, the Court agrees with the litany of others in this Circuit which have ruled that search terms qualify as contents of communications. *See, e.g.*,

*Heerde*, 741 F. Supp. 3d at 860 ("Next, Defendants argue the Search Terms do not constitute 'contents' of communications. The court disagrees." (citation omitted)); *Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 WL 2950164, at *3 (N.D. Cal. Oct. 17, 2025) ("Plaintiffs have alleged that, among other things, [defendant] collects full-string URLs that reflect not only the website visited, but also, for example, search queries and specific items Plaintiffs viewed. This information constitutes content of communications under CIPA and the ECPA." (citations omitted)); *Gabrielle v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 WL 2494368, at *11 (N.D. Cal. Aug. 29, 2025) ("As [plaintiff] points out in response, search terms and descriptive URLs, like those alleged in the complaint, constitute 'contents.'" (citations omitted)); *see also Jane Doe v. Talkiatry Mgmt. Servs., LLC*, No. 5:25-cv-00781-SSS-DTBx, 2025 WL 3190813, at *3 (C.D. Cal. Oct. 1, 2025).

Defendant contends that "even if 'search terms' could be treated as protected content, Plaintiffs do not plausibly allege that Magnite obtained their search terms." *Mot.* 27. Here, Defendant is correct. Plaintiffs refer only to an illustrative example related to drugs.com, *see Opp.* 17 (citing *CAC* ¶¶ 65–68)), and that Plaintiffs "used the search function of and/or interacted with a website or mobile app on which the Rubicon Tracker was installed . . . ," *see CAC* ¶ 147. As a matter of due process, these allegations do not provide adequate notice as to what Defendant did to harm these Plaintiffs. Without allegations as to what these Plaintiffs searched, Plaintiffs fail to plausibly allege that Defendant intercepted the contents of their communications. *See King v. Hard Rock Café Int'l (USA), Inc.*, No. 2:24-cv-01119-DC-CKD, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) ("Notably, Plaintiff's FAC provides examples of the types of 'full-string URLs' allegedly intercepted by Meta, but Plaintiff does not allege she conducted the searches or visited the webpages provided in the examples. Thus, Plaintiff has not alleged that the 'contents' of her communications were intercepted." (citation omitted)); *Harril v. Emanuel Med. Ctr.*, No. 2:23-cv-01672-DC-CKD, 2025 WL 1635428, at *10 (E.D. Cal. June 9, 2025) (ruling that plaintiff had not stated cognizable CIPA claim where, *inter alia*, "Plaintiff's complaint [did] not specify or describe the searches Plaintiff conducted on the Website."); *see also Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 960 (C.D. Cal. 2001) ("General, conclusory, or vague allegations are insufficient." (citing *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992))).

Accordingly, this deficiency alone is enough for the Court to dismiss Counts II and VI of the CAC.

*b. In-Transit Element*

Still, for the sake of clarity, the Court will analyze the "in-transit" element of Plaintiffs' claims. Defendant argues that the CAC does not plausibly allege that Defendant acquired Plaintiffs' communications "'during transmission' rather than while they were 'in electronic storage.'" *See Mot.* 27–28 (citing *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)). Further, Defendant avers that Plaintiffs have not alleged that Defendant read, attempted to read, or learned the contents of Plaintiffs' communications while those communications were in transit. *See id.* 28 (citing Cal. Penal Code § 631(a)).

Defendant is correct on this element too. Plaintiffs point to two different sections of the CAC that they contend satisfy the in-transit requirement. *See Opp.* 18. First, they refer to paragraph 55 of the CAC, which alleges that "Defendant employed trackers on various third-party websites and apps, which were thereby installed on Plaintiffs' and Class Member[s'] . . . browsers and computing devices," and that those trackers "have collected browser and device data as well as identifying and addressing information . . . ." *CAC* ¶ 55. This allegation is that Defendant collects Plaintiffs' information, but it says nothing regarding Defendant's attempt "to read, or attempts to read, or to learn the contents or meaning" of Plaintiffs' communications while those communications were in transit. *See* Cal. Penal Code § 631. This Court agrees with others that "you have to do something more than just intercept the contents of the communication" to state a claim. *See Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2025 WL 2971090, at *5 (N.D. Cal. Oct. 17, 2025) (citing *Torres v. Prudential Fin.*, No. 22-cv-07465 (CRB), 2025 WL 1135088, at *5–7 (N.D. Cal. Apr. 17, 2025)).

Although Plaintiffs highlight paragraphs 85 through 98 of the CAC, these allegations fare no better. This section of the CAC concerns Defendant's monetization of Plaintiffs' data, but it offers little regarding Defendant's analysis of Plaintiffs' communications—rather, Plaintiffs' allegations suggest that Defendant would analyze Plaintiffs' communications after it collects them, not as it collects them. As such, the CAC falls short in alleging the "in-transit" element. *See R.C. v. Sussex Publishers, LLC*, No. 24-cv-02609-JSC, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025).

Accordingly, the Court **GRANTS** Defendant's motion to dismiss Counts II and VI.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-03448-MWC-SSCx Date: December 4, 2025

Title: Edward Lewis *et al.* v. Magnite, Inc.

*iii. Count III: Violation of CIPA § 638.51*

Defendant contends that the Court must dismiss Count III because the Rubicon Tracker is not a "pen register" within the meaning of CIPA. *See Mot.* 31. Defendant is incorrect. CIPA defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Defendant argues that the purpose of this provision was to record telephone numbers and that there is "no evidence that lawmakers intended the definition of 'pen register' to include digital advertising tools." *See Mot.* 31. Defendant also cites various California Superior Court decisions that agree with its interpretation. *See id.*

"The axioms of statutory construction require us first to look at the words used by the Legislature. If the language is unambiguous, our task is finished." *English v. IKON Bus. Sols., Inc.*, 94 Cal. App. 4th 130, 143 (2001); *see also Sass v. Cohen*, 10 Cal. 5th 861, 875 (2020). Defendant almost entirely skips this step—a step that this Court deems dispositive—in favor of analyzing the statute's legislative history. Based on accepted methods of statutory interpretation in this state and federally, *see Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009), this Court cannot parrot Defendant's flawed methodology.

Defendant's lone textual argument is that "IP address[es], location data, [and] device information do[] not constitute destination dialing or routing information for the party Plaintiff[s] contact . . . ." *See Mot.* 32 (emphasis and internal quotation marks omitted). But Plaintiffs detail that the Rubicon Tracker follows Plaintiffs as they engage on the internet, including by collecting their referrer pages and those pages' IP addresses, and by attaching a "cookie" that tracks users across the web and multiple devices. *See CAC* ¶¶ 60, 62, 63. Stated differently, the Rubicon Tracker records Plaintiffs' movements across the internet as they move across the internet. To do so, the Rubicon Tracker would necessarily have to capture destination information, more than plausibly including the "dialing, routing, addressing, or signaling information from which a wire or electronic communication is transmitted . . . ." *See* Cal. Penal Code § 638.50(b).

Other courts in this Circuit have found conduct like Defendant's to fall under § 638.50(b). *See, e.g.*, *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928–33 (N.D. Cal. 2024); *Greenley*, 684 F. Supp. 3d at 1050–51; *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024); *Fregosa v. Mashable, Inc.*, No. 25-cv-01094-CRB, 2025

WL 2886399, at *4–6 (N.D. Cal. Oct. 9, 2025); *Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-cv-01797-CRB, 2024 WL 5102709, at *3–4 (N.D. Cal. Dec. 12, 2024). And Defendant's authority cutting the other way does not persuade the Court otherwise, as that authority glosses over the requisite textual analysis in favor of weighing extraneous factors and, in some cases, unilaterally adds modifiers to the statute. *See* Mot. 31–33 (citing, *inter alia*, *Scharon v. Paramount Glob.*, No. 25STCV10585 (Cal. Super. Ct. Oct. 3, 2025) (deciding that § 638.51 applies only to telephone lines)); *see also* Cal. Penal Code § 638.52(d)(1), (d)(3) (specifically mentioning telephone lines); *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *11 (N.D. Cal. July 14, 2025) ("If the drafters of Section 638.50 had intended for 'pen register' to be limited to telephone technologies, they knew how to do so—as evidenced by other sections of CIPA where they imposed such limitations." (citing Cal. Penal Code §§ 631(a), 632.7)).

Defendant's last argument against Count III is that the Court should bar Plaintiffs' claim under the rule of lenity. "It is accepted that where there is ambiguity in a criminal statute requiring judicial interpretation, a court should resolve the ambiguity in favor of lenity." *U.S. v. Edmonson*, 792 F.2d 1492, 1498 (9th Cir. 1986). "Absent ambiguity . . . there is no occasion for such statutory interpretation." *Id.* (citing *U.S. v. Batchelder*, 442 U.S. 114, 121–22 (1979)); *see also Smith v. LoanMe*, 11 Cal. 5th 183, 202 (2021) (noting that "the rule of lenity does not apply every time there are two or more reasonable interpretations of a penal statute," but only "when two reasonable interpretations of the same provision stand in relative equipoise . . . ." (cleaned up)). As the Court details above, it finds no ambiguity regarding the application of § 638.50 to these facts. Nor do Defendant's citations to courts reaching a different conclusion require this Court to deem the statutory language ambiguous. *See Reno v. Koray*, 515 U.S. 50, 64 (1995) ("A statute is not ambiguous for purposes of lenity merely because there is a division of judicial authority over its proper construction." (internal quotation marks and citation omitted)). To buttress its argument, Defendant offers a parade of horribles that it declares will follow from this Court's interpretation. *See* Mot. 32–33. Defendant's prophecy has not come to fruition in the last few years since other courts have interpreted CIPA as this Court does. To the extent Defendant still wishes to address these horribles, the legislature is the appropriate forum for Defendant to air its concerns.

Accordingly, the Court **DENIES** Defendant's motion to dismiss Count III.

*iv. Count V: Unjust Enrichment*

Defendant makes several arguments as to why the Court should dismiss Plaintiffs' unjust enrichment claim, but none are persuasive. First, it argues that "unjust enrichment is not a standalone cause of action." *See Mot.* 35. Defendant cites *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), which indeed states that "there is not a standalone cause of action for unjust enrichment . . . ." *See id.*; *Mot.* 35. But Defendant fails to include the rest of the Ninth Circuit's analysis, that "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana*, 783 F.3d at 762. Accordingly, drawing all reasonable inferences in Plaintiffs' favor at this stage, the Court will construe Plaintiffs' cause of action for unjust enrichment as a quasi-contract claim seeking restitution. *See, e.g.*, *Myers-Taylor v. Ornua Foods N. Am., Inc.*, No. 3:18-cv-01538-H-MDD, 2019 WL 424703, at *6 (S.D. Cal. Feb. 4, 2019) ("Here, although Plaintiff has not explicitly pled a quasi-contract claim, the Court construes his unjust enrichment claim as a quasi-contract claim." (citation omitted)); *see also Bruton v. Gerber Prods. Co.*, 703 Fed. Appx. 468, 470 (9th Cir. 2017) (noting that "the California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment to proceed in an insurance dispute." (citation omitted)).

Defendant next asserts that Plaintiffs' claim cannot go forward because Defendant's receipt of a benefit at Plaintiffs' expense was not the product of "mistake, fraud, coercion or request." *See Mot.* 35. "[T]he essence of unjust enrichment is the unjust retention of a benefit at the expense of another." *Sons v. McManis*, No. CIV F 08–0840 AWI TAG, 2010 WL 3491514, at *7 (E.D. Cal. Sept. 3, 2010) (citing *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)). Here, the Court deems the CAC to have plausibly alleged unjust enrichment because Defendant surreptitiously retained and profited off Plaintiffs' data. *See generally CAC.* These allegations are sufficient here, as other courts have determined in similar cases. *See, e.g.*, *Hart v. TWC Prod. and Tech. LLC*, 526 F. Supp. 3d 592, 605 (N.D. Cal. 2021) ("[Plaintiff] has alleged that he did not receive the benefit of his bargain because he never agreed to share all his location data with [defendant]."); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1095 (N.D. Cal. 2025) ("Because the FAC contains detailed factual allegations as to how [defendant] has violated Plaintiffs' privacy rights to create a 'surveillance ecosystem' at the heart of its revenue generation

without their consent, Plaintiffs have sufficiently stated a claim for unjust enrichment." (citation omitted)).[2]

Third, Defendant avers that the relationship between Plaintiffs and Defendant is too attenuated for Plaintiffs to maintain a cause of action for unjust enrichment. *See Mot.* 35. As a logical matter, it would be perverse to allow Defendant to receive the benefit of Plaintiffs' data without their knowledge, only to prohibit those Plaintiffs from seeking restitution because Defendant did it surreptitiously. As a legal matter, Defendant does not provide any case where a court dismissed an unjust enrichment claim due to a plaintiff's lack of knowledge as to defendant's deriving a benefit from them. *See Mot.* 35 (citing *Doe I v. Wal-Mart Stores*, 572 F.3d 677, 684–85 (9th Cir. 2009) (dismissing unjust enrichment claim where employees of a manufacturer sought to obtain restitution from Wal-Mart, who purchased goods from that manufacturer)). The Court has no difficulty identifying cases that reach the opposite conclusion. *See, e.g.*, *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021); *Hart*, 526 F. Supp. 3d at 605.

Fourth, Plaintiffs may seek equitable remedies in the alternative at the pleading stage, foreclosing Defendant's argument that Plaintiffs cannot plead a claim for unjust enrichment based on the presence of legal claims. *Katz-Lacabe*, 668 F. Supp. 3d at 949 (identifying that Ninth Circuit precedent "does not preclude a plaintiff from pleading equitable remedies in the alternative." (internal quotation marks and citation omitted)). Nor does this Court adopt a "magic words" approach to pleading in the alternative. *See In*

[2] Citing *Astiana*, Defendant declares that "binding Ninth Circuit precedent" requires Plaintiffs to fit their unjust enrichment claim squarely within the confines of "mistake, fraud, coercion, or request." *See Reply* 16. This argument first ignores the basis for an unjust enrichment claim—California law. Second, Defendant disregards that *Astiana*'s reference to "mistake, fraud, coercion, or request" cited California Jurisprudence 3d Restitution § 2, which states that an action for unjust enrichment is "*ordinarily* based on a benefit conferred through mistake, fraud, coercion, or request," not that such an action is exclusively based on those four categories. 55 Cal. Jur. 3d Restitution § 2 (emphasis added). Moreover, that source notes that "[t]he phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of or for property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." *Id.* At this stage, the Court finds that definition expansive enough to capture Plaintiffs' claims.

*re Ethereummax Invest.*, No. CV 22-00163-MWF (SKx), 2023 WL 6787827, at *16 (C.D. Cal. June 6, 2023).

Lastly, Defendant reiterates its argument that Plaintiffs cannot represent a nationwide class for unjust enrichment under California law. As the Court has already explained, that inquiry is inappropriate at this stage. *See supra* Section III.B.i.C.

Accordingly, the Court **DENIES** Defendant's motion to dismiss Count V.

## IV. Leave to Amend

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). In the Ninth Circuit, courts should grant leave to amend with "extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (internal quotation marks and citation omitted). At this juncture, it is not obvious to the Court that Plaintiffs could not possibly save the dismissed claims by amending them. Accordingly, the Court **GRANTS** leave to amend. Plaintiffs must file an amended complaint no later than end of day on January 2, 2026.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss Counts II and VI and **DENIES** Defendant's motion as to all other claims. To the extent the Court grants Defendant's motion, it does so **WITH LEAVE TO AMEND**. The December 5, 2025, hearing is **VACATED**. Plaintiffs must file an amended complaint no later than end of day on January 2, 2026.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-03448-MWC-SSCx Date: December 4, 2025

Title: Edward Lewis *et al.* v. Magnite, Inc.

:

**Initials of Preparer** TJ