Thomas M. Hanson, Bar No. 184465
hanson@loevy.com
David B. Owens, Bar No. 275030
david@loevy.com
Jon Loevy, *pro hac vice*
jon@loevy.com
Mike Kanovitz, *pro hac vice*
mike@loevy.com
Julia Quinn, *pro hac vice*
jquinn@loevy.com
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (phone)
(312) 243-5902 (fax)

*Attorneys for Plaintiffs and Interim Class Counsel*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EDWARD LEWIS, et al., individually and on behalf of similarly situated individuals,

Plaintiffs,

v.

MAGNITE, INC.,

Defendant.

Case No. 2:25-cv-03448-MWC-SSC

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: June 12, 2026
Time: 1:30 P.M.
Courtroom: 6A
Judge: Hon. Michelle Williams Court

# NOTICE OF MOTION

**TO THE HONORABLE COURT AND ALL PARTIES**

Please take notice that on June 12, 2026 at 1:30 P.M., or as soon thereafter as this matter may be heard, in the above-entitled Court located at 350 W. 1st Street, Ste. 4311, Los Angeles, CA 90012-4565, pursuant to Federal Rule of Civil Procedure 23, Plaintiffs will and hereby do move this Court for certification of the following class:

> All persons in the United States whose personal information, communications, or private information, or data derived from their personal information, communications, or private information, was used to create a profile and/or made available for sale or use through Defendant's platform, distributed or sold in the process of delivering advertising on websites, mobile applications, or other digital media, or otherwise.

Plaintiffs also seek certification of the following Subclass:

> All California residents whose personal information, communications, or private information, or data derived from their personal information, communications, or private information, was used to create a profile and/or made available for sale or use through Defendant's platform, distributed or sold in the process of delivering advertising on websites, mobile applications, or other digital media, or otherwise.

Plaintiffs also seek the appointment of Edward Lewis as the class representative and that Jon Loevy, Mike Kanovitz, Thomas M. Hanson, David B. Owens and Julia Quinn of the Loevy & Loevy law firm be appointed as Class Counsel.This Motion is based on this Notice of Motion and Motion; the accompanying declarations of Thomas M. Hanson, Ian Mercado, and Edward Lewis, as well as the pleadings and papers filed in this action and such further argument and matters as may be offered at the time of the hearing on this Motion. This motion is made following multiple conferences between counsel wherein counsel for Defendant Magnite has indicated that it will oppose class certification.

Dated: May 7, 2026

Respectfully submitted,

/s/ Thomas M. Hanson

Thomas M. Hanson
(hanson@loevy.com)
Mike Kanovitz (mike@loevy.com)
Jon Loevy (jon@loevy.com)
David B. Owens (david@loevy.com)
Julia Quinn (jquinn@loevy.com)
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (phone)
(312) 243-5902 (fax)
*Counsel for Plaintiff*

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 1

III. PROPOSED CLASS AND SUBCLASS ..... 4

IV. LEGAL STANDARD ..... 5

V. ARGUMENT ..... 5

A. Rule 23(a) is Satisfied ..... 5

1. Numerosity ..... 5

2. Commonality ..... 6

3. Typicality ..... 7

4. Adequacy ..... 7

B. Rule 23(b) is Satisfied ..... 8

1. Predominance ..... 8

*a. The CIPA Claims Satisfy Predominance* ..... 9

*b. The Intrusion Upon Seclusion Claim Satisfies Predominance* ..... 10

*c. The California Constitutional Privacy Claim Satisfies Predominance* ..... 12

*d. The Unjust Enrichment Claim Satisfies Predominance* ..... 12

*e. Predominance is Satisfied as to Damages* ..... 13

2. Superiority ..... 16

3. Ascertainability ..... 17

VI. CONCLUSION ..... 17

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A. B. v. Hawaii State Dep't of Educ.*,
30 F.4th 828 (9th Cir. 2022) ........ 6

*Alcazar v. Fashion Nova, Inc.*,
2022 WL 19975445 (N.D. Cal. Sept. 6, 2022) ........ 16

*Amgen Inc. v. Connecticut Retirement Plans,*
568 U.S. 455 (2013) ........ 5

*Bellinghausen v. Tractor Supply Co.*,
303 F.R.D. 611 (N.D. Cal. 2014) ........ 16

*Briseno v. ConAgra Foods, Inc.*
844 F.3d 1121 (9th Cir. 2017) ........ 17

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 12

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ........ 14

*Chinitz v. Intero Real Est. Servs.*,
2020 WL 7391299 (N.D. Cal. July 22, 2020) ........ 6

*Del Valle v. Global Exchange Vacation Club,*
320 F.R.D 50 (C.D. Cal. 2017) ........ 10

*Doe v. Mindgeek USA Inc.*,
2023 WL 8126845 (C.D. Cal. Nov. 17, 2023) ........ 14

*Ellis v. Costco Wholesale Corp.*,
285 F.R.D. 492 (N.D. Cal. 2012) ........ 14

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ........ 1, 11

*Gold v. Midland Credit Mgmt., Inc.*,
306 F.R.D. 623 (N.D. Cal. 2014) .......... 14
*Hart v. TWC Prod. ¶ Tech. LLC*,
526 F. Supp. 3d 592 (N.D Cal. 2021) .......... 10
*Howard v. Aspen Way Enters., Inc.*,
406 P.3d 1271 (Wyo. 2017) .......... 11
*In re Facebook Biometric Info. Priv. Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018) .......... 16
*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 12
*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
609 F. Supp. 3d 942 (N.D. Cal. 2022) .......... 6
*In re Toys R Us-Delaware, Inc.*,
300 F.R.D. 347 (C.D. Cal. 2013) .......... 14
*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) .......... 7, 9
*Lectrodryer v. SeoulBank*,
77 Cal. App. 4th 723 (2000) .......... 13
*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) .......... 13
*Lilly v. Jamba Juice Co.*,
308 F.R.D 231 (N.D. Cal. 2014) .......... 17
*Mazur v. eBay, Inc.*,
257 F.R.D. 563 (N.D. Cal. 2007) .......... 17
*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) .......... 11

*Nitsch v. Dreamworks Animation SKG Inc.*,
315 F.R.D. 270 (N.D. Cal. 2016) .......... 8
*O'Shea v. Am. Solar Sol., Inc.*,
318 F.R.D. 633 (S.D. Cal. 2017) .......... 9
*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) .......... 8
*Opperman v. Path, Inc.*,
No. 13-cv-0453-JST, 2016 WL 3844326
(N.D. Cal. July 15, 2016) .......... 12, 15
*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) .......... 16
*Pro. Tax Appeal v. Kennedy-Wilson Holdings, Inc.*,
29 Cal. App. 5th 230 (2018) .......... 12
*Rannis v. Recchia*,
380 Fed. App'x 646 (9th Cir. 2010) .......... 6
*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 12
*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2024 WL 38302
(N.D. Cal. Jan. 3, 2024) .......... 7, 11, 15
*Romero v. Securus Techs., Inc.*,
331 F.R.D. 391 (S.D. Cal. 2018) .......... 1, 14, 17
*Shulman v. Group W. Productions, Inc.*,
18 Cal. 4th 200, 955 P.2d 469 (Cal. 1998) .......... 11
*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .......... 8

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) .......... 13

*Torres v. Prudential Fin. Inc.*,
2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) .......... 1

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .......... 8

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*,
593 F.3d 802 (9th Cir. 2010) .......... 5

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) .......... 16

*Vaquero v. Ashley Furniture Industries, Inc.*,
824 F.3d 1150 (9th Cir. 2016) .......... 13

*Vizcarra v. Unilever United States, Inc.*,
2023 WL 2364736 (N.D. Cal. Feb. 24, 2023) .......... 16

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 6, 7

*Wilcox v. Swapp*,
330 F.R.D. 584 (E.D. Wash. 2019) .......... 14

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) .......... 7, 16

**Statutes** **Page(s)**

Cal. Penal Code § 638 .......... 9

**Rules** **Page(s)**

Fed. R. Civ. P. 23 .......... 5

**Other Authorities** **Page(s)**

Eli A. Meltz, No Harm, No Foul?: "Attempted" Invasion of Privacy and the Tort of Intrusion Upon Seclusion, 83 Fordham L. Rev. 3431 (2015) .......... 11

*Restatement (Second) of Torts,* (Am. Law Inst. 1977) .......... 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs and each of the putative class members bring uniform claims that arise out of Defendant Magnite, Inc.'s ("Magnite") secret use of its "Rubicon Tracker" software to invade their computers and intercept highly personal data about their internet usage. As alleged in the Complaint and borne out herein with evidence, Magnite deploys a tracking technology across thousands of websites and mobile applications. That technology automatically puts tracking software on the class members' computers and collects their persistent identifiers and geolocation data. Magnite then takes this data and uses it in a real-time market where it auctions off the results.

Magnite's technology and conduct are standardized, meaning that the class members all confront the same factual and legal questions to establish the violation of their privacy rights. In particular, the elements of the CIPA claim at issue are straightforward and capable of proof with common, classwide evidence. As a result, CIPA claims are routinely certified. *See, e.g.*, *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 569-70 (N.D. Cal. 2025) (certifying claims against Meta where its software development kit ("SDK") collected "event data" from a health app); *Torres v. Prudential Fin. Inc.*, 2024 WL 4894289, at *3 (N.D. Cal. Nov. 26, 2024) (certifying CIPA claims in internet wiretapping case); *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391 (S.D. Cal. 2018) (certifying CIPA claims). The Court should certify the classes here too.

## II. STATEMENT OF FACTS

As detailed in the Consolidated Second Amended Complaint, Magnite admits through its privacy policy, SEC filings, and published sales material that it collects troves of data from online consumers to facilitate the buying and selling on targeted

digital ads. Specifically, the Magnite Advertising Platform Privacy Policy in effect between November 6, 2023 and September 30, 2024 – i.e., within the statute of limitations for Plaintiffs' claims – acknowledges that Magnite collects "usage information," including not only the website visited but also, among other things, the "date/time of visits, the search terms you enter, visitor activities and actions … and click data."[1] Magnite also collects "device information," such as information about the computer or mobile device used, including the device make, model, and operating system.[2] Magnite also collects location information. Specifically, Magnite collects the approximate location based on the user's IP address, and receives precise location data, which it acknowledges "may be deemed as sensitive personal information in some jurisdictions."[3] Magnite also candidly acknowledges that "we may deidentify User information," confirming that the information it collects does, in fact, identify the user whose information it collects.

Similarly, in the privacy policy in effect at the time of the filing of the original complaint in this matter, Magnite acknowledged the collection of a vast amount of user data, including "Device characteristics," "Browsing and Interaction Data," "User's Profiles, User behavior data, derived information," and "Precise Location Data," which, again Magnite candidly admitted "is 'sensitive personal information' under certain State Privacy Laws."[4]

Magnite's SEC filings also emphasize its focus on big data collection and the implementation of such data in applicable AI models. For example, in its 10-K for its fiscal year ending December 31, 2024, Magnite explained that "[a] core aspect of our value proposition is our big data and machine-learning platform that is able to discover unique insights from our massive data repositories containing

---

[1] Hanson Decl., Ex. 1, at unnumbered page 3.
[2] *Id.*
[3] *Id.*
[4] Hanson Decl., Ex. 2, at unnumbered pages 5-6.

proprietary information on trillions of bid requests and served advertisements."[5] In its 2023 10-K, Magnite was explicit in stating that its "massive data repositories" included items such as "user location, … how many ads the user has seen, browser or device information, and sellers' proprietary data about users."[6] Magnite further admits that it integrates the data it collects "with a number of third party data, attribution and identity vendors,"[7] so that it can provide its customers with "more accurate audience matching and ID resolution,"[8] confirming once again that the information it collects may be used to identify the individual from whom it is collected.

To collect this information, Magnite installs a cookie on the browser of consumers who access one of the thousands of websites and mobile apps[9] that partner with Magnite. Magnite calls this cookie its "khaos ID,"[10] and describes it as "an alphanumeric cookie ID that is unique to a visitor's device and browser combination."[11] Magnite admits that websites and apps that use the "khaos ID" cookie do so to, among other things, "facilitate ID matching,"[12] enabling ad sellers to granularly target their ad space to a specific user which, of course, makes the ad space more valuable to ad buyers. As such, the "khaos ID" cookie operates as a tracking device. Ad sellers are willing to pay to make their ad space more valuable,

---

[5] Hanson Decl., Ex. 3, p. 8.
[6] Hanson Decl., Ex. 4, p. 8.
[7] Hanson Decl., Ex. 4, p. 9.
[8] Hanson Decl., Ex. 5, at unnumbered p. 5.
[9] Discovery is ongoing, and Defendant has objected to and refused to answer interrogatories directed at determining the number of websites that have implemented the Rubicon Tracker. Hanson Decl., Ex. 6, Rog. 1. Plaintiff will seek to supplement the record in the event that Defendant provides this information, either voluntarily or pursuant to Court order. A non-exclusive list of websites on which the Rubicon Tracker has been implemented can be found at Hanson Decl., Ex. 7.
[10] The Complaint calls this cookie the "Rubicon Tracker." This brief uses "khaos ID" and "Rubicon Tracker" interchangeably.
[11] Hanson Decl., Ex. 6, at Attachment A, p. 2
[12] Hanson Decl., Ex. 6, Attachment A, p. 3.

and Magnite makes money by charging ad sellers a percentage fee for ad space sales.

Magnite is only able to provide this service, and be paid for it, by collecting as much information from as many consumers as possible. Plaintiff Edward Lewis is among the likely millions of internet users[13] who have visited a website on which the Rubicon Tracker is implemented. He has visited numerous websites utilizing the Rubicon Tracker, including yahoo.com, cnn.com, zillow.com, nbcnews.com, foxnews.com, espn.com, and realtor.com.[14] Not surprisingly, then, his desktop computer has the Rubicon Tracker installed.[15]

Mr. Lewis has never consented, knowingly or otherwise, to Magnite's collection of his data.[16] Nor could he have, because Magnite does not ask for consent. Rather, it invades the user's computers and mobile devices in secret so that users do not know that Magnite has installed a tracker or that their every step on the internet is being followed and catalogued.[17]

## III. PROPOSED CLASS AND SUBCLASS

Plaintiffs seek certification of the following class:

> All persons in the United States whose personal information, communications, or private information, or data derived from their personal information, communications, or private information, was used to create a profile and/or made available for sale or use through Defendant's platform, distributed or sold in the process of delivering advertising on websites, mobile applications, or other digital media, or otherwise.

Plaintiffs also seek certification of the following subclass (the "California

---

[13] Defendant has objected to and refused to answer interrogatories directed at the number of individuals from who it has collected information through the Rubicon Tracker, but it has admitted that the number of individuals whose personal information was made available for use through Defendant's platform is greater than 40. Hanson Decl., Ex. 6, Rogs 1 & 5.

[14] Hanson Decl., Ex. 8, at 56:4-8, 69:17-70:11.

[15] Mercado Decl., ¶ 4 & Exs. 2 & 3.

[16] Lewis Decl., ¶ 4.

[17] Hanson Decl., Exs. 1 & 2.

Subclass"):

> All California residents whose personal information, communications, or private information, or data derived from their personal information, communications, or private information, was used to create a profile and/or made available for sale or use through Defendant's platform, distributed or sold in the process of delivering advertising on websites, mobile applications, or other digital media, or otherwise.

Excluded from the class are Defendant, any affiliate, parent, or subsidiary of any Defendant; anyone employed by counsel in this action, any judge to whom this case is assigned, his or her spouse and immediate family members, and members of the judge's staff.

## IV. LEGAL STANDARD

A plaintiff seeking class certification must satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy, and demonstrate that the action falls within one of Rule 23(b)'s categories. Plaintiffs here seek to proceed under Rule 23(b)(3), which requires predominance and superiority.

At class certification, "the question is not whether the . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met[.]" *United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (citation omitted). The Court's analysis "entails some overlap with the merits," but only to the extent necessary to determine whether Rule 23 is satisfied. *Amgen Inc. v. Connecticut Retirement Plans*, 568 U.S. 455, 466 (2013).

## V. ARGUMENT

### A. <u>Rule 23(a) is Satisfied</u>

#### 1. Numerosity

Both the Class and the California Subclass likely consist of millions of users whose data was collected through Magnite's Rubicon Tracker embedded across widely used websites and mobile applications. Joinder of such a vast number of

individuals is plainly impracticable. Fed. R. Civ. P. 23(a)(1). While Defendant has objected to interrogatories seeking the number of individuals whose data Magnite collected using the Rubicon Tracker, in California or nationally, Defendant admits that the number is at least 40.[18] Nothing more is required; numerosity is satisfied. *See Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members").

**2. Commonality**

"The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims 'depend upon a common contention' that 'is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Commonality is "construed permissively" and it does not require that all questions of fact and law be common to the class or that they be answered in their favor. *Chinitz v. Intero Real Est. Servs.*, 2020 WL 7391299, at *8 (N.D. Cal. July 22, 2020) (citation omitted). Rather, only a single common question of law or fact is required. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 960 (N.D. Cal. 2022). Here, Plaintiffs' and the Classes' claims arise from the same core set of facts and give rise to multiple common questions of both law and fact regarding, among other things, that the Rubicon Tracker constitutes a pen register or trap and trace device, that Magnite installed the Rubicon Tracker on the class members' computers when they visited websites that used it, and that Magnite collected, shared, and profited from Class members' private information

[18] Hanson Decl., Ex. 6, Rogs. 1 & 5.

without consent.

Because classwide evidence relating to these common questions "will resolve an issue that is central to the validity of each one of the claims in one stroke," commonality is satisfied. *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2024 WL 38302, at *3 (N.D. Cal. Jan. 3, 2024) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

**3. Typicality**

Rule 23(a)(3) evaluates "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal citation omitted). All typicality requirements are satisfied here. As described, Plaintiff Lewis and each Class and California Subclass member has had their information collected by an invisible pen register – the Rubicon Tracker – thereby violating the same statutory and common law prohibitions. Neither is there any issue of consent that might make Plaintiff Lewis not typical. Magnite's pen register technology does not seek consent. It is installed secretly on each computer that visits the websites and mobile apps that use it and, as a result, suffered the same statutory and common law injuries when their personal information was intercepted and used without their consent. Plaintiff is therefore typical of all Class/Subclass members because he suffered the same injury as a result of the same course of conduct, by the same Defendant, with no individualized defenses applicable.

**4. Adequacy**

The adequacy requirement of Rule 23(a) demands that class representatives and their counsel have no conflicts of interest with other class members and will

vigorously prosecute the litigation on behalf of the entire class. *See In re Yahoo Mail Litig.*, 308 F.R.D. 577, 595 (N.D. Cal. 2015) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)). Plaintiff Lewis' declaration – as well as the six hours of deposition testimony he provided – establishes that: (1) there are no conflicts of interest among Mr. Lewis or any members of the Class; and (2) Plaintiff Lewis and Interim Class Counsel have vigorously prosecuted this litigation and will continue to do so.[19]

**B. <u>Rule 23(b)(3) is Satisfied</u>**

**1. Predominance**

Plaintiffs seeking to certify a Rule 23(b)(3) damages class must show that common questions predominate over individual ones. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) ("Rule 23(b)(3) overlap[s] with" Rule 23(a)). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member[.]" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotations omitted). This requirement is satisfied where "the common, aggregation-enabling[] issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Olean*, 31 F.4th at 664 (quoting *Tyson Foods*, 577 U.S. at 453). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately[.]" *Id.* at 668 (quoting *Tyson Foods*, 577 U.S. at 453). A district court's predominance inquiry begins with the elements of each of Plaintiffs' claims. *See id.* at 665 (internal citation omitted); *Nitsch v. Dreamworks Animation*

[19] Lewis Decl., ¶¶ 6-11.

*SKG Inc.*, 315 F.R.D. 270, 288 (N.D. Cal. 2016) (same).

*a. The CIPA Claims Satisfy Predominance*

There are three elements to a claim under Cal. Penal Code § 638.51: "a person may not [1] install or use [2] a pen register or a trap and trace device [3] without first obtaining a court order pursuant to Section 638.52 or 638.53." Cal. Penal Code § 638.51. Each element is inherently subject to classwide proof.

Either the Magnite "khaos ID" cookie is installed on the devices of users who visit Magnite's partner websites and mobile apps or it is not. And Magnite admits that websites and apps that use the "khaos ID" cookie do so to, among other things, "facilitate ID matching,"[20] thereby operating as a tracking device. Magnite further admits that the "nature and volume information" collected by its "khaos ID" cookie "are largely governed by the Open RTB Protocol," a "universal industry standard."[21] In other words, the nature and volume of the information collected from all class members is standardized, and thus subject to classwide proof.[22] In short, the liability facts – from installation of the cookie through collection of the information about the class member – is all common. Likewise, the question of whether the Rubicon Tracker is a pen register is a binary "yes or no" question for all class members. *See In re Yahoo Mail Litig.*, 308 F.R.D. at 591 (functionality of Yahoo's email software was common question); *O'Shea v. Am. Solar Sol., Inc.*, 318 F.R.D. 633, 637 (S.D. Cal. 2017) (whether defendant's software was regulated by TCPA was common question). There is no evidence that Magnite ever obtained a court order pursuant to Section 638.52 or 638.53. Thus, individualized liability questions are not present at all, much less predominant.

---

[20] Hanson Decl., Ex. 6, Attachment A at 3.

[21] Rogs, App. A at 4.

[22] As discovery is ongoing, Plaintiffs are still in the process of obtaining said proof, but for purposes of class certification such evidence is unnecessary – the critical question is whether class members' claims can be proven or disproven with common proof, not whether such evidence has yet been discovered.

Plaintiffs believe that Defendant will argue against class certification because some (or all) class members should be deemed to have consented to Magnite's collection of their data based on its assertion that it posted its privacy policy disclosing its data collection practices on its website.[23] Magnite cannot so facilely avoid class certification. It is undisputed that no class member was ever asked to "click yes" or otherwise affirmatively evidence consent to its privacy policy, so there is no proof of that any individual expressly consented (and if Magnite had such proof it would be easy enough to exclude those whom it could prove clicked yes and thus not a predominant question). There is also no evidence that any class member visited Magnite's website and saw the privacy policy. Speculation that some class members may possibly have come to the website, and may possibly have viewed the privacy policy is not sufficient to create a question of fact at all, much less one that predominates over the core common questions. *Del Valle v. Global Exchange Vacation Club*, 320 F.R.D 50, 61 (C.D. Cal. 2017) ("Defendants' speculation that customers may have given their consent … is not sufficient to defeat class certification"). Further, to the extent Magnite argues that the law should deem consent for the posting, that (frivolous) question is common to all class members. *See Hart v. TWC Prod. ¶ Tech. LLC*, 526 F. Supp. 3d 592, 601 (N.D Cal. 2021) ("[T]he mere existence of a privacy policy is not dispositive because users may lack actual or constructive notice of the policy."). Simply put, the central liability questions—whether Magnite's Rubicon Tracker operates as a pen register or trap and trace device without consent—are subject to generalized, classwide proof. Accordingly, the predominance requirement for Plaintiffs' CIPA claim is met.

*b. The Intrusion Upon Seclusion Claim Satisfies Predominance*

[23] Dkt. 61, ¶¶ 100-102.

Magnite's motion to dismiss argued that a nationwide intrusion upon seclusion class is improper due to the variance in state laws. However, the claim is relatively uniform across the states and so courts routinely certify nationwide classes of such claims, particularly in the data privacy context. *See McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022 (N.D. Cal. 2019) (citing 34 jurisdictions with materially similar or identical causes of action to California); *Frasco*, 349 F.R.D. at 583-84 (finding "commonality and predominance are satisfied for the nationwide class's intrusion upon seclusion claim"); *see also* Eli A. Meltz, *No Harm, No Foul?: Attempted Invasion of Privacy and the Tort of Intrusion Upon Seclusion*, 83 Fordham L. Rev. 3431, 3440-41 (identifying 38 states – including California – that follow the Restatement (Second) of Torts § 652(B) elements of intrusion upon seclusion).[24] There is no reason at this stage to conclude that a nationwide intrusion upon seclusion claim would cause individualized issues to predominate.

As provided in the Restatement, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Rest. (2nd) of Torts, § 652(B); *see also Shulman v. Group W. Productions, Inc.*, 18 Cal. 4th 200, 231, 955 P.2d 469, 489-90 (Cal. 1998) (citing Restatement for elements of intrusion upon seclusion).

Again, common proofs will determine whether Magnite's collection of Class members' data via the Rubicon Tracker constitutes an intrusion upon privacy that meets the reasonable person test. To be clear, the "highly offensive" element is an objective one by definition, meaning that there is no individualized issue of a given

[24] Since publication of this article in 2015, at least one other state – Wyoming – has adopted the Restatement's formulation of intrusion upon seclusion. *Howard v. Aspen Way Enters., Inc.*, 406 P.3d 1271, 1274 (Wyo. 2017).

Class member taking actual offense. *See Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2024 WL 38302, at *4-5 (certifying intrusion upon seclusion class and stating "the question of whether a reasonable expectation of privacy exists is an objective one"); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1076 (N.D. Cal. 2021) (explaining standard is "objective[]"); *Opperman v. Path, Inc.*, No. 13-cv-0453-JST, 2016 WL 3844326, at *11 (N.D. Cal. July 15, 2016) (rejecting argument that "an individual inquiry will be required into the subjective expectations of each class member" and certifying class for intrusion upon seclusion claim). Accordingly, predominance is satisfied for a nationwide intrusion upon seclusion claim.

*c. The California Constitutional Privacy Claim Satisfies Predominance*

"Because of the similarity of the tests [for constitutional invasion of privacy and common law intrusion claims], courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Given that both claims consider the same elements, the California Subclass members can establish their California Constitution claim using the same evidence discussed in Section B(1)(b), *supra*. The class certification standard is equally met on the constitutional claim for the same reasons.

*d. The Unjust Enrichment Claim Satisfies Predominance*[25]

Under California law, "[t]he elements of a cause of action for unjust enrichment are simply stated as receipt of a benefit and unjust retention of the benefit at the expense of another." *Pro. Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 238 (2018); *see also Riganian v. LiveRamp Holdings,*

[25] The Consolidated Second Amended Complaint pled this claim on behalf of both the nationwide Class and the California Subclass. (Dkt. 58, ¶ 176.) By this motion, Plaintiffs seek certification of the unjust enrichment claim only for the California Subclass.

*Inc.*, 791 F. Supp. 3d 1075, 1094 (N.D. Cal. 2025) ("Regardless of whether the claims is labelled unjust enrichment or restitution, a plaintiff must allege the same two elements: 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000))).

Magnite, of course, not only collects Plaintiffs' and Class members' private information, but it also uses that private information to make money. Discovery is ongoing and Defendant has interposed boilerplate objections to interrogatories seeking information on the amount of money it makes from its collection of Plaintiffs' and Class members' private information.[26] It does admit, however, that it uses the information collected via the "khaos ID" cookie to match bid requests between ad sellers and ad buyers, and that it earns revenue by "charging Sellers a percentage fee for successful sales of ad space."[27]

There is no individualized evidence that would make Magnite's retention of the percentage fee just as to some class members and unjust as to others. The issue is common, so the class will on that point will either prevail or fail together. Thus, common evidence will satisfy both elements of unjust enrichment for the California Subclass, satisfying predominance for the unjust enrichment claim.

*e. Predominance is Satisfied as to Damages*

Common issues also predominate with respect to damages. As an initial matter, the Ninth Circuit has repeatedly held that "the need for individual damages calculations does not, alone, defeat class certification." *Vaquero v. Ashley Furniture Industries, Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016); *see also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011) ("We have held that the mere fact that there might be differences in damage calculations is not sufficient to

[26] Hanson Decl., Ex. 6, Rog. 7.
[27] Hanson Decl., Ex. 6, Attachment A at 3-4.

defeat class certification"); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (same); *see also Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 539 (N.D. Cal. 2012) ("The need for individualized hearings does not, on its own, defeat class certification.")

Even in the absence of this general rule, the damages sought for each of Plaintiffs' claims can be established on a classwide basis. CIPA provides for statutory damages, which "will involve [a] less stringent individualized inquiry." *Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 633 (N.D. Cal. 2014). Accordingly, "[c]ourts have been more willing to find predominance where, as here, the class seeks only statutory damages," *In re Toys R Us-Delaware, Inc.*, 300 F.R.D. 347, 377 (C.D. Cal. 2013). Individual damages calculations do not defeat predominance because statutory "damages are feasibly and efficiently calculated[.]" *Wilcox v. Swapp*, 330 F.R.D. 584, 595 (E.D. Wash. 2019).

The same is true in this case because CIPA provides statutory damages of $5,000 per violation under Penal Code section 637.2(a). *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) (CIPA is a "straightforward analogue" to traditional privacy torts that become actionable upon the disclosure without showing of additional harm); *see, e.g.*, *Romero*, 331 F.R.D. at 411 (predominance met in part because Plaintiffs sought statutory damages under section 637.2). Defendants' records will identify the number of individuals who have had their information collected via the Rubicon Tracker, and determining classwide damages will thus be a matter of multiplication. *See Doe v. Mindgeek USA Inc.*, 2023 WL 8126845, at *8 (C.D. Cal. Nov. 17, 2023).

The same is true for damages questions on the others causes of action. As discussed above, the money Magnite makes from secretly collecting Class members' information without consent – i.e, its unjust enrichment – is not based on

information collected from any particular user, but rather from the aggregation of data from millions of consumers, enabling it to charge a percentage fee for each of the trillions of ad sales it facilitates. Accordingly, the restitution Magnite owes is not to individual internet users, but rather to the class writ large, a remedy that courts have deemed appropriately satisfies predominance. *Rodriguez v. Google, LLC*, 2024 WL 383302 (N.D. Cal. Jan. 3, 2024).

As to the constitutional claims and the instruction on seclusion claims, there is no CIPA-like penalty provision, meaning that individualized damages determinations may be required. However, as noted above, courts routinely certify claims for a determination of liability, leaving the question of damages for later consideration. Courts have numerous tools available such as certifying a liability only class, holding bellwether trials following classwide liability to encourage settlement, and decertifying for the damages stage following a successful liability trial.

Moreover, where as here, factual questions to be tried on the CIPA claim overlap with those on the constitutional and seclusion claims, failing to resolve those same questions on the constitutional and seclusion claims through a classwide judgment would be needlessly wasteful. Moreover, while the Court should reserve judgment on how to handle damages following a determination of liability, it remains true that Courts Plaintiffs seek injunctive relief and nominal damages for these claims, neither of which raises individualized issues. “The problems of proof which attend … claims for compensatory damages are absent in regard to [a] claim for nominal damages.” *Opperman v. Path, Inc.*, 2016 WL 3844326, *16 (N.D. Cal. Jul. 15, 2016) (rejecting argument that individualized damages precluded certification of intrusion upon seclusion class); *see also Rodriguez v. Google, LLC*, 2024 WL 383302 (N.D. Cal. Jan. 3, 2024) (same).

**2. Superiority**

"Rule 23(b)(3) requires a court to consider whether a class action would be a superior method of litigating the claims of the proposed class members[.]" *Vizcarra v. Unilever United States, Inc.*, 2023 WL 2364736, at *18 (N.D. Cal. Feb. 24, 2023). "A class action is a superior means of adjudicating a dispute '[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency.'" *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 618 (N.D. Cal. 2014) (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)).

When, as here, individual recoveries would be small and individual litigation would needlessly duplicate discovery and expert work, it is "an inferior method of adjudication." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010). Class members have little incentive to pursue their own individual claims—and Plaintiffs are not aware of any pending individual lawsuits—when it will entail litigating highly technical issues relating to how Magnite uses consumers' private information in the aggregate to facilitate targeted online advertising, against a well-heeled Defendant that not only steadfastly denies wrongdoing, but in fact believes it is providing a public service by facilitating the "free internet." *See In re Facebook Biometric Info. Priv. Litig*., 326 F.R.D. 535, 548 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc*., 932 F.3d 1264 (9th Cir. 2019); *Alcazar v. Fashion Nova, Inc.*, 2022 WL 19975445, at *4 (N.D. Cal. Sept. 6, 2022) (availability of $4,000 in statutory damages not enough to incentivize individual litigation, "that sum pales in comparison with the cost of pursuing litigation") (citation omitted). And, given the surreptitious nature of the khaos ID cookie, the vast majority of Class members are likely unaware that Magnite exists, much less that it is secretly collecting their information and using it to make money.

*See Romero*, 331 F.R.D. at 412-13 (class action superior where a significant number of class members may not know of the defendant's conduct).

Superiority is also satisfied because a class proceeding will not pose manageability problems. The same proofs will be used at trial to establish Magnite's liability to Plaintiffs as to the Classes, and there is a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno v. ConAgra Foods, Inc.* 844 F.3d 1121, 1128 (9th Cir. 2017).

**3. Ascertainability**

Although not included in Rule 23's requirements, courts generally hold that ascertainability "is an inherent requirement of at least Rule 23(b)(3) class actions. *Lilly v. Jamba Juice Co.*, 308 F.R.D 231, 237 (N.D. Cal. 2014). The requirement is met when members of the class "can be ascertained by reference to objective criteria." *Id.* This standard is easily met here, where the class definitions are based wholly on the objective criteria that can be ascertained from Defendant's records. Class membership does not depend on an individual's state of mind or terms that depend on the resolution of the merits, but rather on whether Magnite collected their information. Furthermore, "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2007). Because the classes are defined by solely objective criteria, the ascertainability requirement is satisfied.

**VI. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court:

1. Certify the proposed Class and California Subclass;
2. Appoint Plaintiff Edward Lewis as Class Representative;
3. Appoint Plaintiffs' counsel as Class Counsel; and

4. Grant such further relief as the Court deems just and proper.

Dated: May 7, 2026

Respectfully submitted,

/s/ Thomas M. Hanson
*One of Plaintiffs' Attorneys*

Thomas M. Hanson, SBN 184465 (hanson@loevy.com)
Jon Loevy (jon@loevy.com) (*pro hac vice*)
Mike Kanovitz (mike@loevy.com) (*pro hac vice*)
David B. Owens, SBN 275030 (david@loevy.com)
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (phone)
(312) 243-5902 (fax)

*Counsel for Plaintiffs and Interim Class Counsel*