Thomas M. Hanson, Bar No. 184465
hanson@loevy.com
David B. Owens, Bar No. 275030
david@loevy.com
Jon Loevy, *pro hac vice*
jon@loevy.com
Mike Kanovitz, *pro hac vice*
mike@loevy.com
Julia Quinn, *pro hac vice*
jquinn@loevy.com
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (phone)
(312) 243-5902 (fax)

*Attorneys for Plaintiffs and Interim Class Counsel*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EDWARD LEWIS, GLADYS SOLIS, and PATRICIA CASTILLO, individually and on behalf of similarly situated individuals,

Plaintiffs,

v.

MAGNITE, INC.,

Defendant.

Case No. 2:25-cv-03448-MWC-SSC

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Date: June 12, 2026 __________
Time: 1:30 p.m. ____
Courtroom: 6A
Judge: Hon. Michelle Williams Court

# TABLE OF CONTENTS


I. INTRODUCTION .... 1

II. DEFENDANT'S RULE 26 DISCLOSURE VIOLATIONS .... 1

III. ARGUMENT .... 2

A. The Classes are Sufficiently Definite .... 2

B. Mr. Lewis's Claims are Typical .... 3

C. Commonality is Met .... 5

D. Individualized Issues do not Predominate .... 5

1. The Consent Defense .... 5

2. Article III Standing .... 8

3. Statute of Limitations .... 9

4. Plaintiffs have Proposed a Classwide Damages Methodology .... 9

5. The Nationwide Class Should be Certified .... 10

6. Superiority .... 12

IV. CONCLUSION .... 12

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ahringer v. LoanDepot, Inc.*,
715 F. Supp. 3d 1274 (C.D. Cal. 2024) ........ 11

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ........ 3

*Brown v. Google*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ........ 5

*Bueche v. Fid. Nat. Mgmt. Servs., LLC*,
2014 WL 2468601 (E.D. Cal. June 2, 2014) ........ 3

*Calhoun v. Google*,
113 F.3th 1141 (9th Cir. 2024) ........ 7

*Campbell v. Facebook, Inc.*,
951 F.3d 1106, 1117 (9th Cir. 2020) ........ 7

*Griffith v. TikTok, Inc.*,
2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) ........ 3,4

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 7

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ........ 11

*McDonald v. KilooAps*,
385 F.Supp. 3d 1022 (N.D. Cal. 2019) ........ 12

*Munro v. Univ. of Southern Cal.*,
2019 WL 7166985 (C.D. Cal. Nov. 8, 2019) ........ 2

*Opperman v. Path, Inc.*,
2016 WL 3844326 (N.D. Cal. July 15, 2016) ........ 12

*R&R Sails, Inc. v. Ins. Co. of Pennsylvania*,
673 F.3d 1240 (9th Cir. 2012) .......... 2

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024) .......... 7

*Torres v. Prudential Financial, Inc.*,
2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) .......... 7

*Truth Health Chiro., Inc. v. McKesson Corp.*,
896 F.3d 923 (9th Cir. 2018) .......... 5, 6, 7

*Van v. LLR, Inc.*,
61 F.4th 1053 (9th Cir. 2023) .......... 7

*Vue v. Pentagon Fed. Credit Union*,
2024 WL 4436814 (E.D. Cal. Oct. 4, 2024) .......... 4

*Webb v. Circle K Stores Inc.*,
No. CV-22-00716-PHX-ROS, 2022 WL 16649821 (D. Ariz. Nov. 3, 2022) .......... 2, 3

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 7

**Rules** **Page(s)**

Fed.R.Civ.P. 26 .......... 2

Fed.R.Civ.P. 37 .......... 2

**Statutes** **Page(s)**

Penal Code § 638.50(b) .......... 5

## I. INTRODUCTION

Somewhere in the course of assembling its voluminous opposition, Magnite lost the thread of this dispute. The California and the nationwide classes challenge the exact same thing: the placement of a pen register on their computers. *See* Cal. Penal Code § 638.51(a) ("a person *may not install* or use a pen register . . . *without first obtaining a court order*") (emphasis added). The question whether Magnite's khaos tracker is a pen register (which it is) is thus central and predominates.

Magnite offers some evidence (albeit weak) that its tracker "may have" sent different data for different class members, depending upon their browsing, but any such differences are beside the point. The pen register tort is complete as soon as Magnite places the tracker on a device; differences thereafter are irrelevant. While the intrusion upon seclusion and constitutional claims additionally require transmission after placement, Defendant's own records prove the transmissions. The records may show differences in the information captured for various members, but those differences prove to be either non-substantive under applicable law or else addressable through subclassing later in the case. Resolving liability at a classwide trial remains the efficient path. Magnite shows no good reason for the judicial system to endure potentially millions of individualized suits.

By contrast, if the case is not certified, the Court will be handing Magnite a windfall. As Magnite well knows, and likely gambled upon, there is no path for individuals suits. Most will not discover Magnite's pen register on their device. Any who do face an untenable solo fight. Magnite's attempt to overwhelm the well-represented plaintiff here with a blizzard of new documents and expert opinion when there was only seven days to reply (and over a holiday weekend) is emblematic. Certification is needed for the private enforcement mechanism to function as intended and justice to be served. Certification should be granted.

## II. DEFENDANT'S RULE 26 DISCLOSURE VIOLATIONS

Defendant's Brief runs afoul of Rule 26 by relying on: (1) gigabytes of documents it never identified in its disclosures (Hanson Decl., ¶¶ 2-5); (2) an expert report that is not only new but also non-compliant with Rule 26(a)(2) (Dkt. 85-4); and (3) a declaration from an undisclosed fact witness (Dkt. 85-2.)[1] This was not mere oversight. The undisclosed expert relies heavily on the newly-produced evidence— it forms the nucleus of his report[2]—so Defendant obviously knew well in advance of Class Certification briefing that it "may use" the documents. FRCP 26(a)(1)(A)(ii). Waiting to produce them is the exact gamesmanship Rule 26 is supposed to prevent. *Id.*; *see also R&R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1245-46 (9th Cir. 2012).

In light of Defendant's violation of its disclosure obligations, the Court may refuse to consider the belated (and therefore untested) evidence in ruling on certification. FRCP 37(c)(1) (where party fails to make disclosures required under Rule 26 "the party is not allowed to use that information or witness to supply evidence on a motion"); *see also Munro v. Univ. of Southern Cal.*, 2019 WL 7166985 (C.D. Cal. Nov. 8, 2019) (striking Defendant's declarations from undisclosed witnesses). For the evidence to be considered at class certification, Defendant would have had to show that its failure was harmless or substantially justified. *Id.* Having chosen to ignore the violation, Magnite has shown neither.

## III. ARGUMENT

### A. The Classes are Sufficiently Definite

Defendant claims that Plaintiffs' proposed class definitions are "incomprehensible," but they are standard fare, certified by other courts. Regardless, courts are well within their discretion to amend definitions and routinely do so when deciding certification and at even at later junctures. *See Webb*

[1] Hanson Decl., ¶¶ 2, 7 & Ex. 11.
[2] Dkt. 85-4 ¶¶ 8-11, 63-73, App. C.

*v. Circle K Stores Inc.*, 2022 WL 16649821, at *2 (D. Ariz. Nov. 3, 2022) (citing *Bueche v. Fid. Nat. Mgmt. Servs., LLC*, 2014 WL 2468601, at *3 (E.D. Cal. June 2, 2014) and quoting *Armstrong v. Davis*, 275 F.3d 849, 871 (9th Cir. 2001)) ("[T]he definition contained in the complaint does not dictate the exact class that can be certified, nor does it prevent modifications of the class definition after certification.") Accordingly, Plaintiff proposes the following modified definitions:

1. California Pen Register Class: "All California residents who had Magnite's khaos cookie installed on one or more of their devices."
2. California Right of Privacy and Unjust Enrichment Subclass: "All persons in the Pen Register Class for whom Magnite collected personally identifying and private information."
3. Nationwide Class – "All U.S. residents from whom Magnite collected personally identifying and private information using the khoas cookie.

These definitions are all worded with the same simplicity as other certified pen register classes.[3] The definitions would also include standard qualifiers like those excluding Defendant's employees and court personnel.

### B. <u>Mr. Lewis's Claims are Typical</u>

Defendant's typicality attack is inapposite. Unlike in *Griffith v. TikTok, Inc.*, 2024 WL 4308813 (C.D. Cal. Sept. 9, 2024), where the plaintiff brought a *wiretap* claim[4] and was found atypical due to lack of evidence that his personal or private information had been intercepted, Plaintiff Lewis brings a pen register claim, which

[3] Compare certified settlement classes for § 638.51 violations in *Shah v. Fandom*, 3:24-cv-01062-RFL (N.D. Cal.), Dkt. 90 ("all persons who accessed www.gamespot.com, or any of its subdomains, in California and had their information collected by the Trackers") and *Mirmalek v. Los Angeles Times Communications, LLC*, 3:24-CV-01797-CRB, Dkt. 50 (N.D.Cal.) ("all persons who accessed LA Times online via website or mobile app in California and had their information collected by tracking technologies").

[4] *Griffith*, No. 5:23-cv-964-SB-E (C.D. Cal.), Dkt. 63 at ¶¶ 161-72.

is violated by *installation* of a pen register. Penal Code §638.51 ("[A] person may not install . . . a pen register"). By contrast, the CIPA wiretap statute in *Griffith* penalizes intercepting the contents or meaning of a communication "in transit." *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1125 (C.D. Cal. 2024). So alleged differences in collection do not impact pen register liability.

Moreover, as to the broader set of claims, Defendants' evidence does not defeat certification. Magnite claims that Lewis is not typical because he uses Safari and Microsoft Edge browsers that supposedly thwart the placement of its cookies, yet Plaintiff's expert undisputedly found the khaos ID on his computer. Thus, he meets the class definition of persons who have the tracker on their devices. His device choice or browser settings cannot make him atypical. Likewise, Defendants revealed that they collected enough information to identify Mr. Lewis. In particular, Magnite denied that its records contain Lewis's khaos ID identified in Plaintiff's class certification motion, Opp. at 16, but said it found other khaos IDs in its records for him. *Id.* To state the obvious, Magnite could not have tied these other khaos IDs to Mr. Lewis, *unless it had collected enough information in connection with those other IDs to de-anonymize him*. That fact is an admission that Lewis is typical of the classes he seeks to represent, *even for classes that additionally require the collection of information by the pen register*. Finally, even if Lewis were atypical of a class he seeks to represent, which he is not, the proper course is to substitute a typical representative *See, e.g., Vue v. Pentagon Fed. Credit Union*, 2024 WL 4436814, at *4 (E.D. Cal. Oct. 4, 2024) (collecting cases).

Nor is Mr. Lewis subject to unique defenses. While Magnite has larded the record with various third party privacy policies which purport to establish his consent, the consent defense (which, as discussed below, is neither individualized nor meritorious) is applicable to every class member given the ubiquity of similar

terms of service across the web. Defendant itself inadvertently makes this point in chiding Mr. Lewis for having failed to present evidence "that his experience upon account creation was different from current users." (Opp. at 20, fn. 5.) Either using websites such as cnn which reference *their own use* of third party cookies sufficies to establish consent to *Magnite's* use, or they do not – the issue is not unique to Mr. Lewis or any particular class member. Accordingly, typicality is met.

**C. <u>Commonality is Met</u>**

Magnite offers no valid rebuttal to commonality. Whether Magnite's cookie is a pen register is a common question, and a plaintiff need only identify one. Rather, Magnite's arguments go to predominance, and are unavailing at that. With the class defined as people who have the cookie on their device, differences in browsers are meaningless: what matters is if the browser blocked the cookie or not. Magnite's own records prove in each case if the cookie was present, because that is the way it came to possess the khaos ID. Similarly, Magnite's records show whether it collected a user's information, just as it did with Mr. Lewis (collecting the information it used to identify him for its Response).

**D. <u>Individualized Issues do not Predominate</u>**

***1. The Consent Defense***

Magnite bears the burden of proof on its consent defense. *Truth Health Chiro., Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018). This burden "strongly affects the analysis" of whether it can defeat class certification. *Id.*

<u>*Magnite's Privacy Policy*:</u> Magnite claims a group of unknown individuals saw its privacy policy and did not complete its opt out form, thereby supposedly impliedly consenting. It relies on *Brown v. Google*, 2022 WL 17961497, at *19 (N.D. Cal. Dec. 12, 2022), but *Brown* is inapposite. There Google customers used Google's Chrome browser after clicking a link which informed them that the

browser collects private information. *Id*. Google argued that the continued use of its product after clicking the link constituted grounds to imply consent.

Magnite offers nothing remotely of this character. Every person who clicked on Google's privacy policy link was a user of Google's browsers and thus a class member. By contrast Magnite has no idea if any of its visitors were class members and its proof measly: the approximately 200,000 visits to its privacy policy does not equate to individuals and (b) there are over 6 billion internet users globally, not to mention bots, any of which may have caused a visit or multiple visits. Magnite's speculation that there is overlap with the class (200,000 is .0003% of 6 billion) is far too insubstantial to cause individual consent questions to predominate. *See McKesson Corp*. at 932 ("we do not consider the consent defenses that McKesson might advance or for which it has presented no evidence"), *citing Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) ("We are unwilling to allow such 'speculation and surmise to tip the decisional scales in a class certification ruling[.]' ") (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)).

Most fundamentally, Magnite's legal theory is invalid. Consent is a contractual act, thus implied consent infers the contract from conduct. While Google sought to infer consent because its customers continued using its browser after clicking on the privacy notice, Magnite wants to infer consent from the mere fact that a person who was not its customer continued to use the internet. There are at least two problems with that theory. First, using the internet is not proof of consent to Magnite policy. Second, it puts the cart before the horse. Merely seeing Magnite's privacy policy cannot constitute consent to it, so there is no obligation to opt out. Declining to complete the opt form does not form a contract. *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal.App.4th 1372, (Ct.App.1993) ("As a general

rule, silence or inaction does not constitute acceptance of an offer.")

*Third-Party Privacy Policies*: Magnite's attempt to piggyback on other website privacy policies suffers from the same flaws and is also unsupported in the evidence. The policies do not even name the khaos cookie or describe what it does with the data. Circuit precedent makes clear that users must have actual notice of and provide unambiguous consent for the entity at issue. *See Rodriguez v. Google LLC*, 2024 WL 38302, at *9 (N.D. Cal. Jan. 3, 2024) (the "relevant question" as to consent under CIPA is the website operator's disclosures about its own data collection practices, not third-party disclosures). *See also Calhoun v. Google*, 113 F. 4th 1141, 1146-47 (9th Cir. 2024) (notice insufficient where browser-specific privacy policy not mentioned); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) (requiring unambiguous manifestation of consent); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (operative inquiry is whether a user "would reasonably expect that Facebook would have access to the user's individual data" even when it logged out of Facebook). Again, Magnite offers only speculation about consent which is insufficient to defeat class certification. *McKesson Corp*. at 932; *Bridging Communities Inc.,* 843 F.3d at 1125, *Mowbray*, 208 F.3d at 298; *Torres v. Prudential Financial, Inc.*, 2024 WL 4894289, at *6 (N.D. Cal. Nov. 26, 2024); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 977 (N.D. Cal. 2023).

Even if Magnite had moved the needle beyond speculation, it would still need to prove how a reasonable user would understand the privacy policies it relies upon, and that is a common question that can be resolved with classwide proof. *Calhoun*, 113 F.4th at 1148-49 (remanding for the district court to consider whether a reasonable person viewing the disclosures from Google would have concluded that they "unambiguously disclosed the data collection issue," which could be

subject to class wide proof if other Rule 23 preconditions were met).

Because common questions predominate and individualized questions will not "overwhelm" those common questions, the consent affirmative defense does not defeat predominance. *Van v. LLR, Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023).[6]

***2. Standing***

According to Magnite, there are class members who were not injured and therefore lack standing. It argues vaguely that the number is "significant" (but identifies no one) and urges the Court to therefore decline certification. The argument fails for multiple reasons. First, Magnite confuses injury with damages. The intrusion in placing a tracker on a class members' device, is an injury satisfying Article III standing. CIPA codifies a "substantive right to privacy," i.e. a "violation of which gives rise to a concrete injury sufficient to confer standing." *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025) (internal quotation and citation omitted). Article III recognizes the invasion of this state-created statutory right to be free of pen registers as injury. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (privacy rights violation confers Art. III standing). Intrusion by placement of the pen register is suffered by each class member.

Even were Magnite's injury requirement for transmission of information indulged, that would not cause individualized issues to predominate. Because Magnite's records show whether information was transmitted for each khaos ID, individual trials are neither needed nor warranted. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) (a "concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet

---

[6] The possibility that class members may have arbitration agreements with Magnite's customers has no bearing. Magnite has no rights in others' contracts. And none of Magnite's cited cases support its equitable estoppel theory. Moreover, the very contention that Magnite has such rights is a question of law which would be the same for Mr. Lewis as for every other class member.

browser activity without authorization") (internal quotation and citation omitted), *see also Olean Wholesale Grocery v. Bumble Bee Foods*, 31 F.4th 651, 669, n.14 (9th Cir. 2022) (individualized issues only predominate if a class includes "a great number of members who for some reason could not have been harmed by defendant's allegedly unlawful conduct."); *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 823-26 (9th Cir. 2012) (courts can refine class definitions post-certification, if necessary, to manage any potential over-inclusivity). Likewise, courts have distinguished *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2024)—which Magnite relies on—because that tracker was limited to each business's own website as opposed to the distribution to third parties here. *See, E.g., Gabrielli v. Haleon US Inc.*, 815 F.Supp.3d 852, 866 (N.D. Cal. 2025).

***3. The Statute of Limitations Defense***

Magnite's argument to cut off the class period should be rejected. The discovery rule plainly applies in class actions. *See Harris v. comScore, Inc.*, 292 F.R.D. 579, 588-89 (N.D. Ill. 2013) (explaining why limitations issues are not dispositive at class certification in a data collection case) (citing *In re Monumental Life Ins. Co.*, 365 F.3d 408, 420 (5th Cir. 2004) (noting that accepting arguments similar to Magnite's would mean that class actions involving concealment could never employ the discovery rule). Likewise, Magnite's vague claim that "many" class members are aware of its cookies is unsupported by any competent evidence and therefore cannot create individualized issues. *See, e.g., Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 853-54 (E.D. Cal. 2025) (putative class satisfied discovery rule by alleging that they had no way of knowing defendants were using tracking pixels). By contrast, Magnite's cites involve single plaintiffs who discovered the facts yet let limitations run. Opp at 29-30, n.12.

***4. Classwide Damages***

As an initial matter, Magnite wholly fails to address the host of cases cited in Plaintiffs' motion holding that individualized damage assessments do not alone defeat class certification. (Dkt. 72, pp. 13-14.) Nor does Magnite address the settled law holding that claims for statutory damages are well-suited for class treatment. *Id.* For these reasons alone, its argument should be rejected.

The points it does raise are overstated and overplayed. Magnite argues that classwide application of statutory damages is impossible because Magnite does not know the precise number of individuals in the class. That is effectively a request for a ruling that no statutory damages class of an unknown number of claimants can be certified ever. Whether or not Magnite knows the precise number of individuals who have had the khaos cookie installed, its records show the number of device/browser combinations at issue, and for many of those, Magnite can identify an individual, just as it did with Plaintiff. At this stage there is no reason to believe that experts will not be able to use such data to determine damage estimates with sufficient certainty as they commonly do.[7]

Finally, Magnite's request to deny class certification because some class members may have higher actual damages, is in tension with every case that ever certified a class seeking statutory penalties. Outliers can always opt out after notice and pursue their own damages cases if they believe it is advantageous to do so.

***5. The Nationwide Class Should be Certified***

Magnite argues against the nationwide class based on an incorrect standard. The operative consideration is not whether "other states' laws are sufficiently analogous to California law to justify a nationwide class," Opp. at 32, but rather

[7] Nor are Plaintiffs required to have proffered a classwide damages expert analysis for the type of damages on the unjust enrichment, intrusion upon seclusion, and right of privacy claims. Discovery is ongoing, and Plaintiff will produce expert reports in accordance with the Case Management Order. Should the Court find those analyses unsuitable under *Daubert*, the Court can modify or decertify the classes or subclasses as appropriate at that time.

whether California has a sufficient connection to apply its law to the national class. As a federal court sitting in diversity, the Court must look to California's choice-of-law rules to determine the controlling substantive law. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). California uses a three step process to determine whether to apply its own law: (1) determination of whether the affected state(s) has different law; (2) examination of whether the state(s) has an interest in having its law applied to the case in California court; and (3) if the laws are different and each has an interest in having its law applied (a "true" conflict), selection of which state's law to apply by comparing the nature and strength of each state's interest to determine which would be more impaired were its policy subordinated to the policy of the other state. *Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1285 (C.D. Cal. 2024).

Here, Plaintiffs demonstrated that the prerequisites for application of California law to the national class because California has sufficiently strong contacts with the claims of each putative class member. *Mazza*, 666 F.3d at 589-90. Not only was the Rubicon Tracker developed in California, Magnite itself is a registered data broker in California, and it has collected and harvested private information from millions of Californians, and on California-based websites. Am. Compl. (Dkt. 51) ¶¶ 3, 20. Plaintiff Lewis is a California resident, as well.

After showing that California has sufficient aggregation of contacts to permit application of California law to the nationwide class, the burden shifts to the Defendant to show that a foreign state's law, rather than California law, should apply. *Mazza*, 666 F.3d at 589-90. Magnite did not make this showing; it simply argues that the fact that a minority of states do not use the Restatement formulation of the tort is sufficient to defeat the nationwide class. Opp. at 32-33. But that ignores California's choice of law jurisprudence. "[I]t is not enough for [defendant]

merely to point to differences between California's law and the laws of other states," it must instead explain why application of California law, under these facts, would materially frustrate the interests of any foreign state. *Opperman v. Path, Inc.*, 2016 WL 3844326, at *10 (N.D. Cal. July 15, 2016). Magnite has not done that and cannot do that, meaning that California does apply

Moreover, courts considering the same California choice of law jurisprudence have certified nationwide classes for intrusion upon seclusion, by applying California law. Id. at *9 (even though one named Plaintiff was from Virginia, which does not recognize the tort, certification was appropriate because Defendant did not carry their burden under the governmental interest test). Likewise, even where courts felt that the defendant carried its burden, they have certified nationwide intrusion upon seclusion classes, consisting of class members from California and the other states that follow the Restatement. *See, e.g., McDonald v. KilooAps*, 385 F. Supp. 3d 1022, 1031 (N.D. Cal. 2019).

**E. <u>Superiority</u>**

In light of Plaintiffs' discussion in their opening brief and above, there is simply no substantial divergences that would make all or any of the classes unmanageable. That, coupled with the fact that there are tens of millions of individuals covered by the classes show that a class certification is far superior to the alternatives: either a massive multiplicity of individual suits that burden the judicial system, or a *de facto* windfall to Magnite because few if any will have the wherewithal to pursue their claims against such a well-heeled and aggressive defendant. In the face of these realities, Magnite's vague and unspecified claims of "manageability" problems are divorced from reality and the actual practice of courts certifying class actions.

**IV. CONCLUSION**

For the foregoing reasons Plaintiffs' motion should be granted.

Dated: May 29, 2026

Respectfully submitted,

/s/ Thomas M. Hanson
*One of Plaintiffs' Attorneys*

Thomas M. Hanson, SBN 184465 (hanson@loevy.com)
Jon Loevy (jon@loevy.com) (*pro hac vice*)
Mike Kanovitz (mike@loevy.com) (*pro hac vice*)
David B. Owens, SBN 275030 (david@loevy.com)
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (phone)
(312) 243-5902 (fax)

*Counsel for Plaintiffs and Interim Class Counsel*