Nicola C. Menaldo, *pro hac vice*
NMenaldo@perkinscoie.com
Anna Mouw Thompson, *pro hac vice*
AnnaThompson@perkinscoie.com
Jordan C. Harris, *pro hac vice*
JordanHarris@perkinscoie.com
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: 206.359.8000
Facsimile: 206.359.9000

Alisha C. Burgin, Bar No. 286269
ABurgin@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Defendant Magnite, Inc.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EDWARD LEWIS and PATRICIA CASTILLO, individually and on behalf of similarly situated individuals,

Plaintiffs,

v.

MAGNITE, INC.,

Defendant.

Case No. 2:25-CV-03448-MWC-SSC

**DEFENDANT MAGNITE INC.'S SUR-REPLY ON PLAINTIFFS' MODIFIED CLASS DEFINITIONS**

Date: July 10, 2026
Time: 1:30 p.m.
Courtroom: 6A
Judge: Michelle Williams Court

## TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 4

ARGUMENT .......... 5

A. Plaintiffs' modified definitions do not address the core problems identified in Magnite's Opposition. .......... 5

B. Plaintiffs' modified definitions introduce new problems. .......... 9

1. Pen Register Class .......... 9

2. Privacy and Unjust Enrichment Classes .......... 12

3. Nationwide Class .......... 13

CONCLUSION .......... 13

## TABLE OF AUTHORITIES


Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .... 5

*Backhaut v. Apple Inc.*, 2015 WL 4776427 (N.D. Cal. Aug. 13, 2015) .... 8

*Dawidzik v. Tesla, Inc.*, *2025* WL 3786963 (C.D. Cal. Dec. 29, 2025) .... 10

*Griffith v. TikTok, Inc.*, 2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) .... 9, 11

*In re Google RTB Consumer Priv. Litig.*, 2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) .... 8, 12

*Ingraham v. Cap. One Fin. Corp.*, 2026 WL 1759155 (N.D. Cal. June 16, 2026) .... 10

*Mickelonis v. Aspyr Media, Inc.*, 2025 WL 1605332 (C.D. Cal. May 16, 2025) .... 8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) .... 9

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) .... 10

*Schallert v. Laird Superfood, Inc.*, 2026 WL 1707585 (C.D. Cal. June 5, 2026) .... 10

*Torres v. SeatGeek, Inc.*, 2026 WL 1495202 (N.D. Cal. May 28, 2026) .... 10

**Statutes**

Cal. Penal Code § 638.50 .... 11

## INTRODUCTION

Plaintiffs' new class definitions still require the same person-by-person inquiries that make class treatment unworkable. Even with the new labels, the Court would still need to determine, for each class member: (1) whether a khaos ID was ever set in their browser; (2) whether any private information was collected from them; and (3) whether they consented. Those are not common questions. And by Plaintiffs' account, their classes cover "tens of millions of individuals" (Reply 16)—meaning the Court would face tens of millions of individual inquiries. *See* Opp. 21-33.[1]

The modified definitions also create new problems. The pen register class (Class 1) requires only that a khaos cookie was "installed," with no showing of harm—sweeping in people for whom the khaos ID sat dormant, was used solely to honor privacy choices, or never collected anything private. These pervasive Article III problems, alone, preclude certification. Additionally, whether any given khaos ID even arguably functioned as a pen register depends (among many other things) on what each publisher chose to include in its ad requests—yet another individualized question. Classes 2 and 3 also now require "personally identifying" information, but Magnite's platform avoids collecting such information (*see* Dkt. 80-3 at 3-4; Wieland Decl. ¶ 24), making the search for qualifying class members a needle in a haystack. The nationwide class (Class 3) presents a distinct problem: because Magnite also uses the khaos ID to honor privacy choices—stripping data and deleting records for users who opt out (Wieland Decl. ¶¶ 26-27)—

---

[1] To be clear, even though Magnite focuses its Sur-reply on these three issues, the modified class definitions do not cure the other deficiencies identified in Magnite's Opposition. For example, they still do not include any temporal limitation and thus include individuals whose claims have expired and/or individuals who must invoke the discovery rule, giving rise to individualized questions of when they became aware of the challenged conduct. *See* Opp. 29.

individualized inquiry is required to determine if the khaos ID was used to facilitate or *prevent* information collection.

Plaintiffs suggest that denying certification would hand Magnite a "windfall" because individual claims are impractical. Reply 5, 16. But Rule 23's requirements are not optional when individual litigation seems difficult or a proposed class may be very large. They exist to ensure that class treatment actually serves the interests of absent class members and produces fair adjudication. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-16 (1997). Plaintiffs' premise assumes the very thing they have not shown: that the putative class members have viable claims at all. As but one example of the overbreadth, [redacted] (Schnell Report ¶ 64). Certifying a class here would not vindicate absent class members' rights; it would sweep millions of people with no viable claim into litigation that cannot fairly represent their diverse circumstances.

Plaintiffs have presented virtually no evidence to carry their burden on class certification. *See id.* 15-16. Moreover, what evidence does exist about the experience of Plaintiff Lewis, the lone plaintiff seeking certification, proves not only that individual inquiries would predominate, but also that Mr. Lewis does not even qualify for all the classes he seeks to represent (*see id.* 17-18). The Court should deny Plaintiffs' motion for class certification.

## ARGUMENT

### A. Plaintiffs' modified definitions do not address the core problems identified in Magnite's Opposition.

Restructuring the classes does not eliminate the need to conduct the individualized inquiries discussed in Magnite's Opposition or change the fact that those inquiries will predominate over any common ones.

***First***, all three class definitions depend—expressly or impliedly—on the khaos ID being "installed" on a given person's "device." Reply 3.[2] Plaintiffs apparently believe this limitation narrows the class to an identifiable group but present no evidence in support, despite their burden of proof. In fact, the evidence proves there is no classwide method to determine who had a khaos ID set and who did not. That question can only be answered person-by-person.

Whether the khaos ID is set depends on variables unique to each individual: the browser in question and its default settings (Safari, Firefox, and Edge block third party cookies by default); whether the person independently adjusted privacy settings to block cookies; and whether the specific page they visited on the website was even configured to request the khaos ID (some pages are and some are not). *See* Schnell Report ¶¶ 18 n.14, 29, 49, 51-52; Wieland Decl. ¶¶ 8, 32; Opp. 22 n.9. These are not edge cases. Hundreds of millions of people use browsers that block Magnite's cookie by default (Dkts. 86-5, 86-7, 86-8), and 67% of Pew Research survey respondents turn off cookies or website tracking (Opp. 22 at n.9; *see also* Dkt. 80-7 at 50). As a result of these and other factors, [redacted] Schnell Report ¶ 64.[3]

Plaintiffs offer no evidence to overcome this problem. Instead, Plaintiffs try to minimize it by describing their proposed language as "standard fare" in pen

---

[2] The khaos ID is actually "set" in a "browser," it is not installed on a device. *See* Wieland Decl. ¶¶ 8-9. Magnite will address this universal, merits-based issue at a later stage and focuses here on issues relevant to class certification.

[3] Magnite opposes Plaintiffs' effort to exclude Magnite's expert and fact witness evidence, on both legal and factual grounds. *See* Dkt. 100. But that evidence is not necessary for the Court to deny certification. Plaintiffs have presented virtually no evidence in support of their motion and thus fail to satisfy their burden of proof. *See* Opp. 15-16. Moreover, the scant evidence that Plaintiffs have presented include Magnite's interrogatory responses (Dkt. 80-7), which confirm the variability and individualized nature of the issues discussed herein. Publicly available materials—including Magnite's privacy policy and publisher disclosures (*see, e.g.*, Dkt. 85-6)—also establish the same points.

register cases. Reply 2. But Plaintiffs cite no decisions certifying a contested pen register class defined by reference to cookie installation—their only examples are settlement classes defined by reference to "accessing" a single website, without reference to whether a cookie was set. *See* Reply 2 n.3. These cases are also agreed, settlement class definitions not subject to the same burden of proof applicable here. Here, Plaintiffs have presented no evidence that the khaos ID is set as to all visitors who access any website using the khaos ID; Magnite (which does not bear the burden of proof) has presented reams of evidence to prove that these issues are instead individualized; and the parties remain in an adversarial posture.

Plaintiffs' other response is that Magnite's own records can determine if a cookie "was present." Reply 5. That is incorrect: Plaintiffs offer no evidence for this, and Magnite's evidence proves otherwise. Magnite operates pseudonymously; it does not know who is behind a given alphanumeric string. Wieland Decl. ¶ 7; Dkt. 80-2 at 3-4; 80-3 at 3. If someone wants to know whether Magnite received data about their browsing, they must first locate a khaos ID on their browser and provide that ID to Magnite to search its records. Plaintiff's experience proves this: Magnite could not determine whether a khaos ID had been set in a browser that Plaintiff used on his computer until he provided Exhibit 3 to the Mercado declaration, which contained **two** alphanumeric strings that Magnite then used to query its systems (highlighted in the below excerpt for clarity). *See* Dkt. 80-10, 80-13; Wieland Decl. ¶¶ 29-30.[4]



Headers Payload Preview Response Initiator Timing Cookies

Request Cookies ☐ show filtered out request cookies

| Name | Value | Domain | Path | Expires / Max-Age | Size | Http... | Secure | Sa... | Pa... | Cross ... | Priority |
|---|---|---|---|---|---|---|---|---|---|---|---|
| audit_p | 1\|Jflslhpg Rly4mf4bzSSc4K4TG4TEO7u... | .rubiconproject.com | / | 2027-04-24T16:33:48.919Z | 0 | | ✓ | | | | Medium |
| khaos_p | LY4V0YQQ-P-DCSH | .rubiconproject.com | / | 2027-04-24T16:33:48.919Z | 0 | | ✓ | | | | Medium |
| receive-cookie-deprecation | 1 | .rubiconproject.com | / | 2026-07-23T16:33:48.920Z | 0 | ✓ | ✓ | | | | Medium |

Response Cookies

| Name | Value | Domain | Path | Expires / Max-Age | Size | Http... | Secure | Sa... | Pa... | Cross ... | Priority |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ~~audit~~ | ~~1JdT0CSC8uZj-UggfND0ywOVljQQr...~~ | ~~.rubiconproject.com~~ | ~~/~~ | ~~2027-04-24T16:34:42.671Z~~ | ~~0~~ | | ~~✓~~ | | | | ~~Medium~~ |
| khaos | MOD4S8VQ-S-C59G | .rubiconproject.com | / | 2027-04-24T16:34:42.671Z | 0 | | ✓ | | | | Medium |

[4] Contrary to Plaintiff's suggestion, Magnite did not "de-anonymize" the MOD string to locate the LY4 string. Reply 4. Magnite simply queried both (highlighted)

This Court has recognized that class management is a "pipe dream" where there is "no good way to identify" who falls within the class, and where the defendant's records cannot answer that question. *Mickelonis v. Aspyr Media, Inc.*, 2025 WL 1605332, at *11 (C.D. Cal. May 16, 2025) (Court, J.). The same problem exists here: Plaintiffs have proposed no classwide methodology for identifying who falls within the class, and Magnite has shown that its own records, standing alone, cannot determine whether a person had the khaos ID set.

***Second***, the new class definitions do not change the fact that consent bars each of the remaining claims in this action. Whether a given class member consented to Magnite's practices can only be answered person-by-person—because it depends on what websites someone visited, what those websites told them about data collection, whether they clicked through a cookie banner or privacy notice, and what terms they agreed to when creating an account or making a purchase. Opp. 25-27. These are not questions that can be answered with common proof—they require examining each person's individual circumstances. Some visited websites that specifically name "Magnite" or "Rubicon" in their privacy disclosures. Dkt. 85-6 (table comparing disclosures). Others agreed to terms of service that authorize the very data practices Plaintiffs challenge. Opp. 25-26. Still others may have seen and dismissed cookie banners explaining how advertising technology works. Dkt. 85-18. This is exactly the kind of person-by-person inquiry that led courts to deny class certification in *In re Google RTB Consumer Privacy Litigation*, 2024 WL 2242690, at *14 (N.D. Cal. Apr. 4, 2024) and *Backhaut v. Apple Inc.*, 2015 WL 4776427, at *14, *16 (N.D. Cal. Aug. 13, 2015), *aff'd*, 723 F. App'x 405 (9th Cir. 2018)—both of which held that the

---

alphanumeric strings included in Exhibit 3 to the Mercado declaration after Plaintiffs filed their motion. (Neither alphanumeric strings nor Mr. Mercado were disclosed in Plaintiffs' initial disclosures. *See* Dkt. 95-5.)

existence of *multiple* sources describing the challenged conduct precluded class certification. Plaintiffs ignore both these cases, but the same problem exists here.

***Third***, whether Magnite received, used, or shared any "private" information (part of new Classes 2 and 3) depends on what websites that person visited, what information the website's publisher (or their intermediary) chose to pass to Magnite, and whether the class member opted out of such sharing. Opp. 9-10. Plaintiffs bear the burden of demonstrating predominance, and they have offered no evidence that the information associated with the khaos ID was uniform across putative class members. Moreover, Plaintiffs offer no real response to *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *5-6 (C.D. Cal. Sept. 9, 2024), which denied certification where an internet-wide tracking pixel collected varying types of information from different websites, defeating both commonality and predominance. Their only retort is that *Griffith* did not involve a "pen register claim." Reply 3. But (a) it did involve CIPA and intrusion claims, and (b) that distinction does not explain why *Griffith's* reasoning about variability in data collection would not apply equally to any of the three classes.

**B. Plaintiffs' modified definitions introduce new problems.**

**1. Pen Register Class**

Plaintiffs' new Pen Register Class (Class 1) introduces additional problems. First, it exacerbates the Article III standing concerns identified in Magnite's Opposition. *See* Opp. 27-28. "[W]hen 'a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.4 (9th Cir. 2022) (citation omitted). That is exactly the case here. To fall within Class 1, a California resident need only show that they "had Magnite's khaos cookie installed." Reply 3. But there is no requirement to show

that the khaos cookie resulted in the collection of private information or caused harm. While this is consistent with Plaintiffs' position that California's pen register statute is violated "as soon as Magnite places the tracker on a device," Reply 1, the definition encompasses scores of people who lack standing to sue in federal court.

Under *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), a plaintiff does not "necessarily enjoy[] Article III standing when suing under a statute that protects a substantive right to privacy." *Id.* at 792. Instead, a plaintiff must demonstrate that the defendant collected information that is "embarrassing, invasive, or otherwise private." *Id.* at 791. This requires a "close historical or common-law analogue" to traditional privacy harms—not merely "a violation of [a privacy statute]." *Id.* at 792-94. District courts have consistently applied *Popa* to dismiss pen register claims lacking allegations showing that the information collected was private. *See, e.g.*, *Schallert v. Laird Superfood, Inc.*, 2026 WL 1707585, at *3-5 (C.D. Cal. June 5, 2026); *Torres v. SeatGeek, Inc.*, 2026 WL 1495202, at *2-5 (N.D. Cal. May 28, 2026); *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *3-4 (C.D. Cal. Dec. 29, 2025) (collecting additional cases). The Ninth Circuit recently granted a petition for interlocutory appeal to opine on this very issue. *See* Opening Brief at 5, *Drummer v. CoStar Grp., Inc.*, No. 26-1652 (May 28, 2026), Dkt. 18.1.[5] Courts also regularly decline to certify classes asserting "privacy" harms where the challenged technology did not necessarily collect private information from all putative class members. *See, e.g.*, *Ingraham v. Cap. One Fin. Corp.*, 2026 WL 1759155, at *6-8 (N.D. Cal. June 16, 2026) (denying class certification where "the Court would need to determine what, if any, data was shared, how that data was shared, for what purpose the data was shared, and the

---

[5] The *Drummer* appeal has been stayed pending resolution of *Variety Media, LLC v. Superior Court of Los Angeles County*, No. B350578 (Cal. Ct. App.), which will produce the first appellate decision on whether the pen register statute was intended to regulate "online activity." *Drummer*, Dkt. 28.1 at 6 (motion seeking stay quoting petition for review); *Drummer*, Dkt. 29 (order granting stay).

nature of that data shared with respect to each plaintiff"); *Griffith*, 2024 WL 4308813, at *10 (same where it was "possible that the vast majority of class members have suffered no cognizable harm" from internet-wide tracking pixel).

The same analysis applies here. Plaintiffs have offered no evidence that all, or even most, Class 1 members suffered injury-in-fact under Article III. The evidence shows that many putative class members with khaos IDs set suffered no harm—whether because their browsing did not reveal any private information (Opp. 23-24); they consented to such collection (Opp. 25-27); or they submitted opt-out requests blocking collection or use of their information (Opp. 14-15).

Class 1 has a second flaw: even if standing were satisfied, Plaintiffs have not shown that the khaos ID uniformly functions as a pen register. Plaintiffs argue that whether the khaos ID is a pen register can be decided in one fell swoop based on evidence that publishers use it to "facilitate ID matching." Mot. 9. But that argument is disconnected from the definition of pen register, which concerns whether a device "records or decodes dialing, routing, addressing, or signaling ['DRAS'] information"—essentially, the technical data that routes a communication to its destination—"but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs' theory appears to be that the khaos ID records or decodes DRAS in the form of "IP address, location data, device information, and browsing history." SAC ¶ 158. But the khaos cookie does not itself send information to Magnite—its sole function is to assign and store an identifier in the user's browser.[6] Wieland Decl. ¶ 12. It is the *ad request*, controlled by the publisher—not the khaos cookie or ID—that transmits information to Magnite. And what information any given publisher includes in its ad requests varies dramatically. *See, e.g.*, Wieland Decl. ¶ 19; Dkt. 80-7 at 50. For example, [redacted]

[6] Magnite does not even control whether the cookie is set; the user's browser independently decides whether to accept it based on its own settings, and Magnite has no ability to override that choice. *See* Wieland Decl. ¶¶ 8, 32.

[redacted] *See* Schnell Report ¶¶ 64, 66, 68-69. In short, Plaintiffs have not satisfied their burden to show that common questions predominate as to whether the khaos ID functioned as a pen register, and Magnite's evidence proves that individualized inquiries into each publisher's configuration of RTB fields will predominate instead.

### 2. Privacy and Unjust Enrichment Classes

The California (Class 2) and nationwide (Class 3) privacy and unjust enrichment classes add a new limitation: not only must information be private, it must also be "personally identifying." But Magnite's platform and the khaos ID do not collect "information that directly identifies an individual, such as name, address, phone number, or email address." Dkt. 80-3 at 3-4; Dkt. 82-2 at 3-4. Thus, it is only in rare and unique circumstances, if at all, that "personally identifying" information would be at issue. Plaintiffs provide no examples of this ever happening; indeed, their complaint points only to hypotheticals not involving Magnite. *See* SAC ¶ 13 (outed priest example). The modified definitions will thus require a needle-in-a-haystack search through Magnite's records to identify the rare class members, if any, for whom "personally identifying" information exists.

Plaintiff's own experience proves the point. Once provided with the alphanumeric identifiers included in Exhibit 3 to the Mercado declaration, Magnite searched its systems but found no records including a name or other real-world identifying information—it found only three additional alphanumeric identifiers assigned by third parties. *See* Wieland Decl. ¶ 30. If the named Plaintiff does not qualify for Classes 2 or 3, that speaks volumes about the individualized inquiry required to identify the rare class members who might. *See, e.g.*, *Google RTB*, 2024 WL 2242690, at *8-10 (question of whether RTB data was "personally identifying" presented individualized as opposed to common question); *see also* Opp. 17-18 (a named Plaintiff who is not a class member is atypical).

### 3. Nationwide Class

Plaintiffs' nationwide class is only triggered if Magnite collects private and personally identifiable information "using the [khaos] cookie." Reply 3. But Magnite uses the khaos ID to honor privacy choices in addition to using it to facilitate information collection. For example, if a user opts-out through Magnite's User Choice portal, Magnite (a) "flags the khaos ID as opted out in its system," (b) strips it from future incoming ad requests, and (c) "deletes information previously associated with the khaos ID from its systems." Dkt. 80-7 at 50. At least 4.8 million such requests have been received and honored by Magnite in the last five years. Dkt. 85-2 ¶ 27. Magnite also does not "use" the khaos ID from an incoming ad request if the ad request also includes an opt-out signal—such as one set via the Global Privacy Control ("GPC") or a CCPA-mandated "do not sell" or "Your Privacy Choices" link on a publisher's website. *See* Dkt. 80-7 at 5; Dkt. 85-2 ¶ 26. And, of course, Magnite cannot "use" the khaos ID if a given website omits the khaos ID from its ad requests. *See* Dkt. 85-2 ¶ 19 (noting optional choice as to "whether to include pseudonymous identifiers such as the khaos ID" in ad requests). Determining who falls within this class definition will thus require individualized inquiry into whether the khaos ID was used to *collect* information, or whether it was used to *prevent* collection or left unused entirely. Plaintiffs have not identified any method for distinguishing these categories on a classwide basis.[7]

## CONCLUSION

The modified class definitions do not cure the fundamental problems identified in Magnite's Opposition: each proposed class requires individualized inquiries that overwhelm any common questions. The Court should deny Plaintiffs' motion for class certification.

---

[7] State-by-state differences in law also preclude the nationwide class. Opp. 32-33.

**Certificate of Compliance**

The undersigned counsel of record for Magnite, Inc. certifies that this brief is fewer than 10 pages, which complies with the limit specified in this Court's June 15, 2026, order. *See* Dkt. 99.

DATED: June 23, 2026

**PERKINS COIE LLP**

By: */s/ Nicola C. Menaldo*

Nicola C. Menaldo, *pro hac vice*
NMenaldo@perkinscoie.com
Anna Mouw Thompson, *pro hac vice*
AnnaThompson@perkinscoie.com
Jordan C. Harris, *pro hac vice*
JordanHarris@perkinscoie.com
**PERKINS COIE LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: 206.359.8000
Facsimile: 206.359.9000

Alisha C. Burgin, Bar No. 286269
ABurgin@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Defendant Magnite, Inc.