UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-03448-MWC-SSC Date: July 20, 2026

Title: Edward Lewis *et al.* v. Magnite, Inc.

Present: The Honorable Michelle Williams Court, United States District Judge

| | |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings: (IN CHAMBERS) ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (DKT. 72)**

Before the Court is Plaintiffs Edward Lewis and Patricia Castillo's (collectively, "Plaintiffs") motion for class certification. *See* Dkt. # 74-1 ("*Mot.*").[1] Defendant Magnite, Inc. ("Defendant") opposed, *see* Dkt. # 83-1 ("*Opp'n*"),[2] and Plaintiffs replied, *see* Dkt. # 94 ("*Reply*"). After the Court granted Defendant's *ex parte* application for leave to file a sur-reply, *see* Dkts. # 95, 98, Defendant filed a sur-reply concerning Plaintiffs' request to exclude Defendant's evidence, *see* Dkt. # 100 ("*Evidentiary Sur-Reply*"). The Court also allowed Defendant to submit an additional sur-reply in response to Plaintiffs' modified class definitions, *see* Dkt. # 99, and Defendant did so, *see* Dkt. # 102-1 ("*Revised Class Sur-Reply*").[3] The Court held a hearing on July 10, 2026. *See* Dkt. # 112. After considering the papers and the parties' oral arguments, the Court **DENIES** Plaintiffs' motion for class certification.

## I. Background

### A. Procedural Background

A subset of plaintiffs filed an action against Defendant in Los Angeles County Superior Court on March 5, 2025, which Defendant removed to this Court on April 18,

[1] Dkt. 73-2 contains the redacted version of Plaintiffs' motion.
[2] Dkt. 83-1 contains the redacted version of Defendant's opposition.
[3] Dkt. 103 contains the redacted version of Defendant's sur-reply in opposition to Plaintiffs' modified class definitions.

2025. *See* Dkt. # 1. Another subset of plaintiffs filed a separate action on April 9, 2025, in the United States District Court for the Northern District of California; that court transferred the case to this District on June 5, 2025. *See* Dkt. # 19. After the two sets of plaintiffs filed a motion to consolidate the cases, the Court granted the motion on September 16, 2025, and appointed Jon Loevy, Michael Kanovitz, and Thomas M. Hanson as interim class counsel. *See* Dkt. # 39.

Plaintiffs' Second Consolidated Amended Complaint ("SAC") brings six causes of action: (I) Intrusion Upon Seclusion; (II) Violation of the California Invasion of Privacy Act ("CIPA") under California Penal Code § 631;[4] (III) Violation of CIPA under California Penal Code § 638.51; (IV) Invasion of Privacy under Article 1, § 1 of the California Constitution; (V) Unjust Enrichment; and (VI) Violation of the Electronic Communications Privacy Act under 18 U.S.C. § 2511(1). *See* Dkt. # 58 ("*SAC*").

B. Factual Background

Defendant, an advertising platform, gathers user information by installing a cookie—the "khaos cookie"—on the browser of customers who access a particular website or mobile application.[5] *See Mot.* at 3. The "khaos ID" is an alphanumeric string that is unique to a visitor's device and browser combination, and the khaos ID is stored in the khaos cookie. *See* Dkt. # 85-2 ("*Wieland Decl.*") ¶¶ 7–8.[6] Defendant uses the khaos ID to "[redacted]." *See* Dkt. # 72-1 ("*Hanson Decl.*"), Ex. 6, Attachment A at 3. Defendant "will try to set" the khaos cookie in a user's browser, though it is not always able to do so. *See Wieland Decl.* ¶ 8. Once Defendant has set the khaos cookie in the user's browser, "the cookie assigns and stores the khaos ID." *See id.* ¶¶ 9–10. The khaos cookie and associated khaos ID remain in the device's browser until the cookie expires or the user "clears cookies." *See id.* ¶ 11. The khaos cookie will also expire if the user fails to visit a publisher that uses Defendant's platform once every 365 days. *See id.* If the khaos cookie expires or the user deletes the cookie, Defendant's platform will try to set a new khaos cookie the next time the user's browser opens a website that uses Defendant's

[4] The SAC states that although the Court dismissed Count II from Plaintiffs' Consolidated Amended Complaint, *see* Dkt. # 55, Plaintiffs reallege Count II in their SAC "for the sole purpose of preserving their appellate rights," *see SAC* at 41 n.14. At the July 10, 2026, hearing, Plaintiffs represented that they would not pursue Count II if the case proceeded to trial.

[5] Plaintiffs also refer to the khaos ID as the "Rubicon Tracker."

[6] The sealed version of Exhibit 6 is filed at Dkt. 74.

platform. *See id.* Once Defendant has assigned the khaos ID, Defendant's technology can send the khaos ID back to Defendant through the Real-Time Bidding ("RTB") process. *See id.* ¶ 12.

In the RTB process, the "publisher" is a website operator that has advertising space to sell. *See* Dkt. # 83-2 ("*Schnell Report*") ¶ 22.[7] When a visitor opens a webpage or mobile application, the publisher's chosen advertising technology generates an "ad request" to attempt to sell advertising on the webpage that the visitor opened. *See Wieland Decl.* ¶ 17. The data fields included in an "ad request" are largely standardized; most data fields in an ad request are optional, and publishers decide how to populate them. *See id.* ¶¶ 18–19. The publisher has the option to include the khaos ID in its ad request. *See id.* ¶ 19. The publisher also has the option to include information like the full URL of a webpage, keywords describing the website, a user's full IP address, and a user's location information. *See id.*

Defendant is a "supply-side platform" ("SSP"), which represents publishers in the RTB process. *See id.* ¶ 14. When Defendant receives an ad request, it processes the associated information, adds or removes information, and then turns the ad request into a "bid request" to solicit bids from potential "demand-side platforms" ("DSPs"), which represent advertisers in the RTB process. *See id.* ¶ 20. When creating the "bid request," Defendant checks to see if it can "match" the khaos ID to a DSP's identifier. *See id.* ¶ 21. To add information to its ad requests when creating bid requests, Defendant references "match tables," which "track the pseudonymous identifiers used by third parties within the ad tech ecosystem." *See id.* Defendant then sends the bid request to the DSPs. *See id.* DSPs decide whether and how much to bid on an advertising space based on the information present in the bid request and any additional information that the DSP has in its own system or receives from clients. *See id.* ¶ 23. The DSPs send their "bid responses" back to Defendant, who selects a "winning" response to remit. *Id.* The publisher or its third-party intermediary will determine whether to accept Defendant's bid response. *See id.*

Defendant keeps advertising segments, which are collections of "pseudonymous IDs believed to share a common theme or trait . . . ." *See id.* ¶ 22. Defendant obtains the segments from publishers, advertisers, and other third-party data providers, and it can associate these third-party identifiers with khaos IDs. *See id.* Defendant also creates

[7] Dkt. 85-4 contains the redacted version of the Schnell Report.

segments "based on information that it receives from a script that publishers install on their websites," and Defendant defines the segments "by reference to khaos IDs." *See id.* When preparing bid requests, Defendant checks to see if a user appears in a segment, and Defendant may include an identifier noting that segment in a bid request. *See id.*

Defendant maintained the "Magnite Advertising Platform Privacy Policy" between November 6, 2023, and September 30, 2024. *See Hanson Decl.* ¶ 3. That policy acknowledged that Defendant collected "usage information," including the "date/time of [website] visits, the search terms you enter, visitor activities and actions . . . and click data." *See Hanson Decl.*, Ex. 1 at 3. Defendant also admitted to collecting location information and "device information," like data about the user's computer or mobile device, including the device make, model, and operating system. *See id.* Defendant could derive approximate location information from the user's IP address, but could also receive information about the precise location of the user's device. *See id.* Defendant sometimes de-identified user information based on data that Defendant's clients provided about users. *See id.*

Defendant collected various kinds of other user information too, including: device characteristics, browsing and interaction data, user's profits, user behavior data, and "derived information." *See Hanson Decl.*, Ex. 2 at 5–6. Defendant acknowledged that precise location data constitutes "sensitive personal information" under some states' privacy laws. *See id.* at 6. Defendant touted its ability to collect data in public filings during this time, at one point noting in its 10-K that "[a] core aspect of our value proposition is our big data and machine-learning platform that is able to discover unique insights from our massive data repositories containing proprietary information on trillions of bid requests and served advertisements." *See Hanson Decl.*, Ex. 3 at 8. Defendant's 2023 10-K stated that it had "massive data repositories" which included information like "user location, . . . how many ads the user has seen, browser or device information, and sellers' proprietary data about users." *See Hanson Decl.*, Ex. 4 at 8. Defendant integrated the collected data "with a number of third party data, attribution and identity vendors," *see id.* at 9, to provide clients with "more accurate audience matching and ID resolution," *see Hanson Decl.*, Ex. 5 at 5.

Defendant now states that it places limitations on customers selling advertising space, including that they must:

- "[N]ot pass any data to [Defendant] that requires end user consent if it has not appropriately obtained such consent";

- "[H]ave and adhere to a current privacy policy," which must "accurately disclose all applicable data collection, use, and disclosure practices";

- "[C]omply with all applicable Privacy Requirements and provide end users subject to such laws with a conspicuous link to a functional opt-out page . . . .";

- "[E]nsure that any applicable end-user choices to opt out, limit ad tracking, or other similar settings or preferences are passed to [Defendant]"; and

- "[N]ot pass [Defendant] any information that permanently identifies a particular device."

*Wieland Decl.* ¶ 24. Defendant further requires DSPs and advertisers to honor any choices to opt out, limit ad tracking, or prohibit data sales, and Defendant prohibits DSPs and advertisers from combining "any pseudonymous personal data received via [Defendant's] [p]latforms with any directly identifiable personal data . . . without the end user's consent." *Id.* ¶ 25.

When Defendant receives an ad request, it checks if the user has any relevant permissions or has exercised any opt-out rights. *See id.* ¶ 26. In some cases, Defendant will not associate any information from an ad request with a khaos ID and will exclude certain information in its outgoing bid request. *See id.* In other situations, Defendant also strips the user's khaos ID from all incoming ad requests going forward and deletes information previously associated with the khaos ID from its systems. *Id.* ¶ 27. Defendant maintains a public Advertising Platform Privacy Policy, which provides users with additional information. *See id.* ¶ 28.

Plaintiff Edward Lewis has visited several websites that use the khaos ID, including yahoo.com, cnn.com, zillow.com, nbcnews.com, foxnews.com, espn.com, and realtor.com. *See Hanson Decl.*, Ex. 8. As a result, Plaintiffs claim that Defendant installed the khaos ID on Mr. Lewis' desktop computer. *See* Dkt. # 72-10 ("*Mercado Decl.*"), Exs. 2, 3. Mr. Lewis never consented to Defendant's collection of his data. *See* Dkt. # 72-14 ("*Lewis Decl.*") ¶ 4. Defendant maintains that it does not have any record of the khaos ID that Mr. Lewis identifies. *See Opp'n* at 16. Instead, Defendant believes that Mr. Lewis

"attempted to set a khaos cookie and assign the MOD4S8VQ-S-C59G khaos ID on April 24, 2026," but was unable to do so. *See id.* (citing *Wieland Decl.* ¶ 29). Defendant has a record of a different khaos ID (LY4V0YQQ-P-DCSH), which "was first set in Plaintiff's browser sometime on or before July 2, 2024." *See Wieland Decl.* ¶ 30. That khaos ID "is currently associated with three third-party IDs in [Defendant's] user ID match table." *Id.*

## II. Legal Standard

Federal Rule of Civil Procedure ("Rule") 23 "provides a procedural mechanism for 'a federal court to adjudicate claims of multiple parties at once, instead of in separate suits.'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010)).

To obtain class certification under Rule 23, plaintiffs "must establish 'there are questions of law or fact common to the class,' as well as demonstrate numerosity, typicality and adequacy of representation." *Id.* (quoting Fed. R. Civ. P. 23(a)). Plaintiffs must then "show that the class fits into one of three categories [under Federal Rule of Civil Procedure 23(b)]." *Id.* Rule 23(b)(3) governs classes seeking actual damages. *See, e.g.*, *Del Campo v. Am. Corrective Counseling Serv., Inc.*, 718 F. Supp. 2d 1116, 1122 (N.D. Cal. 2010).

Before certifying a class, a district court must be "satisfied, after a rigorous analysis, that the prerequisites" for class certification are present. *Olean*, 31 F.4th at 664 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982), and *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). "Plaintiffs wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfied each requirement of Rule 23, including . . . the predominance requirement of Rule 23(b)(3),' and must carry their burden of proof 'before class certification.'" *Id.* (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275–76 (2014)) (cleaned up). "[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Id.* at 665.

While the class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim," those "merits questions may be considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 667 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), and *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466

(2013)) (cleaned up). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* (quoting *Amgen*, 568 U.S. at 466). "A court, when asked to certify a class, is merely to decide a suitable method of adjudicating the case and should not 'turn class certification into a mini-trial' on the merits." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)).

III. Discussion

A. Exclusion of Defendant's Evidence

Rule 26 requires disclosure of individuals "that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "In determining whether this remedy is appropriate, the Court considers a range of factors aimed at balancing the importance of the evidence and the offering party's justification for the delay with any potential prejudice to the party against whom the evidence is offered." *Teledyne Risi, Inc. v. Martin-Baker Aircraft Co., Ltd.*, No. CV 15-07936 SJO (GJSx), 2018 WL 11352632, at *8 (C.D. Cal. Apr. 24, 2018). "It is the burden of the party which has failed to disclose information to prove that the failure to disclose the required information was substantially justified or harmless." *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 n.9 (N.D. Cal. 2017) (citing *R&R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012)).

Plaintiffs argue that Defendant violated its discovery obligations, which allows the Court to refuse to consider any evidence that Defendant belatedly produced. *See Reply* at 2. Plaintiffs highlight that Defendant produced an additional five giagabytes of documents "only hours before filings its opposition to Plaintiffs' Motion for Class Certification," with those documents constituting Defendant's "ad request logs" for various websites. *See* Dkt. # 94-1 ¶ 5. Plaintiffs also contend that Defendant failed to disclose Ron Schnell—Defendant's expert—in compliance with Rule 26(a)(1). *See id.* ¶ 8. And Plaintiffs emphasize that Defendant relies on a declaration from an undisclosed fact witness, Jeff Wieland. *See id.* ¶ 7.

The Court will not exclude Defendant's evidence. Regarding the ad request logs, Defendant disclosed on October 31, 2025, that it would rely on documents showing "[t]he types of data collected via the technology challenged by Plaintiffs." *See* Dkt. # 100-2 at 6. The ad request logs fit that description, and Defendant provided the logs to Plaintiffs only one week after providing the logs to its expert. *See* Dkt. # 100-1 ¶ 3. Defendant's counsel also maintains that it did not decide to use that data until its expert completed his report on May 22, 2026, the same day that Defendant produced the logs to Plaintiffs. *See id.* Since Defendant promptly disclosed data of the kind it described in its initial disclosures, exclusion would be inappropriate.

Nor did Defendant violate the Court's expert disclosure deadline. The Court set initial expert disclosures for July 17, 2026, *see* Dkt. # 49, and Defendant maintains that it did not decide to use its expert's report until the day that it produced the report to Plaintiffs, *see* Dkt. # 100-1 ¶ 3. Though they reference Rule 26(a)(2) generally, Plaintiffs do not identify any Rule 26(a)(2) violation. *See Reply* at 5.

And the delay in disclosing Jeff Wieland was substantially justified. To be sure, Defendant did not disclose Mr. Wieland until May 2026, well after its initial disclosures. *See Evidentiary Sur-Reply* at 11. But Defendant had timely disclosed Garrett McGrath, who was a fact witness with knowledge of Defendant's operations. *See* Dkt. # 100-1, Ex. 1 at 4. Mr. McGrath left Defendant in May 2026, "during the three-week period [Defendant] had to oppose the motion for class certification." *See* Dkt. # 100-1 ¶ 7. As a result, Defendant turned to Mr. Wieland to replace Mr. McGrath. *See id.* Plaintiffs also learned of Mr. Wieland nearly two months before fact discovery closed, limiting any prejudice stemming from the substitution. *See* Dkt. # 49. Moreover, Plaintiffs had not sought to depose Mr. McGrath, and Mr. Wieland offers similar information to that of Mr. McGrath. *See* Dkt. # 100-1 at 12.

Accordingly, the Court will consider all evidence the parties submitted.

B. <u>Revised Class Definition</u>

Plaintiffs initially proposed the following class and an associated California subclass:

- Class: All persons in the United States whose personal information, communications, or private information, or

data derived from their personal information, communications, or private information, was used to create a profile and/or made available for sale or use through Defendant's platform, distributed or sold in the process of delivering advertising on websites, mobile applications, or other digital media, or otherwise.

- California Subclass: All California residents whose personal information, communications, or private information, or data derived from their personal information, communications, or private information was used to create a profile and/or made available for sale or use through Defendant's platform, distributed or sold in the process of delivering advertising on websites, mobile applications, or other digital media, or otherwise.

*Mot.* at 4–5. On reply, Plaintiffs proposed the following modified class definitions:

- California Pen Register Class: All California residents who had Magnite's khaos cookie installed on one or more of their devices.

- California Right of Privacy and Unjust Enrichment Subclass: All persons in the Pen Register Class for whom Magnite collected personally identifying and private information.

- Nationwide Class: All U.S. residents from whom Magnite collected personally identifying and private information using the khaos cookie.

*Reply* at 3. The Court will consider only the modified class definitions for purposes of evaluating certification.

*i.* Rule 23(a)

*a.* *Numerosity*

Rule 23(a) requires class membership to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity does not have a fixed numerical threshold, instead requiring an examination of the specific facts of each case. *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (citing *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980)). Still, courts generally find numerosity satisfied when a class contains at least forty members. *Id.* (citation omitted).

Plaintiffs' proposed class is sufficiently numerous. Defendant explained that it was willing to stipulate that the number of individuals whose "personal information . . . was . . . made available . . . for use through Defendant's platform" was greater than forty. *See Hanson Decl.*, Ex. 6 at 10. Even after Plaintiffs proposed modified class definitions, Defendant did not contest numerosity. *See generally Revised Class Sur-Reply*. And the basic description of Defendant's technology suggests that the proposed classes would far exceed forty, as Plaintiffs identify several popular websites that use the khaos cookie and could be susceptible to Defendant's collection of user data.

As a result, Plaintiffs have satisfied numerosity.

*b.* *Typicality*

Rule 23(a)(3) requires that the claims or defenses of the named plaintiff be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1119 (C.D. Cal. 2025). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012).

Plaintiffs have not established that Mr. Lewis' claim is typical of all classes he seeks to represent. Plaintiffs argue that Mr. Lewis is typical "because he suffered the same injury as a result of the same course of conduct, by the same Defendant, with no individualized

defenses applicable." *See Mot.* at 7. Plaintiffs provide evidence that Defendant installed the khaos cookie on Mr. Lewis' browser without his consent. *See Mercado Decl.*, Exs. 2, 3; *Lewis Decl.* ¶ 4. Still, that would make Mr. Lewis typical only as to the California Pen Register class. The other two classes, however, require Defendant to have collected "personally identifying and private information." *See Reply* at 3. Plaintiffs do not explain what personally identifying or private information Defendant collected. *See id.* at 4. Instead, they rely on the syllogism that because Defendant found other khaos IDs for Mr. Lewis after Mr. Lewis had already provided additional information to Defendant, Defendant must have collected personally identifying information. *See id.* But Defendant explained that it could only identify Mr. Lewis based on the information that he provided after finding the khaos cookie in his own browser, which Defendant could then use to match Mr. Lewis to three third-party IDs in its "user ID match table." *See Wieland Decl.* ¶ 30. Without the information that Mr. Lewis provided, there is no evidence that Defendant could have identified Mr. Lewis.

Like the Plaintiffs in *Griffith v. TikTok, Inc.*, Plaintiffs "devote only one paragraph of their motion to typicality," with their argument "merely track[ing] class definitions," but providing "no information about . . . what information Defendant[] collected from [Mr. Lewis]." *See* No. 5:23-cv-00964-SB-E, 2024 WL 4308813, at *8 (C.D. Cal. Sept. 9, 2024). Plaintiffs offer no evidence that Defendant "ever obtained any particularly sensitive information" about Mr. Lewis or any of his personally identifying information (like his name, phone number, or email address). *See id.* Plaintiffs have not met their burden to show that Mr. Lewis is typical of all three classes he seeks to represent. *See, e,g.*, *Loritz v. Exide Techs.*, No. 2:13-cv-02607-SVW-E, 2015 WL 6790247, at *6 (C.D. Cal. July 21, 2015) (highlighting plaintiffs' burden in proving typicality).

Despite Plaintiffs' argument that "even if [Mr.] Lewis were atypical of the class he seeks to represent . . . the proper course is to substitute a typical representative," *see Reply* at 4, the plain language of Rule 23(a) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see Gold v. Midland Cred. Mgmt., Inc.*, 306 F.R.D. 623, 631 (N.D. Cal. 2014) (same). Plaintiffs' authority—*Vue v. Pentagon Federal Credit Union*—contemplates only a party moving to substitute a class representative under Rule 15 separately from a motion for class certification under Rule 23, not a court certifying a class despite an atypical representative. *See* No. 1:21-cv-01063-JLT-SAB, 2024 WL 4436814, at *4 (E.D. Cal. Oct.

4, 2024). Thus, as to at least the Nationwide Class and the California Right of Privacy and Unjust Enrichment Subclass, Plaintiffs' typicality shortcomings preclude certification.

*c. Adequacy*

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when the named plaintiffs and their counsel do not "have any conflicts of interest with other class members" and the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class[.]" *Evon*, 688 F.3d at 1031 (internal quotation marks and citation omitted). In determining adequacy of class counsel, the Court must assess the following requirements of Rule 23(g):

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Class counsel must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). The Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Mr. Lewis' declaration satisfies the class representative adequacy requirement. Mr. Lewis does not have any conflicts of interest. *See Lewis Decl.* ¶ 10. And although Mr. Lewis' evidence falls short in certifying the class, that shortcoming alone does not preclude a finding that Mr. Lewis would prosecute the action vigorously. *See Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (noting that "[w]hile a lack of typicality can indicate that a class representative may be inadequate, the two inquiries are not the same" (citation omitted)). Nor is it uncommon for courts to find a class representative adequate even if he

is not typical. *See, e.g.*, *Pitt v. Metro. Tower Life Ins. Co.*, No. 20-CV-694-RSH-DEB, 2022 WL 17972167, at *5 (S.D. Cal. Dec. 1, 2022); *Smith v. Allianz Serv. Co.*, No. 2:20-cv-08557-AB-AFMx, 2022 WL 4596591, at *13 (C.D. Cal. June 10, 2022); *Brown v. Nat'l Life Ins. Co.*, No. CV 13-2547 PA (CWx), 2013 WL 12096508, at *6 (C.D. Cal. Oct. 15, 2013).

For the reasons the Court outlined in its order appointing Loevy & Loevy as interim class counsel, *see* Dkt. # 39, Mr. Hanson would likely prosecute the action vigorously on behalf of the class. There is also no indication that Mr. Hanson has a conflict of interest. *See, e.g.*, *Culley v. Lincare Inc.*, No. 2:15-cv-00081-MCE-CMK, 2016 WL 4208567, at *6 (E.D. Cal. Aug. 10, 2016). Though Defendant refers in passing to Mr. Lewis and Mr. Hanson's potential discovery violations, *see Opp'n* at 19 n.3, Defendant has not filed a motion to compel in this case, nor does the Court have a sufficient record to determine that Plaintiffs or Plaintiffs' counsel committed discovery misconduct.

Accordingly, Plaintiffs have satisfied the adequacy requirement at this juncture.

*d. Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has explained that Rule 23(a)(2) does not preclude class certification if fewer than all questions of law or fact are common to the class. *See Hanlon v. Chrysler Corp.* 150 F. 3d 1011, 1019 (9th Cir. 1998) ("The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule."). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 7428810, at *7 (N.D. Cal. Dec. 22, 2016) (quoting *Hanlon*, 150 F.3d at 1019), *aff'd*, 726 F. App'x 608 (9th Cir. 2018). "In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is capable of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666–67.

Plaintiffs highlight several potential common questions of law and fact, including whether "the [khaos cookie] constitutes a pen register or trap and trace device," whether

Defendant "installed the [khaos cookie] on the class members' computers when they visited websites that used it," and whether Defendant "collected, shared, and profited from [c]lass members' private information without consent." *See Mot.* at 5–6. After modifying the class definitions, Plaintiffs reiterate that there is a common question as to "[w]hether [Defendant's] cookie is a pen register . . . ." *See Reply* at 5.

Defendant contests the commonality of factual questions, like "whether a khaos ID was ever set in [putative class members'] browser[s]," "whether any private information was collected from [putative class members]," and "whether they consented." *See Revised Class Sur-Reply* at 4. To be sure, there are issues with the commonality of these factual questions, but those issues primarily affect the predominance analysis. And Plaintiffs' common question of law—whether the khaos cookie is a pen register—remains notwithstanding these factual disputes. Since Plaintiffs need only identify a "single significant question of law or fact" to satisfy the commonality requirement, *see In re Telescopes Antitrust Litig.*, 348 F.R.D. 455, 467 (N.D. Cal. 2025) (quoting *Stockwell v. City & Cnty. of S.F.*, 749 F.3d 1107, 1111 (9th Cir. 2014)), the question as to whether the khaos cookie is a pen register suffices.

*ii.* Rule 23(b)(3)

*a.* *Ascertainability*

Though some district courts have required plaintiffs to show an ascertainable class,[8] Rule 23 does not include an explicit ascertainability requirement. *See* Fed. R. Civ. P. 23. And the Ninth Circuit does not require courts to find ascertainability as an independent threshold requirement for class certification. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018) ("We held that there is no free-standing requirement above and beyond the requirements specifically articulated in Rule 23." (citation omitted)).

Still, difficulty ascertaining a class may implicate Rule 23's explicit requirements, including predominance under Rule 23(b)(3). *See Bartz v. Anthropic PBC*, 791 F. Supp.

---

[8] *See, e.g.*, *In re Honda Idle Stop Litig.*, 347 F.R.D. 528, 539 (C.D. Cal. 2024) (analyzing ascertainability but not requiring administrative feasibility); *Keegan v. Am. Honda Motor Co.*, Inc., 284 F.R.D. 504, 521 (C.D. Cal. 2012) (collecting cases requiring ascertainability as an additional prerequisite to certification).

3d 1038, 1054 (N.D. Cal. 2025) (citation omitted). Here, though these concerns are not dispositive alone, Plaintiffs' proposed classes suffer from ascertainability challenges. First, since the khaos ID depends on a specific combination of a user's browser and device, it is possible that a particular user had multiple khaos IDs (to the extent they accessed the same website using different browsers or devices), or that multiple individuals had the same khaos ID (to the extent that they shared browsers and devices). Plaintiffs offer no method for identifying putative class members despite this challenge. Moreover, it was only after Mr. Lewis retained the assistance of an expert that he was able to identify the khaos cookie, *see Mercado Decl.* ¶¶ 2–3, casting doubt on whether other class members could do so on their own. Second, Plaintiffs assert that Defendant can search its records to identify class members, but they offer no evidence or expert opinion to support that proposition. *See generally Mot.*; *Reply*. By contrast, Defendant offers evidence showing that it could only identify data receipt regarding an individual after that individual located the khaos ID on their own browser and provided that khaos ID to Defendant to search its records. *See Revised Class Sur-Reply* at 7. Defendants further highlight challenges related to finding putative class members given variability in browser usage, website visitation, and consent to tracking. *See id.* at 6.

Though Plaintiffs refer to certified settlement classes that rely on similar language, *see Reply* at 3, the standards that courts apply to the certification of settlement classes are more lenient than those applied to certification of litigation classes, *see Neilson v. Union Bank of Cal., N.A.*, No. CV 02-06942 MMM (CWx), 2003 WL 27374138, at *10 n.30 (C.D. Cal. Aug. 12, 2003) (citation omitted). Thus, while not dispositive on their own, these background ascertainability challenges inform the Court's analysis under the explicit Rule 23(b) requirements.

*b. Predominance*

The central Rule 23(b)(3) inquiry is whether "the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the plaintiffs satisfy the predominance test. *Hanlon*, 150 F.3d at 1022. "[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, [however,] a Rule 23(b)(3) action would be inappropriate." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (quoting 7A Charles

Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1778, at 535–39 (1986)); *see Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." (cleaned up)).

*1. Identification of Khaos ID and Putative Class Members*

Plaintiffs fail to satisfy predominance for several reasons. First, individualized inquiries would predominate as to whether a putative class member's browser had a khaos ID at all. Defendant identifies several factors that would determine whether an individual's browser contained the khaos ID, including: which browser the individual used and what default settings they had; whether the individual independently adjusted privacy settings to block cookies; and "whether the specific page they visited on the website was even configured to request the khaos ID . . . ." *See Revised Class Sur-Reply* at 6. Defendant notes that [redacted], as many internet users and browsers block cookies. *See Schnell Report* ¶ 64.

Before even reaching those questions, however, Plaintiffs have not shown how to determine on a classwide basis which individuals would constitute putative class members, leaving individualized questions for resolution. Defendant submits evidence that it operates "pseudonymously" and that "it does not know who is behind a given alphanumeric string." *See id.* at 7. Instead, Defendant explains that "[i]f someone wants to know whether [Defendant] received data about their browsing, they must first locate a khaos ID on their browser and provide that ID to [Defendant] to search its records." *Id.* Nor do Plaintiffs address the challenges stemming from the device and browser combinations at issue—the same individual could have multiple khaos IDs, while multiple individuals could also share a khaos ID. There would be an individualized inquiry as to each putative class member's use of a device or browser containing the khaos ID. *See Angulo v. Providence Health & Servs. – Wash.*, No. C22-0915JLR, 2024 WL 3744258, at *12 (W.D. Wash. Aug. 9, 2024) ("The court also concludes that Plaintiffs cannot demonstrate predominance because individualized inquiries are required to determine the membership of the classes in the first instance."); *see also Sherman v. Yahoo! Inc.*, No. 13cv0041-GPC-WVG, 2015 WL 5604400, at *10 (S.D. Cal. Sept. 23, 2015) ("In its discussion of the ascertainability of the class, the Court identified the holes in Plaintiff's method of identifying class members. In addition to calling into question how the class might be ascertained, that kind of

individualized inquiry also suggests that common questions do not predominate over individual ones."). For this reason, Plaintiffs fail to satisfy predominance.

*2. Consent Defense*

Second, there are individualized questions that would predominate regarding putative class members' consent to cookies. Plaintiffs' proposed classes include individuals that visited several different websites, but those websites have different privacy policies and varying degrees of specificity with respect to the use of cookies. *See* Dkt. # 85-6 (showing variations across, *inter alia*, cnn.com, espn.com, and msn.com as to whether those websites' privacy policies disclosed "Magnite" or "Rubicon" and how an individual would consent to third-party tracking). Plaintiffs refer to Defendant's argument as "piggyback[ing] on other website privacy policies," stating that "[t]he policies do not even name the khaos cookie or describe what it does with the data." *See Reply* at 7. Plaintiffs offer no examples or evidence to support their claim, instead highlighting Ninth Circuit authority that users must have "actual notice of and provide unambiguous consent for the entity at issue." *See id.* (citations omitted).

The many websites and privacy policies at issue cause individual questions to predominate. For each putative class member, there would be a question as to which websites they visited, what cookie banner or privacy policy they agreed to (including whether the class member agreed and what the privacy policy stated), and how the putative class member understood the relevant privacy policy. This case resembles *In re Google RTB Consumer Privacy Litigation*, where the court found that individualized issues predominated since the factfinder would have to "assess each account holder's individual, and subjective, understanding of" the relevant actors' disclosures. *See* No. 4:21-cv-2155-YGR, 2024 WL 2242690, at *14 (N.D. Cal. Apr. 4, 2024). Another analogous case is *Calhoun v. Google LLC*, where the court determined that the "proposed class contain[ed] millions of Chrome users, each of whom was exposed to, and may have explicitly or implicitly consented to, varying disclosures potentially providing notice that their use of Chrome meant their data would be collected." *See* 349 F.R.D. 588, 597 (N.D. Cal. 2025); *see also Hart v. TWC Prod. and Tech. LLC*, No. 20-cv-03842-JST, 2023 WL 3568078, at *11 (N.D. Cal. Mar. 30, 2023) (explaining that because there was a "panoply of sources" from which users could have learned that the defendant used their location data for advertising purposes, "[t]he factual questions of whether users viewed any of these materials prior to or during their use of the App and whether users who viewed these materials and continued to use the App" caused "individualized factual inquiries

[to] . . . necessarily predominate over common legal question of whether these users maintained a reasonable expectation of privacy"). Even relying on a "reasonable person" standard to determine how a putative class member would understand the disclosures, there would be scores of individualized inquiries given the many different disclosures at issue. Thus, individualized questions regarding consent would predominate, precluding class certification.

*3. Standing*

Individual issues regarding putative class members' standing also predominate. Article III confines the federal judicial power to the resolution of "Cases" and "Controversies." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id*. (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992)).

"The Supreme Court has not yet decided whether a class may be certified under Rule 23(b)(3) when the class includes both injured and uninjured class members." *Ingraham v. Cap. One Fin. Corp.*, No. 24-cv-05985-TLT, 2026 WL 1759155, at *7 (N.D. Cal. June 16, 2026) (citing *Lab'y Corp. of Am. Holdings v. Davis*, 145 S. Ct. 1608 (2025)). Though Rule 23 allows certification of a class that potentially includes more than a de minimis number of uninjured class members, individualized questions regarding putative class members' injuries cannot predominate. *See Olean*, 31 F.4th at 668–69. Accordingly, a district court must determine if the plaintiffs have demonstrated a method of proof that can determine harm on a classwide basis. *See King v. Nat. Gen. Ins. Co.*, No. 15-cv-00313-DMR, 2025 WL 2021884, at *2 (N.D. Cal. July 18, 2025) (citing *Olean*, 31 F.4th at 669, 681).

Plaintiffs first assert that because the alleged intrusion of privacy is "placing a tracker on a class member['s] device" in violation of CIPA, they have offered an injury that satisfies Article III standing. *See Reply* at 8. But the Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 426 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Instead, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341; *Popa v. Microsoft Corp.*, 153

F.4th 784, 792 (9th Cir. 2025) (rejecting an argument that "because the Pennsylvania legislature enacted a statute protecting a substantive privacy right, any plaintiff alleging a violation of statute will satisfy Article III," noting that this analysis "reverts to a pre-*TransUnion* (even pre-*Spokeo*) approach that favors a legislative body's views in the aggregate over a plaintiff's individual circumstances"). As a result, a CIPA violation on its own does not confer standing. *See Ridgeway v. Spokeo, Inc.*, 697 F. Supp. 3d 979, 983 (C.D. Cal. 2023) ("An alleged statutory violation is insufficient to confer standing on its own." (citation omitted)).

Plaintiffs next contend that there is no need for an individualized inquiry as to what information Defendant transmitted. *See Reply* at 8–9. They again refer to the ability to search Defendant's records to show "whether information was transmitted for each khaos ID . . . ." *Id.* at 8. *Popa* requires plaintiffs to explain how the invasion of their privacy caused them to experience a harm "similar to the highly offensive interferences or disclosures that were actionable at common law." *Popa*, 153 F.4th at 791 (internal quotation marks omitted). Plaintiffs have not explained how the Court can evaluate those harms on a classwide basis. Nor do Plaintiffs offer evidence of Defendant collecting personally identifying information. By contrast, Defendant highlights that its cookie policy—which Plaintiffs submitted as evidence—explains that the user information it collects "does not include information that directly identifies an individual, such as [a user's] name, address, phone number, or email address." *See Hanson Decl.*, Ex. 2 at 3; *see also Schnell Report* ¶ 35 ("At most, the 'khaos' cookie may allow [Defendant] to recognize the same device and browser in certain circumstances . . . . That is different from identifying the person using that browser." (emphasis omitted)). Without information as to the private information that Defendant transmitted or how the Court could evaluate those harms on a classwide basis, individualized standing issues prevail.

Lastly, Defendant identifies that "[a] person who consents to an act is not wronged by it." *See Opp'n* at 28 (quoting Cal. Civ. Code § 3515). Since individualized issues predominate regarding consent, *see supra* Section III.B.ii.b.2, those issues infect the Court's ability to determine whether putative class members have suffered a wrong under CIPA. *Cf. Washington v. Flixbus, Inc.*, No. 3:25-cv-00212-H-MSB, 2025 WL 1592961, at *3 (S.D. Cal. June 5, 2025) ("Consent is a bar to claims under CIPA." (citing *Smith v. Facebook Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017))).

For these reasons, individualized standing inquiries impede class certification.

*4. Damages Methodology*

Plaintiffs also fail under Rule 23(b)(3) because they have not shown that the Court can measure damages on a classwide basis. Plaintiffs first contend that "the need for individual damages calculations does not, alone, defeat class certification." *See Mot.* at 13 (quoting *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016)). To be sure, "while damages calculations alone cannot defeat certification, plaintiffs must show that damages are capable of measurement on a classwide basis." *Cole v. Gene by Gene, Ltd.*, 322 F.R.D. 500, 506 (D. Alaska 2017) (internal quotation marks and citations omitted); *see Daniel F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 130 (N.D. Cal. 2014) ("A plaintiff seeking to certify a class under Rule 23(b)(3) must establish through evidentiary proof that damages are capable of measurement on a classwide basis." (internal quotation marks omitted) (quoting *Comcast*, 569 U.S. at 33–34)). Without that evidence, a court cannot certify the class because questions of individual damages calculations "will inevitably overwhelm questions common to the class." *Comcast*, 569 U.S. at 34.

For Plaintiffs' claim under California Penal Code § 637.2(a), they propose establishing classwide damages by utilizing statutory damages. *See Mot.* at 14. They claim that "Defendants' records will identify the number of individuals who have had their information collected," *id.*, but offer no evidence to support that claim. Though Plaintiffs characterize the challenge as determining "the precise number of individuals of individuals who have had the khaos cookie installed," *Reply* at 10, they do not offer the Court evidence of how to identify even an imprecise number of individuals.

For their unjust enrichment claim, Plaintiffs propose calculating damages based on "the money [Defendant] makes from secretly collecting Class members' information without consent . . . ." *Mot.* at 14–15. Though they assert that this remedy is one "that courts have deemed appropriately satisfies predominance," *id.* at 15, their authority highlights the shortcomings of their damages proposal. In *Rodriguez v. Google LLC*, the plaintiffs provided an expert report calculating classwide unjust enrichment damages for "two damage scenarios." *See* No. 20-cv-04688-RS, 2024 WL 38302, at *1 (N.D. Cal. Jan. 3, 2024). Those models provided detailed descriptions as to how plaintiffs calculated the relevant damages, including the data on which the expert relied and how he attributed profits to the defendant. *See id.* at *1, 11. Plaintiffs here, however, include no information of the kind, leaving only a guess as to how to calculate classwide damages. Without a suitable method to calculate damages, Plaintiffs have not met the predominance requirement. *See, e.g.*, *Smith v. Shahidi*, No. 8:25-cv-00161-FWS-DFM, 2026 WL

852218, at *9 (C.D. Cal. Mar. 9, 2026) (denying class certification because, *inter alia*, plaintiff failed to provide method for calculating classwide damages); *Herron v. Best Buy Stores, LP*, No. 2:12-cv-02103-TLN-CKD, 2018 WL 1960659, at *5 (E.D. Cal. Apr. 26, 2018) ("Accordingly, individualized issues predominate since Plaintiff has not demonstrated a classwide basis for calculating damages." (citation omitted)).

*c. Superiority*

Under the superiority requirement of Rule 23(b)(3), a plaintiff must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As part of the analysis, courts are directed to weigh several non-exclusive factors outlined in Rule 23(b)(3): class members' interests in individual actions, the extent and nature of any litigation concerning the controversy, the desirability of concentrating the litigation of the claims in the particular forum, and manageability difficulties. *See id.*; *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

For the same reasons that Plaintiffs fail to meet the predominance requirement, a class action would not be superior for litigating the matter. *See, e.g.*, *Reynoso v. All Power Mfg. Co.*, No. SACV 16-1037 JVS (JCGx), 2018 WL 5906645, at *5 (C.D. Cal. Apr. 30, 2018) ("Because the Court has found that the Class fails to meet the predominance requirement of Rule 23(b)(3), a class action is not the superior method for litigating this matter."); *Chavez v. S.F. Bay Area Rapid Transit Dist.*, No. C 22-06119 WHA, 2024 WL 332881, at *7 (N.D. Cal. Jan. 28, 2024) (finding that there were likely difficulties in managing the class action because of predominance issues). "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not superior." *Zinser*, 253 F.3d at 1192 (internal quotation marks and citation omitted). Even where the other superiority factors counsel in favor of certification, manageability concerns may preclude a finding of superiority. *See, e.g.*, *Faulk v. Sears Roebuck and Co.*, No. 11-CV-021569 YGR, 2013 WL 1703378, at *10 (N.D. Cal. Apr. 19, 2013) (finding that the first three superiority factors favored certification, but concluding that a class action was not a superior means of resolving claims because of "significant concerns that each member of the putative class may need to litigate [a] myriad [of] individual issues to establish his or her own right to recovery").

As a result, a class action would not be superior for litigating the case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-03448-MWC-SSC Date: July 20, 2026

Title: Edward Lewis *et al.* v. Magnite, Inc.

IV. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for class certification.

**IT IS SO ORDERED.**

:

**Initials of Preparer** TJ