Nicola C. Menaldo, *pro hac vice*
nicola.menaldo@ashurstperkins.com
ASHURST PERKINS COIE US LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: 206.359.8000
Facsimile: 206.359.9000

Alisha C. Burgin, Bar No. 286269
alisha.burgin@ashurstperkins.com
ASHURST PERKINS COIE US LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Defendant Magnite, Inc.

*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EDWARD LEWIS and PATRICIA CASTILLO, individually and on behalf of similarly situated individuals,

Plaintiffs,

v.

MAGNITE, INC.,

Defendant.

Case No. 2:25-CV-03448-MWC-SSC

**DEFENDANT MAGNITE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

*[Filed with Statement of Uncontroverted Facts; Declarations in Support; [Proposed] Judgment]*

Date: October 2, 2026
Time: 1:30 p.m.
Courtroom: 6A
Judge: Michelle Williams Court

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on October 2, 2026, at 1:30 p.m., or as soon thereafter as counsel may be heard, in courtroom 6A of the above-entitled Court, Defendant Magnite, Inc. ("Magnite") will and does hereby move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order granting summary judgment in Magnite's favor on the ground that there are no genuine disputes as to any material facts and that Magnite is entitled to judgment as a matter of law on the following issues:

**ISSUE NO. 1**

Summary judgment that Plaintiff Lewis ("Lewis") lacks Article III standing.

**ISSUE NO. 2**

Summary judgment that Lewis cannot establish his California Constitution invasion of privacy claim.

**ISSUE NO. 3**

Summary judgment that Lewis cannot establish his intrusion upon seclusion claim.

**ISSUE NO. 4**

Summary judgment that Lewis cannot establish his unjust enrichment claim.

**ISSUE NO. 5**

Summary judgment that Lewis cannot establish his pen register claim under California Penal Code § 638.51.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, all supporting documents filed, and any further evidence or arguments that may be presented at or before the hearing on this Motion for Summary Judgment.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 6, 2026.

DATED: August 14, 2026

**ASHURST PERKINS COIE US LLP**

By: /s/ Nicola Menaldo
Nicola C. Menaldo, *pro hac vice*
nicola.menaldo@ashurstperkins.com
Anna Mouw Thompson, *pro hac vice*
anna.thompson@ashurstperkins.com
Jordan C. Harris, *pro hac vice*
jordan.harris@ashurstperkins.com
Anna Thompson-Lanners, *pro hac vice*
anna.thompson-lanners@ashurstperkins.com
**ASHURST PERKINS COIE US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: 206.359.8000
Facsimile: 206.359.9000

Hayden M. Schottlaender, *pro hac vice*
hayden.schottlaender@ashurstperkins.com
**ASHURST PERKINS COIE US LLP**
2699 Howell Street, Suite 700
Dallas, Texas 75204-5810
Telephone: 214.965.7700
Facsimile: 214.965.7799

Aaron Haberman, *pro hac vice*
aaron.haberman@ashurstperkins.com
**ASHURST PERKINS COIE US LLP**
700 Thirteenth Street N.W., Suite 800
Washington, DC 20005-3960
Telephone: 202.654.6200
Facsimile: 202.654.6211

Alisha C. Burgin, Bar No. 286269
alisha.burgin@ashurstperkins.com
Marlenee Blas Pedral, Bar No. 355199
marlenee.blaspedral@ashurstperkins.com
**ASHURST PERKINS COIE US LLP**

1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Defendant Magnite, Inc.

## TABLE OF CONTENTS


I. INTRODUCTION .......... 11

II. STATEMENT OF UNDISPUTED MATERIAL FACTS .......... 13

- A. Magnite facilitates the selling of online advertising inventory. .......... 13
- B. Websites cause Magnite's khaos cookie to be set, and that cookie's sole function is to assign a single pseudonymous value to the browser visiting that website. .......... 14
- C. Magnite has virtually no information that can be associated with Lewis. .......... 16

III. SUMMARY JUDGMENT STANDARD .......... 18

IV. ARGUMENT .......... 19

- A. Lewis lacks Article III standing. .......... 19
- B. Lewis cannot prove the elements of his invasion of privacy and unjust enrichment claims. .......... 22
- C. Lewis expressly consented to the sharing of his information with Magnite by agreeing to Yahoo's terms, defeating all of his claims. .......... 23
- D. Lewis's failure to use available opt-out mechanisms provides an alternate ground for summary judgment on his privacy and unjust enrichment claims. .......... 25
- E. Lewis cannot prove his unjust enrichment claim because there is no evidence that Magnite benefited from Lewis's information, let alone at his expense. .......... 26
- F. Unjust enrichment is not an independent cause of action that can proceed while Lewis is also seeking money damages. .......... 28
- G. Magnite is entitled to summary judgment on Lewis's pen register claim. .......... 29
  1. Online advertising technologies are not pen registers. .......... 29
  2. The khaos cookie is not a pen register because it does not record or decode data. .......... 30
  3. Magnite did not "install" or "use" the khaos cookie. .......... 31
  4. Yahoo consented to setting the khaos cookie, barring Lewis's pen register claim. .......... 32

5. A pen register claim based on Magnite's JavaScript API or server-to-server transmissions is also subject to summary judgment in favor of Magnite. .......... 34

V. CONCLUSION .......... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Chevron Corp.*,
656 F.3d 925 (9th Cir. 2011) .......... 30

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 18

*Aviles v. Liveramp, Inc.*,
2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025) .......... 34

*Bradshaw v. Lowe's Cos.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) .......... 31

*Casillas v. BOP LLC*,
2025 WL 2161288 (Cal. Super. Ct. June 18, 2025) .......... 33

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super. Ct. Jan. 20, 2026) .......... 33

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 18

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .......... 19

*Doe v. ERC*,
2025 WL 2983143 (N.D. Cal. Oct. 17, 2025) .......... 26

*Drum v. San Fernando Valley Bar Ass'n*,
182 Cal. App. 4th 247 (2010) .......... 25

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .......... 22, 27

*Griffith v. TikTok, Inc.*,
2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) .......... 21

*Griffith v. TikTok, Inc.*,
2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) .......... 22

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)....................22

*Heiting v. HP Inc.*,
2025 WL 2993673 (Cal. Super. Ct. Aug. 1, 2025)....................34

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009)....................22

*Hooked Media Group, Inc. v. Apple Inc.*,
55 Cal. App. 5th 323 (2020)....................28

*In re iPhone Application Litig.*,
6 F. Supp. 3d 1004 (N.D. Cal. 2013)....................21

*In re Meta Android Priv. Litig.*,
2026 WL 1279416 (N.D. Cal. May 11, 2026)....................31

*In re Palmdale Hills Prop., LLC*,
577 B.R. 858 (C.D. Cal. Bankr. 2017)....................23, 28

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014)....................25

*Keenan v. Allan*,
91 F.3d 1275 (9th Cir. 1996)....................18

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025)....................24

*Levings v. Open Text Corp.*,
2024 WL 5672082 (Cal. Super. Ct. Sept. 3, 2024)....................33

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................19

*Malko v. GNC Holdings, LLC*,
2026 WL 2218133 (C.D. Cal. July 29, 2026)....................19

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
210 F.3d 1099 (9th Cir. 2000)....................18

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008)....................23, 25

*Popa v. Microsoft*,
153 F.4th 784 (9th Cir. 2025) ........ passim

*Rivera v. Nat'l R.R. Passenger Corp.*,
331 F.3d 1074 (9th Cir. 2003) ........ 18

*Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*,
2021 WL 2188138 (E.D. Cal. May 28, 2021) ........ 26, 27

*Rodriguez v. Ink Am. Int'l Grp. LLC*,
2025 WL 4034985 (Cal. Super. Ct. Dec. 10, 2025) ........ 33

*Schallert v. Laird Superfood, Inc.*,
2026 WL 1707585 (C.D. Cal. June 5, 2026) ........ 19

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........ 32

*Shah v. MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026) ........ 26

*Sherman v. Yahoo! Inc.*,
2015 WL 5604400, at *2 (S.D. Cal. Sept. 23, 2015) ........ 24

*Sisti v. Bosley Inc.*,
831 F. Supp. 3d 979 (C.D. Cal. 2026) ........ 23

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ........ 25

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ 24

*Sneider v. Woodside Credit, LLC*,
2025 WL 3050221 (C.D. Cal. July 10, 2025) ........ 28

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 19

*Talavera v. Glob. Payments, Inc.*,
670 F. Supp. 3d 1074 (S.D. Cal. 2023) ........ 28

*Torres v. SeatGeek, Inc.*,
2026 WL 1495202 (N.D. Cal. May 28, 2026) ........ 19

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026)....31

*United States v. Williamson*,
2023 WL 4056324, at *2 (M.D. Fla. Feb. 10, 2023)....24

**Statutes**

Cal. Civ. Code § 1798.100....25

Cal. Civ. Code § 1798.120....25

Cal. Penal Code § 1546(e)....33

Cal. Penal Code § 629.51(a)(2)....33

Cal. Penal Code § 638.50(b)....30

Cal. Penal Code § 638.51....29, 30, 31, 32, 33, 34

**Rules**

Fed. R. Civ. P. 56(a)....18

**Other Authorities**

55 Cal. Jur. 3d Restitution § 2....28

Senate Bill 690....30

# I. INTRODUCTION

The undisputed evidence proves that Lewis was fundamentally wrong about Magnite's technology and that he cannot sustain any of his remaining claims. Magnite does not possess the type or breadth of information about Lewis that Lewis suspected or believed when he filed this case. Nor could it—Magnite does not ever receive information, through its "khaos cookie" or otherwise, that personally identifies any individual. Only after Lewis identified *himself* to Magnite by disclosing which pseudonymous identifiers were associated with his own browser was Magnite even able to search its records for information about those identifiers. That search confirmed that Magnite possessed no personally identifying or sensitive information associated with Lewis whatsoever: no email address, no phone number, and no IP address. For Lewis, there were not even associated audience segments that could be used for targeted advertising. The only thing Magnite found were records that Lewis's browser had made a handful of visits to one of the most popular and unsensational destinations on the internet: Yahoo.com.

Because that information is not in any way embarrassing, invasive, or otherwise private, Lewis lacks standing to pursue this case under binding Ninth Circuit precedent. Under *Popa v. Microsoft*, 153 F.4th 784 (9th Cir. 2025), Lewis has not suffered any cognizable injury. Lewis's claims for invasion of privacy and unjust enrichment fail on the merits for similar reasons: (1) Lewis has no reasonable expectation of privacy in the fact that a browser associated with him visited Yahoo.com when Magnite would never have known about that association but for this litigation, (2) Magnite's conduct in collecting this innocuous information was not highly offensive, and (3) Magnite was not "unjustly enriched" because there is no evidence that Magnite was enriched at Lewis's expense nor a basis for concluding such enrichment was "unjust" if it occurred.

Lewis's privacy and unjust enrichment claims fail on the merits for the

additional reason that Lewis expressly consented to Yahoo sharing his browsing information with Magnite. Lewis agreed to Yahoo's terms of service and privacy policy—and part of that agreement was that Yahoo could share information about Lewis's visits to Yahoo with "Rubicon Project," Magnite's former entity name. Data collection and sharing to which one has expressly agreed cannot, as a matter of law, be inconsistent with privacy expectations, highly offensive, or unjust.

Should there remain any doubt as to the validity of these claims, they each fail on the independent basis that the California legislature promulgated an opt-out framework for online information sharing, Lewis testified to routinely availing himself of those opportunities to opt out when he thought it was appropriate, and yet Lewis took no such steps to avoid Yahoo sharing information with Magnite. That decision is inconsistent with any reasonable expectation of privacy or conclusion that the practice is "unjust."

Finally, Lewis's pen register claim also fails for several reasons. First, there is no appellate authority endorsing his interpretation of the California pen register statute, which, if adopted, would essentially amount to a ban on the type of advertising technology that pervades the global internet. The California Court of Appeal will decide this issue as a matter of first impression in *Variety Media, LLC v. Superior Court of Los Angeles County*, No. B350578 (Cal. Ct. App., 2d Dist. Nov. 21, 2025). If *Variety Media* does not dispose of this case, then Magnite's khaos cookie in particular does not qualify as a pen register because: (1) the khaos cookie simply assigns a single pseudonymized identifier to a particular browser and does not "record" or "decode" *any* data; (2) Magnite does not "use" or "install" the khaos cookie—websites do; and (3) any purported "use" or "installation" takes place with the consent of websites, who are the "users" of Magnite's service. If, alternatively, Lewis attempts to morph his pen register claim to target a different Magnite technology (as foreshadowed by an expert report he

recently served on Magnite), then either those other technologies are not pen registers because they are not installed on anything belonging to Lewis, or they are inapposite because—as plagues his entire case—Lewis lacks any evidence that those technologies affected him in any way.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Magnite facilitates the selling of online advertising inventory.

Magnite operates the DV+ supply-side platform, a technology platform that helps website and mobile application publishers sell digital advertising space by receiving ad requests (primarily indirectly through intermediary technology) from publishers, adding or removing information from these requests, and then using this information to solicit bids for advertising space from prospective advertisers. Statement of Uncontroverted Facts ("SUF"), No. 1. Many publishers rely on advertising revenue to make their news, entertainment, and public content available to consumers for free. SUF No. 2. Online advertising space is frequently bought and sold through Real-Time Bidding ("RTB") auctions, the programmatic, millisecond-level marketplaces where prospective advertisers or their representatives (collectively, "Buyers") bid on the right to place advertisements on ad space offered by publishers or their third-party representatives (collectively, "Sellers"). SUF No. 3.

Magnite's role in the RTB auction process is to receive ad requests from Sellers and turn these into bid requests to solicit bids from potential Buyers on a publisher's available advertising space. SUF No. 4. Magnite intermediates this process. When a consumer visits a webpage or app, the Seller's chosen integration or workflow generates an "ad request" that can be delivered to Magnite (and other entities involved in RTB), which then adjusts that incoming data to comply with applicable law and the Seller's preferences to generate "bid requests" soliciting bids from Buyers. SUF No. 5. If Magnite receives bids, it submits a winning bid

response to the Seller, who may then choose to display the ad associated with that winning bid. SUF No. 6. Magnite's primary revenue model for operating DV+ is charging Sellers a percentage fee for successful ad sales. SUF No. 7.

### B. Websites cause Magnite's khaos cookie to be set, and that cookie's sole function is to assign a single pseudonymous value to the browser visiting that website.

One way that Magnite intermediates these interactions between Buyers and Sellers of online advertising is through its operation of a cookie known as the khaos cookie. SUF No. 9. A cookie is a small file generated by a web server and sent to a user's web browser. SUF No. 10. Cookies can serve a variety of purposes, depending on what a website is attempting to accomplish. SUF No. 11. Website operators choose whether and how to incorporate cookies into their websites. SUF No. 12. Websites cause Magnite's khaos cookie to be set. SUF No. 8. When a website operator has chosen to integrate the khaos cookie into its advertising operations, that website operator would include code within its own webpages that would direct a visitor's browser to attempt to store or "set" the khaos cookie within that browser. SUF No. 13. That attempt does not always succeed. SUF No. 16. The sole purpose of the khaos cookie is to assign a single pseudonymized, alphanumeric text string to a browser-and-device combination. SUF No. 17. Magnite refers to this text string as a khaos ID. SUF No. 18.

Neither a khaos cookie nor the khaos ID within it is unique to a particular individual. SUF No. 20. A single browser may be used by multiple individuals sharing the same computer, and a single individual using multiple browsers or devices over time will have different khaos IDs for each combination. SUF No. 21.

The khaos cookie sits passively in the user's browser. SUF No. 22. It does not contain, record, or decode any network routing or signaling information (such as an IP address, port numbers, or network communication metadata). SUF No.

23.[1] The khaos ID is the *only* piece of information that the khaos cookie stores or transmits. SUF No. 25.

Once set, a khaos cookie remains in the browser until it expires or the user clears it. SUF No. 26. A khaos cookie expires if the user does not visit a publisher utilizing Magnite's platform at least once in 365 days. SUF No. 27. If the khaos cookie is cleared or expired, Magnite's platform will attempt to set a new cookie upon the browser's next visit to a participating publisher website. SUF No. 28. Inactive khaos IDs stored in Magnite's databases are automatically deleted after 28 days of inactivity. SUF No. 29.

Once a khaos ID is created, Magnite may use that value for two primary functions (SUF No. 31):

- <u>ID Matching</u>: Magnite maintains match tables tracking pseudonymous identifiers used by third parties across the ad tech ecosystem. If an ad request permits targeted advertising, Magnite checks its match tables to locate matching Buyer identifiers and adds the relevant Buyer identifier in outgoing bid requests, making it easier for the Buyers to understand which browser and device combination is available to view an ad impression. SUF Nos. 32–33.

- <u>Audience Segments</u>: Segments are collections of pseudonymous identifiers believed to share common traits (e.g., interest in basketball or age 18–34). Magnite receives segments from publishers, advertisers, and third-party data providers mapped via match tables, the corresponding segments are composed of khaos IDs. If a khaos ID or matched third-party ID matches a segment, Magnite may insert a unique "deal" identifier into the bid request. SUF Nos. 34–35.

---

[1] There is no genuine dispute of material fact on this issue. Plaintiff's expert witness conceded at his deposition that there is no evidence that the khaos cookie contains, records, or decodes any network routing or signaling information. Deposition of Serge Egelman, 190:8-11. Magnite's expert is in accord. Final transcripts for the depositions of Serge Egelman and Ron Schnell have not yet been prepared; both will be submitted as supporting evidence once created.

### C. Magnite has virtually no information that can be associated with Lewis.

There is no evidence that Magnite has ever received or stored any sensitive information about Lewis. SUF No. 36. And it is undisputed that Magnite has not collected any personally identifying information—such as name, phone number, or email address—from Lewis. SUF No. 37. Indeed, Magnite never collects personally identifying information about anybody. SUF No. 38.

Because Magnite does not have Lewis's personal information in its records, Magnite cannot independently locate any information in its records related to Lewis. SUF No. 39. Magnite can only find data associated with an individual if that individual were to locate their own pseudonymous advertising identifiers and send them to Magnite. SUF No. 40. Although Magnite requested Lewis's digital identifiers during discovery, Lewis failed to provide them and never supplemented his discovery responses. SUF No. 41. Magnite is aware of only two khaos IDs associated with Lewis and became aware of these IDs only when Lewis moved for class certification and included those IDs in Exhibit 3 to the Declaration of Ian Mercado. SUF Nos. 42–43. *See* Dkt. 80-10, 80-13. Those two khaos IDs are MOD4S8VQ-S-C59G (the "MOD4 ID") and LY4V0YQQ-P-DCSH ("the LY4 ID"). SUF No. 42.

<u>The MOD4 ID (MOD4S8VQ-S-C59G)</u>: Magnite has no records associated with the MOD4 ID, including no ad requests, no audience segments, and no third-party identifiers. SUF No. 44. Exhibit 3 suggests that Magnite attempted to set a khaos cookie in Lewis's Microsoft Edge browser on his desktop computer and assign the MOD4 ID as a khaos ID. SUF No. 45. Specifically, Exhibit 3 shows the MOD4 ID under "Response Cookies" but not under "Request Cookies," which indicates only that Magnite attempted to set a cookie to assign this ID, not that it was set. SUF No. 46. Magnite's review of Exhibit 3 to the Mercado declaration

and its own records suggests that Magnite's platform attempted to set a khaos cookie and assign the MOD4 ID on April 24, 2026, well after the complaint was filed in this action, but was unable to do so. SUF Nos. 46–48. There is no other indication that Magnite was able to set the cookie, and Magnite has no record of this khaos ID. SUF No. 48. Because Microsoft Edge blocks third-party cookies by default, the reason the cookie was not set is probably because the Edge browser blocked it. SUF No. 49. Accordingly, the undisputed evidence is that Magnite never set the cookie associated with the MOD4 ID. SUF No. 50.

The LY4 ID (LY4V0YQQ-P-DCSH): Lewis also disclosed his association with the LY4 ID. SUF No. 51. Magnite's records reflect that the LY4 ID was first assigned sometime on or before July 2, 2024. SUF No. 52. This is the only other khaos ID associated with Lewis in evidence, and Magnite has only limited information tied to this khaos ID. SUF Nos. 42, 54–59, 64. Magnite searched both its match tables and its ad request logs for information associated with the LY4 ID. SUF No. 53. Magnite's match tables show that Magnite has no record of the khaos ID being associated with any segments and that this khaos ID has been associated with only three third-party IDs in Magnite's user ID match table. SUF Nos. 54–55. Magnite's search of its records of ad requests that publishers sent to Magnite show that the only publisher that sent ad requests containing the LY4 ID is Yahoo. SUF No. 56. The ad requests reflect only that a device suspected to be in the United States visited Yahoo from the Microsoft Edge browser on a device using the Windows 10 operating system. SUF No. 57. There is no evidence that Magnite has ever received any IP address, any information about any particular webpage views or conduct occurring on Yahoo.com, or any information that identifies Lewis or could be used to do so. SUF No. 59.

The Yahoo ad request logs also reflect only five ads being delivered to Lewis's browser, all of which occurred on Yahoo.com domains. SUF No. 60.

Magnite's total revenue associated with these ads was $0.006—less than one penny. SUF No. 61. There is no evidence that these ads were displayed to Lewis based on any targeting or any information associated with his khaos ID. SUF No. 63. There is no evidence that Magnite possesses or has ever possessed sensitive information, identifying information, or audience segment information associated with Lewis's known khaos ID. SUF No. 64.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). To do so, the movant "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish the existence of material disputes of fact that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). This requires more than "a scintilla of evidence" in support of its position; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003).

## IV. ARGUMENT

### A. Lewis lacks Article III standing.

Lewis does not have standing to bring his claims. To establish Article III standing, a plaintiff must identify, among other things, a "concrete" injury in fact. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A mere statutory violation alone is not enough; "standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *see also Popa*, 153 F.4th at 792 ("*TransUnion* clearly cautions courts not to 'treat an injury as "concrete" for Article III purposes based only on Congress's say-so…."'); Order Denying Plaintiffs' Motion for Class Certification at 18, ECF No. 119.

In *Popa*, the Ninth Circuit held that the plaintiff lacked Article III standing where she could not identify any "embarrassing, invasive, or otherwise private information" collected about her. 153 F.4th at 791. There, Microsoft's session-replay technology had allegedly tracked the plaintiff's interactions with a pet supplies website—including her product preferences and street name—but the court concluded this was not the kind of information traditionally actionable at common law. *Id.* at 791–92. The Ninth Circuit analogized the tracking to "a store clerk's observing shoppers in order to identify aisles that are particularly popular," rather than the kind of surveillance that invades a "sensitive sphere." *Id.* District courts have since consistently applied *Popa* to dismiss data privacy claims lacking a showing that the information at issue was truly private. *See, e.g.*, *Malko v. GNC Holdings, LLC*, 2026 WL 2218133, at *3 (C.D. Cal. July 29, 2026); *Torres v. SeatGeek, Inc.*, 2026 WL 1495202, at *4 (N.D. Cal. May 28, 2026); *Schallert v. Laird Superfood, Inc.*, 2026 WL 1707585, at *3–5 (C.D. Cal. June 5, 2026); *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *3–4 (C.D. Cal. Dec. 29, 2025) (collecting additional cases).

The undisputed evidence here demonstrates that Lewis's case falls squarely

within—and is in fact far weaker than—*Popa*. In *Popa*, Microsoft at least collected the plaintiff's product preferences, browsing interactions, and partial street address. *Popa*, 153 F.4th at 787. Here, Magnite possesses far less. The undisputed evidence establishes the following about Magnite's records associated with Lewis:

*No personally identifying information.* Magnite never received Lewis's name, email address, phone number, or any other personally identifying information. SUF No. 37. The only identifiers in Magnite's records attributable to Lewis are pseudonymous alphanumeric strings—opaque text values like "LY4V0YQQ-P-DCSH" that do not contain or resolve to a real-world identity. SUF Nos. 19–20, 42. The khaos cookie "cannot be treated as a reliable identifier of a particular person." SUF No. 20.

*No IP addressing data and no browsing history.* The ad request logs associated with Lewis's khaos ID do not contain IP addresses, any other form of networking addresses, full URLs, search terms, or any information that could identify Lewis or be used to do so. *See supra* Part II.C. The "IPV4_Address" column shows only "-1" and the "IPV6_Address" column shows only "0:0:0:0:0:0:0:0" for all entries, which are null values confirming that no IP address data was collected or recorded. SUF No. 58.

*No audience segments and no profile.* Magnite's records show that Lewis's khaos ID was not associated with any audience segments, meaning Magnite did not categorize Lewis based on interests, demographics, or any other personal attribute. SUF No. 54. The khaos ID was associated with only three pseudonymous third-party identifiers in Magnite's match tables. SUF No. 55. There is no "profile" of Lewis detailed or otherwise. SUF No. 64.

*One unsensational website.* The only record of a publisher having sent any ad requests containing Lewis's khaos ID is Yahoo. SUF No. 56. The ad requests reveal only that *a device* in the United States running the Windows 10 operating

system visited Yahoo from the Microsoft Edge browser. *See supra* Part II.C. These requests do not reveal what the device searched for, what content it viewed, or anything else about the device's activities—just the bare fact that a browser associated with that particular khaos ID visited one of the most popular general-interest websites on the internet.

*Lewis himself had to identify the connection.* Magnite could not independently locate any information in its records related to Lewis, because Magnite does not have Lewis's personal information. SUF No. 39. The connection was established only when Lewis moved for class certification and disclosed, through the Mercado Declaration, which pseudonymous identifiers were associated with his browser. SUF No. 43. In other words, Magnite never knew—and but-for this litigation never would have known—that any of its records related to Lewis.

This record is fatal to Lewis's standing under *Popa* and this Court's own analysis at class certification confirms as much. As the Court already found, Lewis cannot show that Magnite collected "any particularly sensitive information about [him], or any of [his] PII (such as name, phone number, or email address)." ECF No. 119 at 11 (quoting *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *8 (C.D. Cal. Sept. 9, 2024)). "Without the information that Mr. Lewis provided, there is no evidence that Defendant could have identified Mr. Lewis." *Id.* Nothing in the record relevant to the analysis has changed. If a defendant's possession of a consumer's product preferences and partial street address does not satisfy *Popa*, then a defendant's possession of an opaque alphanumeric string reflecting that a browser visited Yahoo.com certainly does not either. The Court should grant summary judgment in favor of Magnite on all of Lewis's claims. *See In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1028 (N.D. Cal. 2013) (granting summary judgment where plaintiffs lacked Article III standing to pursue their claims).

**B. Lewis cannot prove the elements of his invasion of privacy and unjust enrichment claims.**

The same evidentiary void that defeats Lewis's Article III standing—the absence of embarrassing, invasive, or otherwise private information in Magnite's possession, *supra* Part IV.A—is equally fatal to his privacy and unjust enrichment claims. To maintain a claim for constitutional or tortious invasion of privacy, Lewis must prove both a reasonable expectation of privacy and highly offensive conduct. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). And, as already discussed, to meet the evidentiary threshold for the first element, Lewis must identify evidence showing that Magnite collected information about him that is "embarrassing, invasive, or otherwise private." *Popa*, 153 F.4th at 791; *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) (claim for invasion of privacy requires plaintiff to establish that defendant collected "sensitive" and "personal" information about plaintiff). Unjust enrichment requires evidence that "the defendant [(1)] received and [(2)] unjustly retained a benefit [(3)] at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).

As the central basis for meeting the "highly offensive" and "unjust" elements of his privacy and unjust enrichment claims, Lewis alleged that "data collected by Magnite has enabled it to build a profile of Mr. Lewis that is so detailed that it is essentially deanonymized." SAC ¶ 120. The evidence has not borne this out. There is no profile of Lewis, detailed or otherwise. SUF No. 64. The information Magnite possesses merely reflects that someone in the United States visited Yahoo from the Microsoft Edge browser on a device using the Windows 10 operating system. SUF No. 57. On that basis, this case is identical to *Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *8 (C.D. Cal. Dec. 24, 2024), *appeal dismissed*, 2026 WL 2164166 (9th Cir. Apr. 29, 2026) where the court granted

summary judgment after the plaintiff failed to produce evidence that the defendant collected "any information—sensitive or otherwise." Here, because *both* Lewis' privacy and unjust enrichment claims require Lewis to identify private or sensitive information that Magnite collected, and the undisputed record confirms that no such information exists, summary judgment is appropriate as to both of these claims. *Id.*; *In re Palmdale Hills Prop., LLC*, 577 B.R. 858, 865 (C.D. Cal. Bankr. 2017) (granting summary judgment on unjust enrichment since the party "present[ed] no evidence" that the other "received an unjust enrichment" from the other).

**C. Lewis expressly consented to the sharing of his information with Magnite by agreeing to Yahoo's terms, defeating all of his claims.**

Summary judgment as to all of Lewis's claims is appropriate for the additional reason that Lewis expressly consented to the sharing of the only information in Magnite's possession. Consent is fatal to each of Lewis's remaining claims in this case. *Sisti v. Bosley Inc.*, 831 F. Supp. 3d 979, 990 (C.D. Cal. 2026) (dismissing plaintiff's privacy claims because he manifested assent to the data disclosures at issue); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) ("There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected."); Cal. Civ. Code § 3515 ("A person who consents to an act is not wronged by it.").

The only information in Magnite's possession "about" Lewis concerned his visits to Yahoo.com. In 2018 (and thereafter), Lewis expressly agreed that Yahoo.com could share information with Magnite. There is no evidence that he ever withdrew that consent.

Lewis has maintained a Yahoo.com email account since approximately 2000. SUF No. 65. There are various public records reflecting that Yahoo requires

its users to agree to Terms and a Privacy Policy to use its services.[2] Thus, Lewis could not continue operating his Yahoo.com account today (as he testified he does) unless he accepted Yahoo's updated Terms of Service and Privacy Policies. SUF Nos. 66–67. Yahoo's 2018 Privacy Policy, as well as Yahoo's 2023 Privacy Policy (in effect the day this lawsuit was filed), linked to a "Third Parties" page that disclosed that Yahoo shared information about its users' Yahoo interactions with "Rubicon Project," Magnite's former entity name. SUF Nos. 68, 70. On that same page, Yahoo provided a link to the Rubicon Project's website and encouraged users to visit the website to review its practices and available controls, including opt-outs. SUF No. 69.

Lewis therefore necessarily consented to Magnite's receipt of information related to Lewis's activity on Yahoo.com. Because he consented to this information sharing, he cannot now claim that Magnite's receipt or use of it is an invasion of privacy, unjust, or a violation of CIPA. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 8–9 (9th Cir. 2018) (affirming finding of consent because "[a] reasonable person viewing those disclosures would understand that [defendant] maintains the practices of (a) collecting its users' data from third-party sites and (b)

---

[2] One such record reflects that, in 2018, Yahoo.com account holders received pop-up notifications informing them of Yahoo.com's "New Privacy and Terms." Declaration of Robert Gurwin ¶ 7, *Baker v. Yahoo Inc.*, Case No. 1:25-cv-2797 (S.D.N.Y. Jan. 30, 2026), Dkt. 74. To proceed to their email, users were required to review the full notification, informing them of the new Terms of Service and Privacy Policy linked to the notification. *Id.*; *cf. Sherman v. Yahoo! Inc.*, 2015 WL 5604400, at *2 (S.D. Cal. Sept. 23, 2015) ("When a new user registers for a Yahoo account, they must agree to abide by Yahoo's terms of service."); *United States v. Williamson*, 2023 WL 4056324, at *2 (M.D. Fla. Feb. 10, 2023) (Mar. 21, 2023) ("As with many, if not all, ESPs, Yahoo requires its customers to agree to terms of service in order to use its products."), *report and recommendation adopted*, *subsequently aff'd*, 2026 WL 1876371 (11th Cir. June 30, 2026). Those documents expressly stated that "[i]f you have a[] Yahoo . . . account, you will need to agree to [these Terms/this Privacy Policy]." SUF No. 66. Because he testified to using Yahoo email since 2000, there can be no dispute that Lewis saw this pop up.

later using the data for advertising purposes"); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1056–57 (N.D. Cal. 2025) (finding consent to the use of third-party cookies where the privacy policy disclosed "that it allows partners to use cookies on the Website, that specific analytics and personalization cookies would be used, and that cookie identifiers and other similar data connected to the use of the site could be collected and shared"). Summary judgment is warranted on this basis as well. *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) ("Plaintiffs' consent . . . bars their common-law tort claims and their claim for invasion of privacy under the California Constitution."), *aff'd*, 745 F. App'x 8 (9th Cir. 2018).

### D. Lewis's failure to use available opt-out mechanisms provides an alternate ground for summary judgment on his privacy and unjust enrichment claims.

To sustain an invasion of privacy claim, a plaintiff must show that they "have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037–38 (N.D. Cal. 2014) (citation omitted); *Peterson*, 164 Cal. App. 4th at 1593. Similarly, conduct is not unjust if a consumer had means to avoid it. Cf. *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (conduct is unfair only where injury is one "that consumers themselves could not reasonably have avoided").

Here, Lewis could have taken steps to prevent Yahoo from sharing information with Magnite but chose not to do so. Under the framework for targeted advertising set forth in the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.*, consumers have the right to opt out of sharing their personal information, including for advertising purposes, and businesses that receive an opt-out must not sell or share that consumer's personal information. Cal.

Civ. Code § 1798.120. The CCPA's provisions are "highly relevant" when determining whether consumers have a reasonable expectation of privacy "because they provide Californians with the reasonable expectation that they will have some control over their data and necessarily shape users' expectations about their ability to opt out of websites' collection of data for profit." *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 916 (N.D. Cal. 2026).

There is no evidence in the record to suggest that Magnite fails to adhere to these rules or honor opt-outs when received. SUF No. 72. To the contrary, the record includes detailed testimony from Magnite confirming the multiple ways it honors consumer opt-outs and other privacy signals. SUF No. 73. And Lewis knew about these rights. He provided written testimony that, "when given the choice upon visiting a website, as a general practice [Lewis] typically (but not always) rejects all cookies, unless needed to utilize the website and/or input data to be saved." SUF No. 74. This is consistent with his oral testimony, in which he further confirmed that he selectively decides on a website-by-website basis whether to agree to "cookies." SUF No. 75.

Where the California legislature has provided a mechanism for consumers to opt out information sharing for advertising, and Lewis exercised his opt out rights in other circumstances, his failure to opt out of Yahoo's information sharing with Magnite is fatal to his claim. The Court should grant summary judgment on this basis as well.

### E. Lewis cannot prove his unjust enrichment claim because there is no evidence that Magnite benefited from Lewis's information, let alone at his expense.

To prevail on an unjust enrichment claim based on a defendant's collection of a plaintiff's data, the plaintiff must prove that his "data in particular enriched" the defendant. *Doe v. ERC*, 2025 WL 2983143, at *1 (N.D. Cal. Oct. 17, 2025) (dismissing unjust enrichment claim where plaintiff lacked such evidence).

Additionally, the plaintiff must show that, as a result of the collection, the defendant incurred an "expense." *Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, 2021 WL 2188138, at *14 (E.D. Cal. May 28, 2021) (granting summary judgment for unjust enrichment claim since "[u]njust enrichment, at bottom, is an appropriate claim only when a defendant obtained a benefit *from* a plaintiff," and therefore requires plaintiff to have incurred an "expense") (emphasis in original). Finally, the data collection must, of course, be "unjust." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d at 1038.

Here, there is no evidence that Magnite received a benefit, specifically, from data pertaining to Lewis. The only evidence concerning any Magnite revenues reflects that Magnite may have charged less than a penny for displaying ads on the browser associated with the LY4 identifier. SUF No. 61. But there is no evidence that those ads were displayed *because of* Magnite's possession of any information about the LY4 identifier. SUF No. 63. Nor is there evidence that Magnite was "enriched" (i.e. profited). SUF No. 62. There is no reasonable basis on which a factfinder could conclude that the fraction-of-a-penny of revenue that Magnite received was the direct result of having collected information pertaining to Lewis's browser as opposed to revenue Magnite generated as a result of providing its platform and the other non-Lewis-specific services it offers its customers.

Nor is there evidence that any "benefit" Magnite received was at Lewis's "expense." To the contrary, Lewis admitted that targeted advertising resulting in lower product cost would be "something [he] would benefit from." SUF No. 76. All of the purported harm that Lewis testified to having suffered was based on allegations of mass sensitive-data collection that ultimately proved to be untrue. Schottlaender Decl. Ex. A-7, Lewis Dep. 96:24-25, 97:1-15 (complaining about Magnite's collection of Lewis's "physical address, residence, my date of birth, E-mail or contact information or anything you can utilize to contact with me without

my permission"). There is no evidence that Lewis suffered any harm on the basis of Magnite's collection of the limited, pseudonymous data that he actually proved. The Court should therefore grant summary judgment as to Lewis's claim on this basis as well. *See In re Palmdale Hills Prop., LLC*, 577 B.R. at 865.

**F. Unjust enrichment is not an independent cause of action that can proceed while Lewis is also seeking money damages.**

*First*, unjust enrichment is not an independent cause of action in California. *Hooked Media Group, Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 336 (2020) (affirming summary judgment "because California does not recognize a cause of action for unjust enrichment"); *Talavera v. Glob. Payments, Inc.*, 670 F. Supp. 3d 1074, 1110–11 (S.D. Cal. 2023) (granting summary judgment on same basis). Lewis's unjust enrichment claim survived at the motion to dismiss stage because the Court construed his claims as quasi-contractual. Dkt. 55, at 23 (collecting cases). At the summary judgment stage, the Court should reach a different result because there is no evidence that Magnite "failed to make restitution of or for property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor," as alleged in the SCAC, *id.* at 24 n.2 (quoting the source notes in 55 Cal. Jur. 3d Restitution § 2), and as would be necessary to support a quasi-contractual theory of unjust enrichment. Indeed, at bottom, in order to have a viable unjust enrichment claim, there must be evidence of some enrichment. *ESG*, 828 F.3d at 1038. There is none here. *See supra* Part IV.E.

*Second*, Lewis cannot seek equitable relief under an unjust enrichment theory where, as here, he also seeks monetary damages. *Sneider v. Woodside Credit, LLC*, 2025 WL 3050221, at *10–11 (C.D. Cal. July 10, 2025). At this stage, unlike the motion to dismiss stage where the Court allowed Lewis to plead in the alternative, Lewis must establish "that he lacks adequate legal remedies to

warrant the equitable remedies he seeks for his unjust enrichment [claim]." *Id.* at *11. Otherwise, the Court no longer has equitable jurisdiction over such claims. *Id.* This is exactly the situation the *Sneider* court faced, and it dismissed this claim at summary judgment. Here, Lewis continues to assert money damages for his CIPA claims such that his continued claim for unjust enrichment must end.

### G. Magnite is entitled to summary judgment on Lewis's pen register claim.

As explained above, *see supra* Part IV.C, the Court should grant summary judgment in favor of Magnite on Lewis's pen register claim under California Penal Code § 638.51 because he consented to Magnite's data collection via Yahoo. This claim is also subject to summary judgment for the following additional reasons: (1) California's pen register laws do not apply to online advertising technologies; (2) the khaos cookie[3] does not "record" or "decode" any data; (3) it is websites—not Magnite—who "use" or "install" the khaos cookie; and (4) the khaos cookie is "used" or "installed" with the consent of websites, who are the "users" of Magnite's service.

#### 1. Online advertising technologies are not pen registers.

The Court previously held that it could not conclude as a matter of law that California Penal Code § 638.51 does not apply to the routine collection of metadata on a commercial website. *See* Order Denying Motion to Dismiss, ECF No. 55 at 21–22. Since that ruling, a California Court of Appeal agreed to hear this precise question in *Variety Media, LLC v. Superior Court of Los Angeles County*, No. B350578 (Cal. Ct. App., 2d Dist. Nov. 21, 2025). That case squarely presents the issue of whether CIPA's pen register provisions apply to the routine collection

---

[3] The Complaint refers to the "Rubicon Tracker" as the actionable "pen register," but this does not describe an identifiable product or service of Magnite's. *See, e.g.*, Dkt. 61 at 3. At class certification, Plaintiff used the term Rubicon Tracker interchangeably with "khaos ID."

of metadata in the context of ordinary internet browsing on commercial websites. Should the California Court of Appeal hold that such conduct does not implicate the pen register statute prior to the Court's ruling on summary judgment, this would foreclose Lewis's pen register claim under any theory. *See Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (recognizing a California Court of Appeals decision, in the absence of a California Supreme Court decision on the same issue, as the binding statement of California law).[4] This Court should therefore adopt that decision in granting summary judgment in Magnite's favor if it issues before the *Variety Media* ruling.

**2. The khaos cookie is not a pen register because it does not record or decode data.**

If *Variety Media* does not foreclose Lewis's claim, then the Court should still determine that Magnite's technology, specifically, fails to qualify as a pen register. A "pen register" must "record[] or decode[] dialing, routing, addressing, or signaling [("DRAS")] information." *See* Cal. Penal Code § 638.50(b). Here, it is undisputed that the khaos cookie simply holds a khaos ID and does not *collect* or *record* any other data. SUF Nos. 24–25.

Instead, the khaos cookie sits passively in the user's browser, where it generates and holds a single unique identifier assigned by Magnite. SUF Nos. 17,

---

[4] In addition, the California legislature is currently considering Senate Bill 690, which if enacted would expressly amend CIPA to eliminate a private cause of action for pen register claims based on "conduct occurring on an internet website, online application, or mobile application." S.B. 690, 2025–2026 Reg. Sess. § 1 (Cal. amended July 2, 2026). If enacted, the bill would retroactively eliminate Plaintiff's pen register claim in this case. *See id.* § 1 (amending section 637.2 to read that "[a]n action against a private actor for a violation of Section 638.51 alleged to arise from conduct occurring on an internet website, online application, or mobile application may be brought under this section only by the Attorney General[]" and that the amendment shall "apply retroactively to any pending claim in an action commenced within two years before the operative date of that legislation").

22. The khaos cookie does not collect or record data; it does not monitor network traffic, intercept communications, or log any data whatsoever. SUF No. 24. Instead, like a barcode, it functions as a static identifier—nothing more—and its existence or value is inconsequential to the routing of network communications between the user and a website. SUF No. 19.

To the extent that Magnite "collected" or "recorded" data about Lewis, this was through ad request logs Magnite received from Yahoo, not through the khaos cookie. Information that Magnite receives through ad requests is not collected through the khaos cookie or directly by Magnite at all; it is Yahoo (the publisher) that collects and transmits that information to Magnite. SUF No. 30. In less technical terms, websites can choose to include the "barcode" value held by the khaos cookie with their ad requests when they send them to Magnite, but the khaos cookie does not itself send that information to Magnite, nor does it send any other information about a user's visit to a website. *Id.* The distinction is critical: a passive identifier that is *read by* third parties is fundamentally different from a device that *records or decodes* information. *In re Meta Android Priv. Litig.*, 2026 WL 1279416, at *8 (N.D. Cal. May 11, 2026) (dismissing pen register claim because, like "unique device identifiers," the "browser identifiers," in Meta's _fbp cookie did not fall within the scope of the act).

Because the khaos cookie does not record or decode DRAS information—or any information at all—it is not a "pen register" as a matter of law. *See id.* (*Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *6 (N.D. Cal. Jan. 12, 2026); *Bradshaw v. Lowe's Cos.*, 2025 WL 3171740, at *5 (S.D. Cal. Nov. 12, 2025)).

**3. Magnite did not "install" or "use" the khaos cookie.**

California Penal Code § 638.51(a) prohibits a person from "install[ing] or us[ing]" a pen register "without first obtaining a court order." Even if the khaos cookie could somehow constitute a pen register, Magnite is not the entity that

"installed" or "used" it. Instead, the undisputed evidence establishes that *websites*—not Magnite—install and use the khaos cookie on their web properties. SUF Nos. 8, 12–14. As a result, there is no evidence that Magnite installed the LY4 or MOD4 cookies found on Lewis's browser. SUF Nos. 14, 46, 50, 52–54.

Magnite provides its advertising technology platform to publisher customers who independently choose whether to integrate Magnite's code on their websites. SUF No. 12. It is the publisher—the website operator—that decides when, where, and how to deploy the code that leads to attempts to set the khaos cookie in a visitor's browser. SUF No. 13. Magnite does not control when a user visits a publisher's website, does not control the publisher's decision to include Magnite's code on any particular page, and does not itself install anything on any user's device. SUF No. 14.

These distinctions are legally significant. The statute's prohibition is directed at the entity that "install[s] or use[s]" the pen register. Cal. Penal Code § 638.51(a). Where it is the website—not Magnite—that chooses to place code on its pages so that the khaos cookie can be set on a visitor's browser, and then chooses the data to be sent via ad request, it is that website—not Magnite—that "installed" or "used" the khaos cookie. *See* Cal. Penal Code § 638.51(a); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024) (holding that a website operator was the one who "installed" a pen register because "[e]ven if third parties 'developed and used the [Tracker] software,' it is alleged that Fandom [the website operator] was responsible for integrating the third-party script into its own website").

**4. Yahoo consented to setting the khaos cookie, barring Lewis's pen register claim.**

There is no liability for the use of a pen register by the provider of an electronic communication service where the provider has obtained "the consent of

the user of that service." Cal. Penal Code § 638.51(b)(5). Here, Magnite is exempt from liability under Section 638.51(b)(5) because the khaos cookie is installed with "the consent of the user of that service."[5] Cal. Penal Code § 638.51(b)(5). The "users" of Magnite's advertising service are its *customers*—the publishers and advertisers who subscribe to and utilize Magnite's RTB platform to send and receive electronic communications with Magnite acting as the intermediary. SUF No. 4. Lewis may argue that he is among the "users of that service," but end-user consumers like Lewis are not the ones using Magnite's electronic communications service to communicate bid information. *Id.* That role is plainly filled by buyers and sellers of advertising inventory. And it is undisputed that those parties consent to Magnite's installation of Magnite's code on their websites by virtue of their agreement to Magnite's seller terms. SUF No. 15. And they affirmatively integrate Magnite's code—including the functionality that may set the khaos cookie—on their own web properties, thereby manifesting their consent to its deployment. SUF

---

[5] To the extent that the Court concludes that only "electronic communications services" may install pen registers with consent, Magnite likely qualifies under California's broad definition. CIPA defines an "electronic communication service" as "a service that provides to its subscribers or users the ability to send or receive electronic communications, including *any service that acts as an intermediary in the transmission of electronic communications*, or stores electronic communication information." Cal. Penal Code § 1546(e) (emphasis added). Magnite operates an RTB platform where it acts as an intermediary in the transmission of electronic communications between its subscribers—publishers and advertisers. SUF No. 1; *see also Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 n.2 (Cal. Super. Ct. Jan. 20, 2026) (dismissing a pen register claim against a website operator because "[g]iven the breadth of the statutory definition [in Cal. Penal Code § 629.51(a)(2)], Defendant's website is an electronic communication service"); *Casillas v. BOP LLC*, 2025 WL 2161288 (Cal. Super. Ct. June 18, 2025) (same); *Levings v. Open Text Corp.*, 2024 WL 5672082, at *4 (Cal. Super. Ct. Sept. 3, 2024) (same); *Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 WL 4034985, at *4 (Cal. Super. Ct. Dec. 10, 2025) (dismissing a pen register claim because "[t]he broad definition of 'electronic communications' reasonably indicates that an electronic communications service provider includes website operators").

No. 12–13, 15. Because Magnite has obtained the consent of the "users" of its service (i.e., its publisher and advertiser customers), its use of the khaos cookie is exempt under § 638.51(b)(5).

**5. A pen register claim based on Magnite's JavaScript API or server-to-server transmissions is also subject to summary judgment in favor of Magnite.**

Should Lewis radically alter his pen register theory to focus on either Magnite's "JavaScript API" or "server-to-server" transmissions,[6] neither is viable because (1) they do not involve the installation of *anything* (whether a pen register or otherwise) on Lewis's device or browser, and (2) third-party websites consent to the implementation of those technologies, and (3) Lewis has no evidence that either of these technologies transmitted his DRAS as required to sustain a pen register claim, there is no evidence that these technologies collect DRAS.

*First*, neither the "JavaScript API" nor "server-to-server transmissions" involve an "installation" on *Lewis's* device or browser; they concern functionalities purely between third-party websites and Magnite. SUF No. 77. "Without alleging that Defendant installed software *on Plaintiff's device or browser* that collected incoming contact information to Plaintiff's device, Plaintiff has not alleged anything above and beyond how the internet normally works." *Aviles v. Liveramp, Inc.*, 2025 WL 487196, at *3 (Cal. Super. Ct. Jan. 28, 2025) (emphasis added) (dismissing analogous pen register claim); *see also Heiting v. HP Inc.*, 2025 WL 2993673, at *4 (Cal. Super. Ct. Aug. 1, 2025) (similar).

*Second*, even if the "JavaScript API" and/or server-to-server transmissions could be considered "pen registers" installed on third party websites (but not on website visitors devices or browsers), there is no reasonable dispute that third party

[6] Plaintiff has never articulated these theories in any filing with this Court. Magnite addresses these because they were described for the first time in an expert report produced to Magnite on July 17, 2026.

websites choose to implement Magnite code on their websites, thereby consenting to any installation and precluding liability. *Supra*, Part IV.G.

*Third*, there is no evidence that these methods collected Lewis's DRAS as required to sustain a pen register claim.[7] In the LY4-related log file produced in this litigation, MAGNITE_0001135, the "IPV4_Address" column shows only "-1" and the "IPV6_Address" column shows only "0:0:0:0:0:0:0:0" for all entries associated with Lewis. SUF No. 58. Even untethered to his theories about the khaos cookie, Lewis is completely without evidence that Magnite ever collected any of Lewis's DRAS—not even IP addresses—such that Lewis's pen register claim cannot survive summary judgment.

## V. CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to Magnite on all of Lewis's pending claims and dismiss this case with prejudice.

---

[7] The expert report disclosed by Lewis in this case also references a Magnite Mobile SDK. There is no evidence in this case that Magnite received any data about Lewis through any mobile application that integrated Magnite's Mobile SDK. SUF No. 78. Any pen register theory associated with Magnite's Mobile SDK is therefore also destined to fail.

**Certificate of Compliance**

The undersigned counsel of record for Magnite, Inc. certifies that this brief is 25 pages, which complies with the page limit outlined in Judge Court's standing orders in this matter, ECF No. 12, Section 6(c), superseding the word limit outlined in Local Rule 11-6.1.

DATED: August 14, 2026 **ASHURST PERKINS COIE US LLP**

By: */s/ Nicola Menaldo*

Nicola C. Menaldo, *pro hac vice*
nicola.menaldo@ashurstperkins.com
Anna Mouw Thompson, *pro hac vice*
anna.thompson@ashurstperkins.com
Jordan C. Harris, *pro hac vice*
jordan.harris@ashurstperkins.com
Anna Thompson-Lanners, *pro hac vice*
anna.thompson-lanners@ashurstperkins.com
**ASHURST PERKINS COIE US LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: 206.359.8000
Facsimile: 206.359.9000

Hayden M. Schottlaender, *pro hac vice*
hayden.schottlaender@ashurstperkins.com
**ASHURST PERKINS COIE US LLP**
2699 Howell Street, Suite 700
Dallas, Texas 75204-5810
Telephone: 214.965.7700
Facsimile: 214.965.7799

Aaron Haberman, *pro hac vice*
aaron.haberman@ashurstperkins.com
**ASHURST PERKINS COIE US LLP**
700 Thirteenth Street N.W., Suite 800
Washington, DC 20005-3960
Telephone: 202.654.6200
Facsimile: 202.654.6211

Alisha C. Burgin, Bar No. 286269
alisha.burgin@ashurstperkins.com
Marlenee Blas Pedral, Bar No. 355199
marlenee.blaspedral@ashurstperkins.com
**ASHURST PERKINS COIE US LLP**
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Defendant Magnite, Inc.