Nicola C. Menaldo, *pro hac vice*
nicola.menaldo@ashurstperkins.com
ASHURST PERKINS COIE US LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

Alisha C. Burgin, Bar No. 286269
alisha.burgin@ashurstperkins.com
ASHURST PERKINS COIE US LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067-1721
Telephone: +1.310.788.9900
Facsimile: +1.310.788.3399

Attorneys for Defendant Magnite, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EDWARD LEWIS and PATRICIA CASTILLO, individually and on behalf of similarly situated individuals,

Plaintiffs,

v.

MAGNITE, INC.,

Defendant.

Case No. 2:25-CV-03448-MWC-SSC

**DECLARATION OF JEFF WIELAND IN SUPPORT OF DEFENDANT MAGNITE, INC.'S MOTION FOR SUMMARY JUDGMENT**

I, Jeff Wieland, declare as follows:

1. I am currently employed by Magnite, Inc. ("Magnite") as Principal Technical Product Manager. I make this declaration based on personal knowledge. If called as a witness, I could and would competently testify to the facts set forth herein.

2. I am a Montana resident and have lived in the state since 2019. I currently reside in Gallatin County, Montana.

3. I have been employed by Magnite since September 2017. Magnite's predecessor entity was Rubicon Project. In my role, I am responsible for user syncing, audience targeting, and privacy.

4. I submit this declaration in support of Magnite's Motion for Summary Judgment in the matter of *Lewis v. Magnite*, *Inc.*, Case No. 2:25-cv-03448-MWC-SSC, pending before the United States District Court for the Central District of California.

5. I understand that this litigation concerns Magnite's "khaos ID" and its use to assist advertisers in the real-time bidding ("RTB") process. I am familiar with the operation of the khaos cookie, which creates and stores the khaos ID, the information Magnite receives and processes in the RTB process, and Magnite's measures to honor consumer privacy choices and preferences.

6. Online advertising space is frequently bought and sold through Real-Time Bidding ("RTB") auctions, the programmatic, millisecond-level marketplaces where prospective advertisers or their representatives (collectively, "Buyers") bid on the right to place advertisements on ad space offered by publishers or their third-party representatives (collectively, "Sellers").

7. Magnite operates the DV+ supply-side platform, a technology platform that helps website and mobile application publishers sell digital advertising space on their websites by receiving ad requests (primarily indirectly through

intermediary technology) from publishers, adding or removing information from these requests, and then using this information to solicit bids for advertising space from prospective advertisers who wish to display ads on the publisher's website. This process is known as the RTB auction process.

8. Magnite assigns pseudonymous, alphanumeric text strings to web browser and device combinations in order to perform its function in the RTB auction process. Magnite's "khaos ID" is the pseudonymous identifier Magnite uses to help facilitate advertising on publishers' websites. The khaos ID is an alphanumeric string of text that Magnite uses to pseudonymously identify a given device and browser combination. Khaos IDs are stored in a cookie called "khaos," and the "khaos" cookie is stored in a device's browser. The khaos ID is specific to a browser and device combination, not a person. Thus, the same person will have a different khaos ID for each browser or device they use. Similarly, two or more people using the same browser on the same device will have the same khaos ID.

9. When a browser that does not already have a khaos cookie opens a website that uses Magnite's platform, Magnite's platform will try to set a cookie in the browser. Magnite's platform is, however, often unable to set a khaos cookie in a browser. This may be for a variety of reasons—for example, based on browser settings that might block all or certain third-party cookies based on default settings (such as for Safari and Edge) or user-applied settings.

10. Magnite does not install cookies on users' devices. Cookies are "set" in browsers in response to a website's code directing the browser to set the cookie.

11. Once it is set in a browser, the cookie assigns and stores the khaos ID.

12. The khaos cookie, and khaos ID contained within it, remain in the device's browser until the cookie expires or the user "clears cookies." The khaos cookie will expire if the user fails to visit a publisher that uses Magnite's platform once every 365 days. The user may "clear cookies" at his or her discretion. If the

khaos cookie expires from the browser or is deleted, Magnite's platform will try to set a new khaos cookie the next time the browser opens a website that uses Magnite's platform.

13. Once assigned, the khaos ID can be sent back to Magnite through the Real-Time Bidding ("RTB") process. Specifically, when Magnite receives ad requests for a particular website visit, the ad request can include a khaos ID. The khaos cookie does not itself send information or route communications to Magnite or websites. The khaos cookie does not contain, record, or decode any network routing or signaling information (such as an IP address, port numbers, or network communication metadata). Its sole function is to assign and store a khaos ID in the user's browser.

14. One of Magnite's roles in the RTB auction process is to serve as an intermediary in the transmission of electronic communications between the publishers and advertisers that use its services. In this process, publishers first transmit bid requests containing information about available advertising inventory through Magnite's platform. Magnite then processes and routes that information to advertisers who then respond with bid responses. Magnite's role as an intermediary is to facilitate this communication between publishers and advertisers to permit the RTB auction process to occur. Magnite facilitates this process on behalf of publishers and advertisers billions of times each day. In order to fill ad space via the RTB process, Sellers must choose an advertising integration or workflow. There are two primary categories of such integrations and workflows: (1) client-side header bidding, and (2) server-side header bidding, with the latter category encompassing a few subcategories such as Google Open Bidding and aggregator-mediated bidding (where an additional thirdparty intermediary is added into the workflow).

15. Regardless of the chosen advertising integration or workflow, before they can send "ad requests" attempting to sell advertising space, Sellers must first

configure the chosen integration or workflow, select the partner(s) that will receive ad requests (e.g., Magnite and/or other SSPs), and set the rules that govern what information may be included in or restricted from outgoing ad requests (which might differ as between partners).

16. When a consumer opens a webpage or an app, the chosen advertising integration or workflow generates an "ad request" to attempt to sell advertising on the webpage that the visitor has opened.

17. The data fields that can be included in a given ad request are standard and largely governed by the OpenRTB Protocol, which was established by the Interactive Advertising Bureau ("IAB") industry group in 2010 to ensure that various technologies in the RTB ecosystem can "talk" to one another.

18. Most data fields in an ad request are optional, and Sellers decide whether and how to populate them, including whether to include pseudonymous identifiers such as the khaos ID. Publishers also decide whether to include information such as the URL of a webpage in full or truncated form (e.g., www.nyt.com/XXXX, with or without any of the details following the slash); keywords describing the website or specific page being visited; a visitor's full or truncated IP address; a visitor's location information, and, if so, what level of precision; and so forth. Magnite's technology is not configured to accept, and therefore Magnite does not receive, certain data fields that are included within the OpenRTB Protocol.

19. When Magnite receives an ad request, it processes the information in the ad request, including by adding information to or removing information from that ad request to comply with applicable law and the Seller's preferences. Magnite then turns this into a "bid request" to solicit bids from potential advertisers on the publisher's available advertising space. Magnite then sends the bid request to one or more Demand Side Platforms (DSPs) that represent potential advertisers in the

RTB process.

20. One way that Magnite adds information to ad requests is by referencing its match tables. Match tables are tables that track the pseudonymous identifiers used by third parties within the ad tech ecosystem. For example, while Magnite's khaos ID for a given device and browser combination may be "khaos 123," a DSP might have a different pseudonymous identifier for that device and browser combination. Magnite uses match tables to document this information and will add the DSP's pseudonymous identifier in the outgoing bid request, if one is available.

21. Magnite also stores advertising segments. A segment is a collection of pseudonymous IDs believed to share a common theme or trait, such as an interest in basketball or falling within a certain age range (e.g., 18-34). Magnite obtains segments from publishers, advertisers, and other third-party data providers, which are defined by reference to third-party identifiers. Magnite can associate these third-party identifiers with khaos IDs if they are mapped to each other in Magnite's match tables. Magnite also creates segments based on information that it receives from a script that publishers install on their websites. These segments are defined by reference to khaos IDs. In preparing bid requests, Magnite checks to see if a khaos ID or associated third-party ID appears in any segments; if so, Magnite may include a unique "deal" identifier in the bid request, representing the segment category that is known to be relevant to the DSP or advertiser.

22. After Magnite issues the bid request, DSP(s) decide whether and how much to bid, based on information that is included in the bid request itself and additional information that the DSP separately maintains or receives from its own clients. If DSPs decide to submit bids, they send their "bid responses" back to Magnite. Magnite then selects a "winning" bid response to remit to the Seller and compete against the bids of other interested parties. The Seller may or may not

select the Magnite-provided bid response, or a different bid response provided by a different source, and works with its chosen advertising integration or workflow to place an ad accordingly. This whole process happens in milliseconds.

23. Publishers who choose to participate in Magnite's RTB auction process may choose to install certain Magnite code on their websites. Magnite does not control the publisher's decision to include Magnite's code on any particular page, does not control when a user visits a publisher's website, and does not itself install anything on any publisher's website or user's device. In all cases, it is the publisher—the website operator—who decides when, where, and how to deploy the code that leads to attempts to set the khaos cookie in a visitor's browser. These are the only circumstances in the RTB auction process that involve the setting of a Magnite cookie on the browser or device of a website visitor. The sole purpose of the khaos cookie is to assign a single pseudonymized, alphanumeric text string to a browser-and-device combination.

24. As Magnite customers, publishers are subject to the contractual obligations such as those in the Seller Master Terms and Conditions, which are available at https://www.magnite.com/legal/sellerterms/ and attached at Exhibit 19 to the Declaration of Hayden M. Schottlaender in Support of Magnite, Inc.'s Motion for Summary Judgment, and which are the default terms for Magnite's agreements with publishers and typically are fully incorporated into those agreements. In the Seller Terms, Magnite requires customers to use Magnite's technologies consistent with applicable laws, including the California Consumer Privacy Act ("CCPA"); generally accepted privacy self-regulatory guidelines, including the principles of the Digital Advertising Alliance ("DAA") and the framework of the Network Advertising Initiative ("NAI"); and with other Magnite-specified requirements. For example, Magnite customers selling advertising space must:

- "not pass any data to Magnite that requires end user consent if it has not appropriately obtained such consent";
- "have and adhere to a current privacy policy," which must "accurately disclose all applicable data collection, use, and disclosure practices";
- "comply with all applicable Privacy Requirements and provide end users subject to such laws with a conspicuous link to a functional optout page (and with regard to the State Privacy Laws, the ability to opt out of 'sales,' 'sharing,' and 'targeted advertising' specifically");
- "ensure that any applicable end-user choices to opt out, limit ad tracking, or other similar settings or preferences are passed to Magnite" when sending ad requests to Magnite; and
- "not pass Magnite any information that permanently identifies a
- particular device."

25. Magnite also takes extensive technical measures to detect and honor consumers' opt-out choices. At the outset, if cookies are blocked from collection or use due to default or user-set browser settings, Magnite does not receive (or, therefore, use) its khaos ID, including to tie information from an ad request to anything in its system associated with the user. Additionally, for all ad requests, Magnite checks for any relevant, automated permissions or if the user has exercised their opt-out rights. Magnite first checks the ad request itself for indication of an opt-out, such as an opt-out set via the Global Privacy Control ("GPC") or a CCPA-mandated "Do Not Sell or Share My Personal Information" or "Your Privacy Choices" link on a publisher's website. If Magnite sees an opt-out signal in the ad request, Magnite will strip the khaos ID out if one is included within the ad request, will not associate any information from the ad request with a khaos ID (or any other pseudonymous identifiers in its system), will not use the khaos ID to add any information to an outgoing bid request (e.g., it will not add any third-party IDs or

segment information), and will exclude certain information from the original ad request (e.g., the underlying IP address) from the outgoing bid request.

26. Magnite separately maintains its own records of opt-outs, which are compiled from opt-out requests made via Magnite's own user choice portal (https://www.magnite.com/legal/user-choice-portal/) and through automated tools provided by the DAA, the European Interactive Digital Advertising Alliance ("EDAA"), and the NAI. Even if the ad request does not contain an opt-out signal, Magnite checks its own records to see whether the khaos ID included with an ad request has an opt-out signal. If so, Magnite removes the user's khaos ID from all incoming ad requests, does not use the khaos ID to add information to outgoing bid requests going forward, and deletes information previously associated with the khaos ID from its systems. Magnite also makes the same, aforementioned exclusions from the outgoing bid request. As of May 5, 2026, Magnite has received and honored at least 4.8 million such requests within the last five years.

27. Magnite's primary revenue model for operating DV+ is charging Sellers a percentage fee for successful ad sales.

28. I understand that the named Plaintiff in this matter, Edward Lewis, alleges that Magnite has collected information including his browsing history, search queries, IP address, geolocation, and identifying or sensitive information, and that Magnite disclosed his personal and private information to third parties.

29. I have reviewed the Declaration of Ian Mercado, including Exhibit 3, containing information from Plaintiff Lewis's Microsoft Edge browser on his desktop computer (Dkt. 80-13). This Exhibit 3 suggests that the Magnite platform attempted to set a khaos cookie in Plaintiff's Edge browser on his desktop computer and assign MOD4S8VQ-S-C59G ("MOD4") as a khaos ID on April 24, 2026, well after the complaint was filed in this action. Magnite does not have any record of this khaos ID in its systems, which suggests that Magnite's platform was unable to

actually set the khaos cookie or assign the MOD4S8VQ-S-C59G khaos ID. This is consistent with Exhibit 3 to the Mercado Declaration (Dkt. 80-13), which only shows the MOD4S8VQ-S-C59G khaos ID under "Response Cookies" but not under "Request Cookies." MAGNITE_0001132 and MAGNITE_0001134 are records of Magnite's searches of its match tables for the MOD4 khaos ID, which show that no records exist.

30. Magnite does not process or store personally identifying information. In fact, Magnite can only find data associated with an individual if that individual were to locate their own pseudonymous advertising identifiers and send them to Magnite. Thus, Magnite was unable to locate any information associated with Plaintiff Lewis's devices or browsers before Plaintiff Lewis filed Exhibit 3.

31. Based on Exhibit 3, Magnite was able to locate records of a different khaos ID: LY4V0YQQ-P-DCSH ("LY4"). It appears that the LY4 khaos ID was first set in the Plaintiff's browser sometime on or before July 2, 2024. Magnite has no record of this khaos ID being associated with any segments. The khaos ID has been associated with three third-party IDs in Magnite's user ID match table.

32. I understand that Plaintiff Lewis testified in his deposition that he uses the Microsoft Edge browser on his desktop. Edge blocks the khaos cookie when set in a third-party context by default, and this prevents Magnite from associating Plaintiff Lewis's website browsing activity across different sites. This is likely why the MOD4S8VQ-S-C59G khaos ID appears as a "Response" cookie but does not appear as a "Request" cookie in Plaintiff Lewis's Microsoft Edge browser in Exhibit 3 to the Mercado Declaration. By contrast, the khaos_p cookie is set in a first-party context and would not have been blocked by the Edge browser by default. This is likely why the LY4V0YQQ-P-DCSH khaos ID appears as a "Request" cookie in Plaintiff Lewis's Microsoft Edge browser in Exhibit 3 to the Mercado Declaration.

33. I have also reviewed logs of ad requests sent to Magnite for the LY4 khaos ID, which Magnite produced in this action beginning at Bates number MAGNITE_0001135. There are three columns in this record that could potentially record IP address information, the “IP_ADDRESS,” “IPV4_Address,” and “IPV6_Address” columns. MAGNITE_0001135 shows only a value of “-1” for rows in the “IP_ADDRESS” and “IPV4_Address” columns, indicating that Magnite could not record or process IP address information in these ad requests. Specifically, a value of -1 in these columns means that Magnite’s system could not resolve the IP address, which can occur if a request comes through a misconfigured proxy or a non-IP socket. In such cases, Magnite’s code defaults to a “-1” value rather than leaving the field blank, which could cause issues in databases parsers Magnite uses to process ad requests. In summary, MAGNITE_0001135 does not reflect that any IP address was recorded in connection with this khaos ID. It also does not contain any information that identifies Plaintiff Lewis.

34. Magnite is not aware of any other khaos IDs associated with Plaintiff Lewis. Magnite has not received or stored sensitive information about Plaintiff Lewis or personally identifying information—such as name, phone number, or email address—from Plaintiff Lewis.

35. Neither a JavaScript API nor server-to-server transmissions involve an “installation” on a consumer’s device or browser; those are functionalities purely between third-party websites and Magnite.

36. Business Records: Attached to this Declaration are true and correct copies of the following Exhibits, which have been produced in this litigation:

- **Exhibit B-1:** Magnite’s LY4 match table results collected in May 2026 (MAGNITE_0001128-MAGNITE_0001129)
- **Exhibit B-2:** Magnite’s LY4 match table results collected in July 2026 (MAGNITE_0001130-MAGNITE_0001131)

- **Exhibit B-3**: Magnite's MOD4 match table results collected in May 2026 (MAGNITE_0001132-MAGNITE_1133)
- **Exhibit B-4:** Magnite's MOD4 match table results collected in July 2026 (MAGNITE_0001134)
- **Exhibit B-5:** Magnite's LY4 ad request logs collected in July 2026 (MAGNITE_0001135)

(hereinafter, "Magnite Business Records"). Each of the Magnite Business Records was made at or near the time of the recorded act or event by (or from information transmitted by) someone with knowledge. Each of the Magnite Business Records were kept in the course of a regularly conducted activity of Magnite. Making the Magnite Business Records was a regular practice of that activity.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 14, 2026, in Bozeman, Montana.

Signed by:
Jeff Wieland
610D639FDC4C415...

Jeff Wieland